# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR., ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIEL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW, and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL<br><br>                    Defendants. | CIVIL ACTION NO. 4:20-cv-02539 (ASH) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
THE COLIGADO SHAREHOLDER GROUP FOR APPOINTMENT
<u>AS LEAD PLAINTIFF AND APPROVAL OF LEAD AND LIAISON COUNSEL</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

    A. Nature and State of the Proceeding ........................................................................ 1

    B. Statement of Issues to Be Ruled Upon .................................................................. 2

    C. Summary of the Argument ..................................................................................... 3

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................ 3

III. ARGUMENT ........................................................................................................................ 6

    A. The Coligado Shareholder Group Should Be Appointed Lead Plaintiff ............... 6

        1. The Coligado Shareholder Group's Motion is Timely .................................... 7

        2. The Coligado Shareholder Group Has the Largest Financial Interest in the Relief Sought by the Proposed Class ..................................................... 7

        3. The Coligado Shareholder Group Is Cohesive ................................................ 8

        4. The Coligado Shareholder Group Satisfies Rule 23 Typicality and Adequacy Requirements ................................................................................ 10

    B. The Court Should Approve the Coligado Shareholder Group's Selection of Counsel ...... 13

IV. CONCLUSION ................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                             **Page(s)**

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ...........................................................................................................9

*In re BP, PLC Securities Litigation*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ..................................................................................8, 11, 12

*Cambria County Employees Retirement System v. Venator Materials PLC*,
   No. H-19-3464, 2019 U.S. Dist. LEXIS 181461 (S.D. Tex. Oct. 21, 2019) .............................11

*In re Enron Corp. Securities Litigation*,
   206 F.R.D. 427 (S.D. Tex. 2002) ...............................................................................7, 10, 11, 12

*Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.*,
   No. 4:17-CV-0449, 2017 U.S. Dist. LEXIS 140268 (E.D. Tex. Aug. 31, 2017). .............8, 9, 10

*Parker v. Hyperdynamics Corp.*,
   No. 4:12-cv-999, 2013 U.S. Dist. LEXIS 21767 (S.D. Tex. Feb. 19, 2013) ........................11, 12

*In re Plains All American Pipeline, L.P. Securities Litigation*,
   No. 15-cv-02404, 2015 U.S. Dist. LEXIS 163811 (S.D. Tex. Dec. 7, 2015) ........................11, 13

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ...........................................................................................8

*In re Sequans Communications S.A. Securities Litigation*,
   289 F. Supp. 3d 416 (E.D.N.Y. 2018) .....................................................................................8, 9

*Stein v. Match Group, Inc.*,
   No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995 (N.D. Tex. June 9, 2016)) ..........................10

**STATUTES AND RULES**

Private Securities Litigation Reform Act of 1995 (the "PSLRA"),
   15 U.S.C. § 78u-4(a)(1) ................................................................................................................6
   15 U.S.C. § 78u-4(a)(3)(A)(i) ......................................................................................................6
   15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ...............................................................................................13
   15 U.S.C. § 78u-4(a)(3)(B) ..........................................................................................................2
   15 U.S.C. § 78u-4(a)(3)(B)(iii) ..........................................................................................3, 7, 13
   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................8
   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .........................................................................................8
   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) .......................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)......................................................................................3
15 U.S.C. § 78u-4(b)(3)(B)(iii)(II)(aa) ...............................................................................13
15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................3, 13
15 U.S.C. § 78u-4(b)(3)(B)....................................................................................................2

S.D. Tex. L.R. 7.1.D ................................................................................................................1

## **OTHER AUTHORITIES**

Statement of Managers – "The Private Securities Litigation Reform Act of 1995,"
   141 CONG. REC. No. 188 at H13700 (daily ed. Nov. 28, 1995) ...............................13

