# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR. ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIAL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW, and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated, | : : : : : : : : : : : : : : : : : | **Case No. 4:20-cv-02539-ASH**<br><br>**CLASS ACTION** |
| Plaintiffs, | : : | |
| v. | : : | |
| DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL, | : : : | |
| Defendants | : : : : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION PURSUANT TO §78U-4(A)(3)(B)
## BY THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN,
## THE COURT-APPOINTED §10(B) LEAD PLAINTIFF IN
## <u>THE RELATED *EDWARDS* ACTION</u>

## <u>TABLE OF CONTENTS</u>

I.      ARGUMENT ................................................................................................................2

        A.      Appointing a Separate Lead Plaintiff in This Related *Ahnefeldt* Action
                Would Be Improper, Duplicative, and Counter to the PSLRA...............................2

        B.      The Existing §10(b) Lead Plaintiff Should Oversee This Action...........................6

        C.      The §10(b) Lead Plaintiff Hereby Seeks Discovery Of The *Ahnefeldt*
                Plaintiffs And Any Other Movants ......................................................................10

II.     CONCLUSION...........................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ........................................................................7

*In re Enron Corp., Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002) ........................................................................4, 8, 9

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. 15-cv-02404,
   2015 WL 8207331 (S.D. Tex. Dec. 7, 2015) ..................................................4, 8

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ..........................................................................4

*In re Waste Mgmt., Inc.*,
   128 F. Supp. 2d 401 (S.D. Tex. 2000) ..........................................................................9

*Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, No. 15-CV-3415-D,
   2016 WL 1625774 (N.D. Tex. Apr. 25, 2016) ........................................................7

**Statutes**

15 U.S.C. §78u-4(a)(3)(A)(i)(II) ........................................................................6

15 U.S.C. §78u-4(a)(3)(A)(i)(II) ........................................................................8

15 U.S.C. §78u-4(a)(3)(A)(ii) ........................................................................4

15 U.S.C. §78u-4(a)(3)(B) ........................................................................1, 4, 8

15 U.S.C. §78u-4(a)(3) (B)(i) ........................................................................8

15 U.S.C. §78u-4(a)(3)(B)(ii) ........................................................................5

15 U.S.C. §78u-4 (a)(3)(B)(iv) ........................................................................11

Private Securities Litigation Reform Act of 1995 ........................................... *passim*

Sarbanes-Oxley Act of 2002 ........................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................9, 12

Fed. R. Civ. P. 15 ........................................................................8

ii

For the reasons set forth in the fully-briefed motion to consolidate (Dkt. No. 147) (the "Motion to Consolidate") filed on the docket of the related action captioned *Edwards v. McDermott International, Inc., et* al, No. 4:18-cv-4330-GCH (the "*Edwards* action") by the Court-appointed §10(b) Lead Plaintiff in *Edwards*, the Nova Scotia Health Employees' Pension Plan ("NSHEPP" or "§10(b) Lead Plaintiff"), which is incorporated herein by reference, any purported lead plaintiff process in the above-captioned *Ahnefeldt* action, Case No. 4:20-cv-02539, is improper, duplicative, and counter to the express terms of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which mandate a single lead plaintiff process that, in this case, was resolved in June 2019 after a hotly contested lead plaintiff briefing and oral argument initially involving **_seven_** prior movants.  However, for the avoidance of doubt, and to protect its Court-appointed status as §10(b) Lead Plaintiff and to preserve all rights, NSHEPP respectfully submits this Motion pursuant to §78u-4(a)(3)(B) in the above-captioned *Ahnefeldt* action, hereby asking the Court once again to consolidate the two actions, with NSHEPP continuing as §10(b) Lead Plaintiff overseeing all Exchange Act §10(b) claims at issue.