Plaintiffs John Arden Ahnefeldt, Robert Brower, Jr., Robert Brower, Sr., Khanh L. Bui, Jignesh Chandarana, Krutika Chandarana, Amira Yousuf Chowdhury, Christopher Coligado, Daniel Gad, Edwin Howell, Sioe Lie Howell, Darren Hunting, Anne Ingledew, Shital Mehta, Thomas Carl Rabin, Adam Shultz, Amit Somani, Jayaprakash Srinivasan, Aarthi Srinivasan, Christopher Swedlow, and Alexandre Tazi, the members of the Coligado Shareholder Group, hereby move this Court for an Order, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (1) appointing the Coligado Shareholder Group as Lead Plaintiff on behalf of all persons and entities who purchased or otherwise acquired the common stock of McDermott International, Inc. ("McDermott" or the "Company"), or call options of or guaranteed by McDermott during the class period extending between September 20, 2019 and January 23, 2020, both dates inclusive (the "Class Period"); and (2) appointing proposed Lead Plaintiff Coligado Shareholder Group's selection of Wolf Haldenstein Adler Freeman and Herz LLP ("Wolf Haldenstein") as Lead Counsel and Reynolds Frizzell LLP ("Reynolds Frizzell") as Liaison Counsel for the Class.[1]

I.   **INTRODUCTION**

    A.   **Nature and State of the Proceeding**

The Coligado Shareholder Group filed this securities class action on behalf of all persons or entities that during the Class Period purchased or otherwise acquired McDermott securities. Specifically, the action alleges that Defendants David Dickson (CEO of McDermott), Stuart

---

[1] Local Rule 7.1.D. requires a conference of counsel before filing motions. Pursuant to the PSLRA, however, any putative class member, regardless of whether it filed a complaint, may file a motion for appointment as lead plaintiff. As such, there is no way for counsel for the Coligado Shareholder Group to know if anyone else plans to seek appointment as lead plaintiff until after all the motions have been filed. Under these narrow circumstances, the Coligado Shareholder Group respectfully requests that the conferral requirement of Local Rule 7.1.D. be waived.

Spence (former Executive Vice President and CFO of McDermott), and Christopher Krummel (Executive Vice President and CFO of McDermott), violated the federal securities laws by making materially false and/or misleading statements and failing to disclose material adverse facts about McDermott as part of a scheme to deceive the investing marketplace about the Company's true financial condition, artificially inflate the market price of McDermott common stock and other publicly traded securities, and cause the members of the proposed class to purchase McDermott common stock and other publicly traded securities at artificially inflated prices. The case seeks to recover damages and remedies under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

The case remains in its beginning stages due to the PSLRA's lead plaintiff provisions. Once a lead plaintiff is appointed, an amended complaint will likely be filed, followed by defendants' responsive pleading (most likely in the form of a motion to dismiss) and briefing on the anticipated Fed. R. Civ. P. 12(b)(6) motion. Pursuant to the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B).

**B.     Statement of Issues to Be Ruled Upon**

The PSLRA provides for the appointment of "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" and establishes a presumption that the "most adequate plaintiff" is the person or group of persons that has the largest financial interests in the relief sought by the putative class and otherwise satisfies Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B). This presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class, or that it is subject to unique defenses that render it incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### C. Summary of the Argument

The Coligado Shareholder Group respectfully submits that it should be appointed as lead plaintiff because: (1) it timely filed a motion; (2) to its counsel's knowledge, it has the largest financial interest in the relief sought by the class as a result of the over $1.7 million loss it incurred on investments in McDermott, and as such, is presumptively the most adequate lead plaintiff under the PSLRA; and (3) it is able and willing to fairly and adequately serve as a competent representative of the proposed class, and has provided a certification demonstrating as much to the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); Declaration of Malcolm T. Brown in Support of Motion of the Coligado Shareholder Group for Appointment as Lead Plaintiff and Approval of Lead and Liaison Counsel ("Brown Decl."), Exs. B-E. The Coligado Shareholder Group's selections of Wolf Haldenstein to serve as Lead Counsel – a nationally recognized firm with extensive experience and expertise in class action securities litigation – and Reynolds Frizzell to serve as Liaison Counsel – a highly respected Houston law firm with significant experience in complex and securities litigation matters and offices in this District – should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); Brown Decl., Exs. F-G.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