By statute, the Motion to Consolidate **_must_** be decided before any purported lead plaintiff motions filed in this related *Ahnefeldt* action.  For reasons briefed and argued, the §10(b) Lead Plaintiff respectfully submits that its Motion to Consolidate should be granted.  In granting that Motion, the Court may, if it so desires, require NSHEPP, *e.g.*, (a) to formalize the expanded Class Period (December 18, 2017 through January 23, 2020, both dates inclusive) spanning the two consolidated actions via a further amended §10(b) complaint to be filed no later than 30 days after Judge Hanks's forthcoming ruling on Defendants' motion to dismiss the operative §10(b) complaint in *Edwards*, which ruling Judge Hanks advised to expect in a matter of *weeks*, and/or (b) to identify one or more suitable non-lead-plaintiff class member(s) for Lead Counsel to put forward as sub-class representative(s) in the future class certification motion that NSHEPP will

1

file in the *Edwards* action, thereby providing additional oversight of the Exchange Act §10(b) claims arising from alleged misstatements made during the purported class period pled in the *Ahnefeldt* action. These simple steps moot any arguably legitimate ***class-wide*** concerns on behalf of investors within the purported class period pled in the *Ahnefeldt* complaint.

Significantly, if Judge Hanks grants the §10(b) Lead Plaintiff's Motion to Consolidate and/or if this Court issues an order confirming the §10(b) Lead Plaintiff's role as Court-appointed PSLRA lead plaintiff overseeing the Exchange Act §10(b) claims as pled in *Ahnefeldt*, both the *Ahnefeldt* plaintiffs and any other investors who may improperly and belatedly seek a lead plaintiff appointment now, pursuant to the purported PSLRA notice published by the *Ahnefeldt* plaintiffs, will remain free to pursue their claims on an ***individual*** basis, as opt-out actions that are permissible under the PSLRA..

## I.    ARGUMENT

### A.    Appointing a Separate Lead Plaintiff in This Related *Ahnefeldt* Action Would Be Improper, Duplicative, and Counter to the PSLRA

The *Edwards* action was filed nearly two years ago in November 2018. It has proceeded under the direction of §10(b) Lead Plaintiff NSHEPP and §14(a) Lead Plaintiff Public Employees' Retirement System of Mississippi since they were appointed to fill those roles by the Court in June 2019 to oversee the securities fraud class action claims brought against McDermott International, Inc. ("McDermott"), its CEO Defendant Dickson, and its now-former CFO Defendant Spence. *See Edwards*, Dkt. No. 84. The §10(b) and §14(a) Lead Plaintiffs have worked successfully and collaboratively since their appointment, conducting an extensive joint investigation of the Exchange Act claims at issue, filing coordinated amended complaints and oppositions to Defendants' motions to dismiss, and pursuing important and unique class-wide safeguards in McDermott's bankruptcy proceeding for *Edwards* action class members.

Since its inception, this recently-filed *Ahnefeldt* action has indisputably overlapped both temporally and topically with the *Edwards* action, such that it is now the subject of §10(b) Lead Plaintiff's request to transfer to Judge Hanks, who presides over the *Edwards* action, for oversight as a related action and the §10(b) Lead Plaintiff's Motion to Consolidate, which is now fully briefed and argued before Judge Hanks. The operative 266-page §10(b) complaint (*Edwards* Dkt. No. 105), filed on the twice-extended deadline of October 4, 2019, alleges pertinent facts and partial corrective events up to a week prior on September 27, 2019 (*id.* ¶¶17, 325), in the then-still-unfolding circumstances preceding and leading up to McDermott's bankruptcy, when a Chapter 11 proceeding was rumored but had not yet occurred. The 48-page *Ahnefeldt* complaint (*Ahnefeldt* Dkt. No. 1) alleges a class period starting on September 20, 2019 – a one week overlap – and running the few months more to McDermott's bankruptcy announcement on January 21, 2020 and the resulting stock drop on January 23, 2020 – facts that are also corrective of the fraud already alleged in *Edwards*, making further amendment in *Edwards* inevitable. Both complaints assert claims under Exchange Act §§10(b) and 20(a) and SEC Rule 10b-5 – the very claims that the §10(b) Lead Plaintiff was expressly appointed to lead under the PSLRA – and both name common Defendants, Dickson and Spence. Both complaints allege misstatements and omissions concerning McDermott's liquidity and capital structure and its purchase, ownership, and potential sale of the Lummus Technology Business, flowing from McDermott's ill-fated merger with Chicago Bridge & Iron Company, N.V. ("CB&I") that drove it to bankruptcy. The §10(b) complaint more extensively alleges core issues, like Defendants' scienter, based on underlying facts that were later alleged, in part, in the *Ahnefeldt* complaint. *Compare, e.g.*, *Edwards* Dkt. No. 105 ¶¶328-394 (34-page Scienter section based on¸ *inter alia*, Defendants' financial motives due to their compensation plan and bonuses, their signing/being quoted in alleged misstatements, their certifying alleged misstatements under the Sarbanes-Oxley Act of 2002, their violations of the