McDermott provides engineering, procurement, construction, installation and technology solutions to the energy industry and designs and builds infrastructure and technology solutions to transport and transform oil and gas into a variety of products. *See* Complaint (ECF No. 1), ¶¶ 29-31. McDermott was a healthy, profitable company, and reported 2017 revenue of almost $3 billion and net income of more than $178 million. *Id.*, ¶ 32.

The complaint alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 by making materially false and misleading statements and/or omissions in connection with the September 20, 2019 press release announcing the plan for the near-term sale

3

of Lummus Technology to strengthen the Company's balance sheet, and in subsequent disclosures stating that McDermott was continuing to pursue the previously announced strategic alternatives process for Lummus Technology. *Id.*, ¶¶ 39-41. In truth, these and subsequent public statements by Defendants were made to conceal the acute liquidity crisis McDermott actually faced, "calm" the Company's investors and its agitated vendor base, provide McDermott time to negotiate and execute upon a prepackaged plan of reorganization, and avoid a freefall Chapter 11 filing. *Id.*, ¶¶ 42, 47-54, 64-65, 67, 69-70, 74-75.

Despite Defendants' materially false and misleading statements assuring investors that the Company's financial and operating condition was improving and that it had a long-term balance sheet solution to right the ship, and failing to disclose material facts about the Company's business, operations, and prospects, on January 21, 2020, McDermott announced its entry into a restructuring transaction to equitize nearly all of the Company's debt, and that said transaction would be implemented through a joint prepackaged Chapter 11 plan of reorganization. *Id.*, ¶¶ 5, 76. McDermott then publicly disclosed for the first time that it had liquidity problems that could not be cured outside of the bankruptcy process. *Id*.

McDermott additionally announced that it expected the Company's common stock to be delisted by the New York Stock Exchange ("NYSE"). *Id.* On this news, trading of McDermott common stock was halted pre-market and did not resume until January 23, 2020. *Id.,* ¶ 77. On January 23, McDermott common stock closed at $0.12 per share, almost an 83% decline from its January 17 closing price. *Id.*

According to the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization ("Disclosure Statement") and the Joint Chapter 11 Plan of Reorganization of McDermott and its Affiliates, as amended ("Chapter 11 Plan"), McDermott investors holding shares of common stock

4

were not entitled to vote on whether to accept or reject the Chapter 11 Plan and, upon the effective date, McDermott investors' common shares shall be cancelled, released, and extinguished without any distribution. *Id.*, ¶ 6. In addition, McDermott would eliminate over $4.6 billion in debt from its balance sheet, with secured lenders receiving an initial 94% of all of the Company's new equity, and certain McDermott assets which Defendants falsely represented to investors would be sold as part of the Company's long-term balance sheet solution, were used to repay the Chapter 11 debtor-in-possession financing package and fund emergence costs. *Id.*

Despite the Chapter 11 Plan providing no recourse to shareholders, McDermott management, including Defendants, were to keep their jobs and retention bonuses paid to them in connection with the bridge financing obtained to extend McDermott's time to prepare the prepackaged plan of reorganization, and stood to receive up to 7.5% of new equity in McDermott after the Company emerges from bankruptcy. *Id.*, ¶¶ 7, 56-57.