3

company's code of conduct, and the core operations doctrine) *and Ahnefeldt* Dkt. No. 1 at ¶¶86-99 (4-page Scienter section pleading the same bases).  This clear overlap gives obvious rise to risks of conflicting rulings that strongly supports the §10(b) Lead Plaintiff's request for transfer and consolidation, as do the obvious judicial inefficiencies, *e.g.* arising from redundant class certification motions.

The PSLRA lead plaintiff process was ***completed*** in June 2019 in connection with the alleged securities fraud at McDermott.  Pursuant to 15 U.S.C. §78u-4(a)(3)(B), the §10(b) Lead Plaintiff was appointed to oversee this litigation from among the ***<u>seven</u>*** lead plaintiff applications – four by institutional investors and three by retail investors – that were timely filed in January 2019 in compliance with the PSLRA's statutorily imposed deadline in *Edwards*.  Specifically, the Court's June 4, 2019 lead plaintiff order in *Edwards* appointed NSHEPP to oversee as lead plaintiff "***<u>all</u>***" class-wide claims on behalf of McDermott investors arising under Exchange Act §10(b).  *See Edwards* Dkt. No. 84 at 2.  Having been so appointed, the PSLRA vests the §10(b) Lead Plaintiff with broad authority to oversee and direct the factual and legal allegations against McDermott and its executives; that is, the authority to prosecute all related facts, claims, and theories – a responsibility that necessarily includes the authority to "'vigorously pursue ***all available causes of action*** against ***all possible defendants*** under ***all available legal theories***.'"  *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (emphasis added) (citation omitted).

Consistent with the strict statutory deadline set forth in 15 U.S.C. §78u-4(a)(3)(A)(ii), the PSLRA does not permit class members who fail to move for lead plaintiff to later file an overlapping or related action and seek to initiate yet another round of lead plaintiff motions when additional facts or circumstances come to light that impact the pending claims.  *See generally In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty

(60) days of the published notice for the first-filed action."). Despite the §10(b) Lead Plaintiff's having raised this concern during litigation of the Motion to Consolidate, the twenty-one *Ahnefeldt* plaintiffs have not stated, on the record, whether they purchased shares during the *Edwards* Class Period, a fact that would fatally undermine their efforts at launching a second lead plaintiff process now. Lead Counsel has, through continued efforts, uncovered yet another message from one of the *Ahnefeldt* plaintiffs, as part of their outreach to at least **ten** lawyers from **seven** law firms during February – June 2020 seeking a law firm that would accept their case despite its obvious conflict with the *Edwards* action. In this message, *Ahnefeldt* plaintiff Daniel Gad contacted Lead Counsel on June 10, 2020, providing a signed "Certification Pursuant to Federal Securities Law." *See* Tuccillo Declaration, Exhibit 1. This document, signed by Mr. Gad, lists **five** purchases of McDermott stock during the ***original*** class period at issue in *Edwards* (January 24, 2018 – October 30, 2018), which was the subject of the PSLRA notice in late 2018 that gave rise to the contested lead plaintiff process from January – June 2019. *Id.* Specifically, Mr. Gad purchased (a) 1751 shares on May 2, 2018, (b) 231 shares on June 4, 2018, (c) 110 shares on August 15, 2018, (d) 88 shares on October 12, 2018, and (e) 100 shares on October 12, 2018. This signed document ***conclusively*** demonstrates that at least one member of the *Ahnefeldt* plaintiffs could have – and should have – moved for a lead plaintiff appointment in *Edwards*. Given the contiguous nature of the class periods at issue in *Edwards* and *Ahnefeldt* and the resulting, extensive overlap in their class membership, the same is likely true of most if not all investors who may file motions tonight.