On the news of the Company's bankruptcy and that upon its effective date McDermott investors' common shares would be cancelled, released, and extinguished without any distribution, Plaintiffs organized themselves as the Coligado Shareholder Group in late January 2020. In their capacity as purchasers of McDermott securities, the Coligado Shareholder Group took action to protect their rights and the rights of other commonly situated McDermott shareholders. The Coligado Shareholder Group retained and paid bankruptcy counsel to appear on its behalf in the bankruptcy proceeding captioned *In re McDermott International, Inc.,* Case No. 20-30336 (DRJ) (Bankr. S.D. Tex., Houston Div.) (the "Bankruptcy Proceeding"), *see* Baker & Associates' entry of appearance (B-ECF No.[2] 454), filed an Objection to the Disclosure Statement and Chapter 11 Plan (B-ECF No. 528) ("Objection") to protect themselves and other commonly situated

---

[2] "B-ECF" refers to the docket in the Bankruptcy Proceeding.

5

shareholders as to whom the Chapter 11 Plan would eliminate their shares of McDermott common stock and release their rights to assert claims against certain non-debtors (including claims arising under the federal securities laws), and through its bankruptcy counsel, appeared at the March 12, 2020 Confirmation Hearing and participated in the cross-examination of witness and closing arguments. *See* Mar. 12, 2020 Hearing Tr. (B-ECF No. 690), at 12:18-20, 18:19-19:5, 39:16-40:11, 62:12-66:15, 98:7-18, 114:17-115:19, 144:7-14, 169:24-171:23. As a result of such action, the Coligado Shareholder Group successfully preserved the right to pursue the claims asserted herein. *See* Confirmation Orders (B-ECF Nos. 665 & 684), ¶ 79 ("The Coligado Shareholder Group shall not release any Claims or Causes of Action against any Person or Entity pursuant to any provision of Article VIII of the Plan other than the Debtors (as defined in the Plan) and the Reorganized Debtors (as defined in the Plan).").

On July 17, 2020, after screening and selecting securities counsel, Plaintiffs initiated this action on behalf of themselves and all others similarly situated.

### III.   ARGUMENT

#### A.   The Coligado Shareholder Group Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). Next, the PSLRA requires the Court to adopt a presumption that the "most adequate plaintiff" is the person or group that:

(aa)   has either filed the complaint or made a motion in response to a notice …;

(bb)   in the determination of the court, has the largest financial interest in the relief

sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).  The Coligado Shareholder Group meets each of these requirements and should therefore be appointed Lead Plaintiff.

### 1.   The Coligado Shareholder Group's Motion is Timely

The notice published on July 18, 2020 in connection with the filing of the Complaint advised putative Class members of the pendency of the action and claims asserted, the Class Period, and the right to move the Court to be appointed as lead plaintiff within 60 days, or by September 16, 2020.  *See* Brown Decl., Ex. A.  The members of the Coligado Shareholder Group filed the Complaint and this timely Motion, and thus meet the first requirement for the Coligado Shareholder Group to be considered for appointment as Lead Plaintiff.

### 2.   The Coligado Shareholder Group Has the Largest Financial Interest in the Relief Sought by the Proposed Class

As this Court has noted:

> The PSLRA does not delineate a procedure for determining the "largest financial interest" among the proposed class members. A four-factor inquiry has been developed …. The four factors relevant to the calculation are (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002) (citations omitted).  During the Class Period, the members of the Coligado Shareholder Group purchased 1,787,233 shares of McDermott stock at artificially inflated prices and suffered $1,871,330.48 in losses as a result of the alleged wrongdoing.  *See* Brown Decl., Ex. C.  To the best of its counsel's knowledge, there are no other movants with a larger financial interest such that the Coligado Shareholder Group

satisfies the PSLRA's largest financial interest requirement and may be presumed to be the "most adequate" "Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Coligado Shareholder Group Is Cohesive