Thus, for the reasons set forth in the §10(b) Lead Plaintiff's briefs on its Motion to Consolidate (*see Edwards*, Dkt. Nos. 147, 148, 153, 154 and exhibits thereto), which are incorporated herein by reference, any purported lead plaintiff process in this action is improper, duplicative, and inconsistent with the PSLRA. Moreover, the PSLRA's text, 15 U.S.C. §78u-4(a)(3)(B)(ii), ***requires*** that motions to consolidate be resolved ***before*** consideration of any lead

5

plaintiff motions.  Consequently, the §10(b) Lead Plaintiff has asked Judge Hanks (*see Edwards*, Dkt. No. 147) to order that a corrective notice to be published informing all putative class members that the lead plaintiff deadline in this related *Ahnefeldt* case is vacated, since granting the §10(b) Lead Plaintiff's Motion to Consolidate would obviate the need for consideration of such motions.

For these reasons, the §10(b) Lead Plaintiff respectfully submits that this Court should not entertain a second round of lead plaintiff motions, as any such motions are untimely under the deadline set forth in 15 U.S.C. §78u-4(a)(3)(A)(i)(II) (which expired in June 2019), per the notice published in the *Edwards* action.  Instead, as detailed in the §10(b) Lead Plaintiff's briefing and argument on the Motion to Consolidate, this *Ahnefeldt* action should be consolidated into the *Edwards* action so the parties' and the Court's attention may return to the imminent resolution of Defendants' motion to dismiss in *Edwards*, which Judge Hanks has said to expect in early October, and thereafter, to the §10(b) Lead Plaintiff's further amendment of the *Edwards* pleadings to formalize the expanded Class Period discussed above and, assuming dismissal was denied in whole or in part, to the discovery phase of the consolidated litigation.  McDermott's investors have waited nearly two years for their chance at a recovery, during which time the §10(b) Lead Plaintiff zealously litigated the Exchange Act §10(b) claims, and with the company bankrupt and limited insurance coverage being drained, it is vitally important that tag-along litigation not needlessly consume precious time and resources any further.

**B.     The Existing §10(b) Lead Plaintiff Should Oversee This Action**

To the extent necessary to preserve its rights as Court-appointed PSLRA lead plaintiff, the §10(b) Lead Plaintiff hereby moves to be appointed to fill that role in this *Ahnefeldt* action as well, incorporating by reference herein its prior-filed lead plaintiff motion papers and Certifications filed and updated in the *Edwards* action over the past ~20 months, as well as its accompanying certification.  *See Edwards*, Dkt. Nos. 22-24, 50, 63 (Lead Plaintiff briefing); Dkt. Nos. 24-2, 105