It is well established that a cohesive group can be the ideal class representative in PSLRA litigation, and the PSLRA explicitly permits a "group of persons" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See, e.g., In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 442 (S.D. Tex. 2010); *Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-0449, 2017 U.S. Dist. LEXIS 140268, at *19 (E.D. Tex. Aug. 31, 2017). While the "PSLRA does not define what a 'group' can or should be, nor how its 'members' must be related to one another," *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008), "[t]he majority of courts permit unrelated investors to join together as a group, and evaluate a motion to do so on a case-by-case basis, evaluating whether the grouping best serves the interest of the class." *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 423 (E.D.N.Y. 2018) (citing *Varghese*, 589 F. Supp. 2d at 392). In doing so, courts examine whether the group is "able to act cohesively, effectively manage the litigation, and adequately represent the class." *Okla. Law Enforcement Ret. Sys.*, 2017 U.S. Dist. LEXIS 140268, at *20 (citations omitted).

Any concern regarding the size of the group is ameliorated here by the fact that the members of the Coligado Shareholder Group *organized themselves* in late January 2020 with the express purpose of protecting their rights *and* the rights of other shareholders in the Bankruptcy Proceeding. Having organized themselves, they worked together to hire bankruptcy counsel – at the members' personal expense – who appeared in that case, filed the Objection, and participated in the cross-examination of witnesses and at closing arguments during the Confirmation Hearing. *See* Brown Decl., Ex. D, ¶¶ 2-5, 8-9, Ex. E, ¶ 23. These "actions in the bankruptcy proceeding

demonstrate its ability to cohesively represent the class." *Okla. Law Enforcement Ret. Sys.*, 2017 U.S. Dist. LEXIS 140268, at *23.

After successfully retaining bankruptcy counsel as a group and guiding that litigation to a resolution, the Coligado Shareholder Group then worked collectively to secure counsel for this litigation. Coligado Shareholder Group interviewed law firms to pursue their claims under the federal securities laws and, after contacting a number of firms, selected Wolf Haldenstein. *See* Brown Decl., Ex. D, ¶¶ 10-11. The Coligado Shareholder Group's ability to retain counsel for and manage the litigation in the Bankruptcy Proceeding and here demonstrates that it is not the kind of group courts have found problematic, nor was it cobbled together by counsel for the purpose of qualifying as lead plaintiff. *See Berger v. Compaq Computer Corp.,* 257 F.3d 475, 478 n.2 (5th Cir. 2001) (taking issue with large groups that "were previously unaffiliated, each of whom have suffered modest losses, and who thus have no demonstrated incentive or ability to work together to control the litigation.")[3] (internal quotations and citation omitted).

The members of the Coligado Shareholder Group suffered substantial losses which prompted them to act in bankruptcy court first before commencing this litigation. This is the opposite of a scenario where a group is formed in bad faith by lawyers "group[ing] together professional plaintiffs who 'typically owned a deminimus number of shares.'" *See Oklahoma Law Enforcement Ret. Sys.*, 2017 U.S. Dist. LEXIS 140268, at *27 (citation omitted); *id.* at *24 ("[t]he individual losses … 'surpass those of any other putative lead plaintiff here' … remov[ing] 'any real concern that this group of two class members was formed only to manufacture the greatest

---

[3] As in *Sequans*, this is not a case where there is "no evidence that either of the proposed groups of individuals had communicated internally in any meaningful way, and the submitted declarations were nothing more than statements about the losses suffered and the securities purchased." 289 F. Supp. 3d. at 424 (distinguishing *Buettgen v. Harless*, 263 F.R.D. 378, 381-82 (N.D. Tex. 2009)).

financial interest in order to be appointed lead plaintiff,' and each individual plaintiff will remain invested in the outcome of the litigation.") (quoting *Stein v. Match Group, Inc.*, No. 3:16-cv-549-L, 2016 U.S. Dist. LEXIS 74995, at *17 (N.D. Tex. June 9, 2016)).