6

at pp. 270-272 (Certifications); Tuccillo Declaration, Exhibit 2.  These filings reveal the §10(b) Lead Plaintiff's continued, substantial financial stake in this securities litigation regarding McDermott's descent from the CB&I merger into bankruptcy.  Significantly, expanding from the *Edwards* class period to the expanded Class Period serves to *increase* the §10(b) Lead Plaintiff's recoverable losses, as the *Ahnefeldt* action piggy-backs on the latter portion of the class period alleged in the *Edwards* action that the §10(b) Lead Plaintiff is already prosecuting on behalf of a putative class of the same investors and runs it through additional misstatements to one more corrective disclosure date coinciding with the stock drop caused by McDermott's announced bankruptcy a few months later.  Particularly where the §10(b) Lead Plaintiff has stated an intention to amend to expand the *Edwards* Class Period to the expanded Class Period, and where there is a pending motion to consolidate, the Court should consider the §10(b) Lead Plaintiff's financial interests arising from the longer expanded Class Period in assessing its fulfilment of the lead plaintiff role over the contiguous class period asserted in *Ahnefeldt*.  *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434-435 (S.D. Tex. 2010) (courts favor using the longer of multiple class periods when selecting lead plaintiffs unless the factual allegations supporting it are obviously frivolous) (citing cases); *Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, No. 15-CV-3415-D, 2016 WL 1625774, at *4 (N.D. Tex. Apr. 25, 2016) (finding movant demonstrated entitlement to the presumption that it is the most adequate plaintiff because allegations supporting the longer class period in its complaint are not obviously frivolous).

Significantly, the PSLRA specifies that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class" and that "[n]ot later than 90 days after the date on which a notice is published . . . the court shall consider any motion made by a purported class member . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court

determines to be most capable of adequately representing the interests of class members." *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II), (B)(i). The governing 60-day period for motions and 90-day period for court consideration were triggered in November 2018 by the PSLRA notice published in the *Edwards* action. The 90-day period expired in February 2019, after which contested motions pursuant to 15 U.S.C. §78u-4(a)(3)(B) were considered, oral argument was held, and the §10(b) Lead Plaintiff was appointed to serve in that capacity in June 2019. *See Edwards*, Dkt. No. 84. No other plaintiff or movant presently before the Court filed a timely motion pursuant to 15 U.S.C. §78u-4(a)(3)(B). The PSLRA **precludes** them from doing so now.

In making its lead plaintiff determination, the Court, pursuant to 15 U.S.C. §78u-4(a)(3)(B), appointed the "most adequate plaintiff." Thus, the §10(b) Lead Plaintiff is the "most adequate" to pursue the claims at issue, which claims are fully encompassed within the expanded Class Period that will be alleged in the *Edwards* action via future amendment. The §10(b) Lead Plaintiff expressly stated, on the record, an intention to pursue such claims in a further amendment in its Opposition to Defendants' motion to dismiss filed on June 19, 2020 – one month **_before_** the *Ahnefeldt* plaintiffs filed this action. *See Edwards* Dkt. No. 145 at 34-35. It did so again during the briefing (*see, e.g.*, *Edwards* Dkt. No. 148) and oral argument on its Motion to Consolidate, during which Judge Hanks gave no indication that such amendment would not be permitted under the liberal standards of Fed. R. Civ. P. 15.[1]

---

[1]    Anticipating an argument by the *Ahnefeldt* plaintiffs and any other potential movants in this improper, duplicative lead plaintiff process, it is not necessary for the §10(b) Lead Plaintiff to have purchased its shares at any specific time within the expanded Class Period. *See, e.g.*, *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. 15-cv-02404, 2015 WL 8207331, at *5 (S.D. Tex. Dec. 7, 2015) (appointing lead plaintiff with stock purchases limited to the final 8 months of a nearly 2-year class period because no reason why it would not pursue claims throughout the entire class period or why doing so would run counter to its interests); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 448 & n.18 (S.D. Tex. 2002) ("A lead plaintiff owes a fiduciary duty to the class…Different interests need not necessarily constitute fatal conflicts."). Indeed, even in cases with multiple