The Coligado Shareholder Group has "submitted evidence to explain how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and how the group members and counsel would communicate with one another about the litigation."  *Stein*, 2016 U.S. Dist. LEXIS 74995, at *17-18; *see* Brown Decl., Ex. D ¶¶ 2-7, 14, 23-29, Ex. E ¶¶ 19-24.[4]  This evidence and the actions by the Coligado Shareholder Group in the Bankruptcy Proceeding and in this action "demonstrate its ability to cohesively represent the class." *Oklahoma Law Enforcement Ret. Sys.*, 2017 U.S. Dist. LEXIS 140268, at *23.  Consequently, there is no concern that the Coligado Shareholder Group is "a lawyer-driven group."

### 4. The Coligado Shareholder Group Satisfies Rule 23 Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the Coligado Shareholder Group also "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  "Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members." *In re Enron Corp.*, 206

---

[4] Given the Coligado Shareholder Group's actions in the Bankruptcy Proceeding, the facts support a finding that they will effectively perform the duties of lead plaintiff as a group, and are even more compelling than in *Stein* where the movants "had no pre-litigation connection." *Stein*, 2016 U.S. Dist. LEXIS 74995, at *18.

10

F.R.D. at 441. *See In re Plains All Am. Pipeline, L.P. Sec. Litig.,* No. 15-cv-02404, 2015 U.S. Dist. LEXIS 163811, at *10-12 (S.D. Tex. Dec. 7, 2015). "To make such a preliminary showing, potential lead plaintiffs need not submit evidentiary proof of typicality or adequacy." *In re BP*, 758 F. Supp. 2d at 435.

"Typicality is achieved where the named plaintiffs' claims arise 'from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'" *Enron*, 206 F.R.D. at 441 (citation omitted). The claims of the class representative need not be identical to the claims of the class to satisfy typicality. The typicality requirement is satisfied so long as "claims arise from a similar course of conduct and share the same legal theory," even when there are "factual differences." *Parker v. Hyperdynamics Corp.*, No. 4:12-cv-999, 2013 U.S. Dist. LEXIS 21767, at *9 (S.D. Tex. Feb. 19, 2013) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)); *see In re BP*, 758 F. Supp. 2d at 435 (same).

Here, if successful in proving its injury and losses resulting from Defendants' allegedly false and misleading statements and omissions, the Coligado Shareholder Group will necessarily prove the conduct underlying the claims of all Class members, and establish the elements of those claims. Like all Class members, the members of the Coligado Shareholder Group suffered damages from their purchases of McDermott securities that took place while Defendants made misleading statements in violation of the federal securities laws and as such, "their legal and remedial theories have the same essential characteristics as the class claims." *Cambria Cty. Employees Ret. Sys. v. Venator Materials PLC*, No. H-19-3464, 2019 U.S. Dist. LEXIS 181461, at *8 (S.D. Tex. Oct. 21, 2019). Accordingly, the claims are typical of those of other Class members.

The Coligado Shareholder Group similarly satisfies the adequacy requirement, which "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *In re Enron Corp.*, 206 F.R.D. at 441 (citation omitted). Representation is adequate when counsel for the class is qualified and competent, and the interests of the representative are not antagonistic to the interests of absent class members. *See Parker*, 2013 U.S. Dist. LEXIS 21767, at *9-10 (adequacy is shown by "[1] the zeal and competence of the representatives' counsel and the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees.") (citation omitted). Counsel for the Coligado Shareholder Group is not aware of any conflicts of interest between the Coligado Shareholder Group and the putative Class, nor is counsel aware of any unique defenses it would be subject to. *In re BP*, 758 F. Supp. 2d at 435 ("differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."). The interests of the members of the Coligado Shareholder Group are clearly aligned with the interests of Class members, and there is no evidence of any antagonism.