That other class members strategically interjected themselves into the mix by filing a skeletal complaint more quickly than the §10(b) Lead Plaintiff could amend in due course is of no moment and does not warrant fracturing this case into piecemeal litigation tracts.  Nor does it give rise to any entitlement to a second, duplicative lead plaintiff process – indeed the PSLRA was intended to ***eliminate*** such first-to-file tactics and duplicative lead plaintiff contests.  If anything, it underscores why, 15 months into its role, the §10(b) Lead Plaintiff remains the "most adequate plaintiffs" to oversee this litigation in a cohesive, coherent fashion.  For instance, its operative 266-page §10(b) complaint, with respect to which Judge Hanks is on the cusp of resolving Defendants' Fed. R. Civ. P. 12(b)(6) motion, included a ***34-page section*** detailing Defendants' scienter, based on, *inter alia*, Defendants' own admissions in numerous SEC filings, the incorporated statements of 24 confidential witnesses, discussion of significant internal company documents, extensive analysis of Defendants' insider trading patterns during the Class Period, and McDermott's efforts to raise funds during the alleged fraud.  *See Edwards*, Dkt. No. 105 ¶¶328-394.  By contrast, the 48-page *Ahnefeldt* complaint contains a sparse 4-page scienter section that omits all these allegations (while containing certain others that overlap with the §10(b) complaint, as noted above).  *See Ahnefeldt* Dkt. No. 1 at ¶¶86-99.  The disparity is reflective of the time, effort, and expense committed by the §10(b) Lead Plaintiff, and its effective collaboration with the §14(a) Lead Plaintiff, in the 15 months since its appointment by the Court.  It also illustrates why the

---

securities at issue, courts routinely hold that the lead plaintiff need not have purchased every one of them to oversee the litigation. *See, e.g.*, *In re Waste Mgmt., Inc.*, 128 F. Supp. 2d 401, 417, 423, 433 (S.D. Tex. 2000) (appointing lead plaintiff that did not acquire common stock in exchange transactions nor purchase any publicly traded stock options to purchase the company's stock over competing movants who sought recovery for all securities at issue); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (PSLRA authorizes appointment of one lead plaintiff or small cohesive group for a single class and arguments for separate representation based on, *inter alia*, investment in particular types of securities, especially in light of common facts and legal issues, should be raised at the class certification stage).

§10(b) Lead Plaintiff remains the "most adequate plaintiff" best situated to litigate the §10(b) claims it was Court-appointed to oversee in June 2019 and has diligently overseen since.

### C.    The §10(b) Lead Plaintiff Hereby Seeks Discovery Of The *Ahnefeldt* Plaintiffs And Any Other Movants

The failure by Mr. Gad to timely move for a lead plaintiff appointment in *Edwards* back in January 2019, despite his many undisclosed McDermott stock purchases during the class period that was the subject of the PSLRA notice published in *Edwards*, disqualifies him under the plain text of the PSLRA from seeking appointment now to represent the putative class of McDermott investors being asserted in *Ahnefeldt*.   The existence of his undisclosed McDermott stock purchases confirms that due to the contiguous nature of the *Edwards* and the *Ahnefeldt* class periods, investors are mostly likely members of *both* asserted classes.  Any investor who purchased McDermott securities during the *Edwards* class period, but who failed to timely move for appointment as lead plaintiff in *Edwards*, is subject to unique defenses rendering him or her incapable of serving as a lead plaintiff now.

Moreover, as explained in the §10(b) Lead Plaintiff's Motion to Consolidate briefing, the §10(b) Lead Plaintiff secured important protections in McDermott's bankruptcy proceeding, expressly exempting the §10(b) Lead Plaintiff and the *Edwards* class members from the releases and deleterious impacts of the bankruptcy while imposing document retention and discovery obligations on the bankrupt corporate debtor and reorganized debtor.  The *Ahnefeldt* plaintiffs did not do so, having sought to preserve only their individual rights to pursue individual non-Exchange Act claims.  Other unique defenses arise for any investor who, like the *Ahnefeldt* plaintiffs, seeks a duplicative lead plaintiff appointment now but failed to adequately protect the rights of putative class members asserting Exchange Act claims from the impacts of McDermott's bankruptcy.

The existence and prevalence of these affirmative defenses among the *Ahnefeldt* plaintiffs and any other purported lead plaintiff movants in this *Ahnefeldt* action justify the §10(b) Lead Plaintiff's request for discovery pursuant to 15 U.S.C. §78u-4 (a)(3)(B)(iv), which is expressly permitted by the PSLRA where any plaintiff first demonstrates "a reasonable basis for a finding" that a movant is "incapable of adequately representing the class." Such discovery would examine the prior trading histories within the *Edwards* class period of any purported lead plaintiff movants in this *Ahnefeldt* action, their reasons for failing to timely seek a lead plaintiff appointment in *Edwards*, and their reasons for failing to safeguard the rights of the McDermott investors they purport to represent against the deleterious effects of McDermott's bankruptcy.