The Coligado Shareholder Group is comprised of well-educated professionals who all made significant investments in McDermott and were damaged in connection with defendants' violations of the federal securities laws. *See* Brown Decl., Ex. C, Ex. D ¶¶ 2, 15-17, Ex. E ¶¶ 2-18. As investors with a substantial financial interest in prosecuting this action, the Coligado Shareholder Group has made significant efforts to ensure adequate representation for the Class. *Id.,* Ex. D ¶¶ 4-6, 10, 15-21, 30-31, Ex. D ¶ 20. In addition, the members of the Coligado Shareholder Group retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted this choice to the Court for approval, in

accordance with the PSLRA.  *Id.*; 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v) (setting forth the requirements for timely motions for appointment of lead plaintiff and lead plaintiff's selection of counsel).  The Coligado Shareholder Group wants to obtain the maximum recovery for the proposed Class so as to maximize its members' pro rata share of that recovery.  The Coligado Shareholder Group has demonstrated that it will prosecute the claims of the proposed class vigorously by its actions in the Bankruptcy Proceeding, its members securing of qualified and experienced counsel here to investigate and file the Complaint on behalf of the proposed Class, and certifying to the Court the readiness to assume the responsibilities of class representative.  *See* Brown Decl., Ex. B, Ex. D ¶¶ 2-6, 8-11, 23-31, Ex. E ¶¶ 2-20, 23-24.

Based on the efforts to date in this action and the Bankruptcy Proceeding, and the clear dedication to serving on behalf of the proposed Class wronged by Defendants, the Coligado Shareholder Group is both typical and well-situated to serve fairly and adequately as Lead Plaintiff.  Accordingly, the Court should adopt the presumption that the Coligado Shareholder Group is the "most adequate plaintiff" under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 2015 U.S. Dist. LEXIS 163811, at *16.

**B.  The Court Should Approve the Coligado Shareholder Group's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  *See* Statement of Managers – "The Private Securities Litigation Reform Act of 1995," 141 CONG. REC. No. 188 at H13700 (daily ed. Nov. 28, 1995).  The Coligado Shareholder Group has selected Wolf Haldenstein as Lead Counsel in this case.

As detailed in Wolf Haldenstein's resume, the firm has extensive expertise and experience in the field of securities litigation and has successfully prosecuted hundreds of securities fraud class actions, obtaining excellent recoveries on behalf of defrauded investors across the country. *See* Brown Decl., Ex. F. In fact, courts nationwide have recognized Wolf Haldenstein's qualifications to serve as class counsel in complex class actions, such as this case. *Id*. Similarly, Reynolds Frizzell possesses substantial experience in complex and securities class action litigation, has offices in this District, and is well-equipped as the Coligado Shareholder Group's choice for Liaison Counsel. *See* Brown Decl., Ex. G. Accordingly, the Coligado Shareholder Group's selection of Lead and Liaison Counsel for the Class should be approved.

## IV. CONCLUSION

The Coligado Shareholder Group filed a timely motion, has the largest financial interest of any plaintiff its counsel is aware of, and otherwise satisfies the Rule 23(a) requirements. As such, the Coligado Shareholder Group respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Wolf Haldenstein as Lead Counsel and Reynolds Frizzell as Liaison Counsel.

Dated: September 16, 2020

Respectfully submitted,

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**

*/s/ Malcolm T. Brown*
Malcolm T. Brown
Attorney-in-Charge
NY State Bar No. 2918498
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
brown@whafh.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

14

**Of Counsel:**

Thomas H. Burt
NY State Bar No. 2869550
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
burt@whafh.com

Marisa C. Livesay
CA State Bar No. 223247
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
livesay@whafh.com

Jean C. Frizzell
State Bar No. 07484650
Federal I.D. 14529
Michael K. Oldham
State Bar No. 00798405
Federal I.D. No. 21486
**REYNOLDS FRIZZELL LLP**
1100 Louisiana, Suite 3500
Houston, TX 77002
Telephone: (713) 485-7200
Facsimile: (713) 485-7250
jfrizzell@reynoldsfrizzell.com
oldham@reynoldsfrizzell.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or electronic mail on all counsel of record on September 16, 2020.

*/s/ Malcolm T. Brown*
Malcolm T. Brown