## II.    CONCLUSION

The Court-appointed §10(b) Lead Plaintiff respectfully urges this Court to honor the statutory lead plaintiff process in the *Edwards* action, which concluded in June 2019 and resulted in the appointment of the §10(b) Lead Plaintiff, under the PSLRA, to serve as "lead plaintiff for **all claims** related to Section 10(b) of the Securities Exchange Act" and expressly contemplated that "[a]ny substantially similar securities class actions relating to the allegations in this case…may on motion be similarly consolidated with the *Edwards* action." *See Edwards* Dkt. No. 84 at 1-2. By statute, Judge Hanks must decide the §10(b) Lead Plaintiff's Motion to Consolidate filed in the *Edwards* action (*Edwards* Dkt. No. 147) **before** any lead plaintiff motions filed in this action may be potentially resolved. If the Court somehow reaches the point of considering lead plaintiff motions filed in this case, the §10(b) Lead Plaintiff respectfully moves to be so appointed, as it is clearly the "most adequate plaintiff" within the clear meaning of the PSLRA, as evidenced by, *inter alia*, its diligence and zealous advocacy over the past 15 months, the time and expense it incurred to date, and the quality of its work on behalf of the putative class of investors, as evidenced by the 266-page, highly detailed §10(b) complaint (*Edwards* Dkt. No. 105) that is about to be

11

adjudicated by Judge Hanks on Defendants' Fed. R. Civ. P. 12(b)(6) motion.  Finally, if desired

by the Court, the §10(b) Lead Plaintiff has expressed a willingness to work with a non-lead-

plaintiff, sub-class representative to be put forward by Lead Counsel in a future motion for class

certification to provide additional oversight for the purported class period pled in the *Ahnefeldt*

action, an arrangement that should moot any arguably legitimate class-wide concerns.


Dated: September 16, 2020          Respectfully submitted,
                                   **POMERANTZ LLP**

                                   */s/Matthew L. Tuccillo*
                                   Matthew L. Tuccillo
                                   (S.D. Tex. Federal Bar # 1467939)
                                   Jeremy A. Lieberman
                                   (S.D. Tex. Federal Bar Number 1466757)
                                   J. Alexander Hood II
                                   (S.D. Tex. Federal Bar Number 3086579)
                                   Jennifer Banner Sobers
                                   (*Admitted Pro Hac Vice*)
                                   600 Third Avenue, 20th Floor
                                   New York, NY 10016
                                   Telephone: (212) 661-1100
                                   Facsimile: (212) 661-8665
                                   Email: jalieberman@pomlaw.com
                                   Email: mltuccillo@pomlaw.com
                                   Email: ahood@pomlaw.com

                                   *Counsel for §10(b) Lead Plaintiff Nova Scotia Health*
                                   *Employees' Pension Plan and Lead Counsel for the*
                                   *§10(b) Class*

                                   **THE BRISCOE LAW FIRM, PLLC**

                                   */s/Willie C. Briscoe*
                                   Willie C. Briscoe
                                   Texas Bar No.: 24001788
                                   Southern District No.: 25157
                                   1980 Park Oak Blvd.
                                   Houston, TX  77056

Telephone: 713-752-2600
Facsimile: 832-201-9950
wbriscoe@thebriscoelawfirm.com

*Attorney-In-Charge, Counsel for §10(b) Lead Plaintiff*
*Nova Scotia Health Employees' Pension Plan, and*
*Liaison Counsel for the §10(b) Class*

13

## CERTIFICATE OF SERVICE

This is to certify that on September 16, 2020, a true and correct copy of the foregoing document was filed on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and correct copies of this filing.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
