**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR., ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIEL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated, | CIVIL ACTION NO.  4:20-cv-02539 |
| Plaintiffs, | CLASS ACTION |
| v. | |
| DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL, | |
| Defendants. | |

**MAJID ALGHASLAN'S MEMORANDUM OF LAW IN OPPOSITION TO**
**COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

Movant Majid Alghaslan ("Mr. Alghaslan"), respectfully submits this Memorandum of Law in further support of his Motion for Appointment as Lead Plaintiff (Dkt. No. 23), and in opposition to the Motions filed by John Vuong ("Mr. Vuong") (Dkt. No. 19), the Coligado Shareholder Group (the "Coligadi Group") (Dkt. No. 21), Wei Ye ("Mr. Ye") (Dkt. No. 24), and the Nova Scotia Health Employee's Pension Plan ("NSHEPP") (Dkt. No. 25).

## I.     PRELIMINARY STATEMENT

This case is a securities class action on behalf of investors who purchased McDermott International, Inc. ("McDermott") securities (the "Class") between September 20, 2019 and January 23, 2020, both date inclusive (the "Class Period"). The Complaint alleges Defendants violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. *See* Dkt. No. 1.

The Private Securities Litigation Reform Act ("PSLRA") directs the Court to appoint the person(s) it "determines to be most capable of adequately representing the interests of the class members" as lead plaintiff and creates a presumption that the most adequate plaintiff is the person(s) who "has the largest financial interest" and who "otherwise satisfies the requirements of Rule 23…" 15 U.S.C. § 78u-4(a)(3)(B)(i)-B(iii). This presumption may only be rebutted upon proof that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses. *Id.*

The PSLRA does not specify how the court should determine which plaintiff has the largest financial interest in the relief sought by the Class. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002). Courts in this district have considered four factors relevant to the calculation of the largest financial interest: (1) the number of shares purchased; (2) the number of net share purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the

1

approximate losses suffered by the plaintiffs. *Id.* Courts have placed the greatest emphasis on the fourth factor. *Kakkar v. Bellicum Pharma, Inc. et al.*, 2019 WL 1367653, at *2 (S.D. Tex. Mar. 26, 2019). "FIFO, or 'first in, first out,' and LIFO, or 'last in, first out,' are both frequently employed methodologies for the purposes of [approximate] loss calculation." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010) (internal citations omitted). Courts have also considered the *Dura* Method when calculating the largest financial interest. *See Marcus v. J.C. Penney Co., Inc.,* 2014 WL 11394911 at *3 (E.D. Tex. Feb. 28, 2014).

Before this Court are five competing motions for Lead Plaintiff. The following table demonstrates each movant's financial interest in this Action:

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Losses | Dura Losses (LIFO) |
|---|---|---|---|---|---|
| Majid Alghaslan | 2,268,000 | 2,268,000 | ($1,872,921.00) | $1,764,737.76 | $1,764,737.76 |
| John Vuong | 435,500 | 435,500 | ($734,735.00) | $713,928.50 | $713,928.50 |
| Wei Ye | 204,882 | 204,882 | ($214,480.52) | $204,410.00 | $204,410.00 |
| NSHEPP[1] | 25,052 | 25,051 | ($517,819.00) | $515,812.00 | $515,806.33 |
| The Coligado Group | 1,787,233 | 235,185 | ($2,082,789.46) | $1,871,330.48 | $287,823.53 |
| The Coligado Group's Individual Financial Interest | | | | | |
| Christopher Coligado | 398,740 | 0 | ($649,128.56) | $586,833.30 | 0 |
| Aarthi Srinivasan | 391,641 | 0 | ($317,852.89) | $267,331.20 | 0 |
| Adam Shultz | 246,919 | 0 | ($282,188.16) | $211,460.74 | 0 |
| Arden Ahnefeldt | 100,000 | 100,000 | ($143,173.96) | $138,393.96 | $138,393.96 |
| Jayaprakash Srinivasan | 160,338 | 0 | ($129,671.20) | $108,987.60 | 0 |

---

[1] NSHEPP asserts losses based on its request for an expanded class period (December 18, 2017 through January 23, 2020, both dates inclusive) as part of its motion to relate this case to *Edwards v. McDermott Int'l, Inc., et. al.*, No. 4:18-cv-4330 (S.D. Tex.) ("*Edwards* Action") ("Motion to Relate"). *See* Dkt. Nos. 12, 18, 25-27. Mr. Alghaslan opposes the Motion to Relate because this case involves misrepresentations and omissions from September 20, 2019 through January 23, 2020 about the potential acquisition of McDermott's Lummus Technology business while the *Edwards* Action involves misrepresentations and omissions from December 18, 2017 through September 17, 2019 about the integration and operation of projects and businesses acquired from Chicago Bridge & Iron Company, N.V. However, should the Court consider the expanded class period, Movant would still have a larger financial interest in this Action than NSHEPP.

| | | | | | |
|---|---|---|---|---|---|
| Anne Ingeldew | 81,400 | 0 | ($106,436.12) | $90,525.72 | 0 |
| Khahn Bui | 90,000 | 83,560 | ($95,497.70) | $85,676.91 | $81,585.93 |
| Robert Brower Sr. | 70,750 | 14,500 | ($86,020.00) | $68,959.40 | $25,836.90 |
| Robert Brower Jr. | 100,949 | 0 | ($57,487.45) | $65,966.68 | 0 |
| Amit Somani[2] | 23,667 | 0 | ($59,728.70) | $38,612.97 | 0 |
| Alexandre Tazi | 36,100 | 0 | ($44,856.41) | $35,775.89 | 0 |
| Edwin Howell | 18,480 | 0 | ($26,891.86) | $26,008.52 | 0 |
| Amira Yousef Chowdhury | 11,800 | 11,800 | ($16,973.66) | $16,409.62 | $16,409.62 |
| Christopher Swedlow | 12,914 | 0 | ($15,515.00) | $13,319.62 | 0 |
| Darren Hunting | 8,500 | 0 | ($14,157.55) | $12,454.55 | 0 |
| Daniel Gad | 12,000 | 12,000 | ($12,274.65) | $11,701.05 | $11,701.05 |
| Jignesh & Krutika Chandarana[3] | 4,425 | 4,425 | ($7,434.00) | $7,222.49 | $7,222.49 |
| Shital Mehta | 8,900 | 8,900 | ($7,099.00) | $6,673.58 | $6,673.58 |
| Sioe Lie Howell | 4,400 | 0 | ($5,141.59) | $4,326.89 | 0 |
| Thomas Carl Rabin | 5,300 | 0 | ($5,261.00) | $2,634.80 | 0 |

While the 21 unrelated members of the Coligado Group collectively claim the largest financial interest, their losses should not be aggregated to determine their losses because most of them do not have "a pre-litigation relationship based on more than the losing investments at issue in this case" and their group is "too large and unwieldy to serve as a cohesive group;" therefore they cannot adequately represent the Class. *See Abouzied v. Applied Optoelectronics, Inc.* 2018 WL 539362, at *3-4 (S.D. Tex. 2018).[4] Since Mr. Alghaslan possesses the next largest financial interest in this Action, he is presumptively the most adequate lead plaintiff. The other Movants can bring forth no evidence showing that Mr. Alghaslan is somehow atypical or inadequate to serve in this capacity. Accordingly, the Court should grant his motion in its entirety, appointing him as Lead Plaintiff and approving his selection of Roche Cyrulnik Freedman LLP ("RCF") as Lead Counsel and Kendall Law Group PLLC ("KLG") as local counsel.

---

[2] Amit Somani also claims $71,055.00 in call options losses.
[3] Jignesh and Krutika Chandarana also claim $1,000 in call option losses.
[4] Unless otherwise noted, all emphasis added and internal citations omitted.

3

## II.    ARGUMENT

### A.    Mr. Alghaslan has the largest financial interest among permissible competing movants in the relief sought by the Class.

Mr. Alghaslan is an individual class member with a substantial stake in this litigation, having lost over $1,764,737.76 as a result of the alleged fraud – more than the losses of the remaining individual lead plaintiffs movants **combined**. Moreover, he purchased more shares and retained more shares than all the other movants, including the Coligado Group, and suffered greater losses under *Dura* than all the other movants.[5] Since Mr. Alghaslan has the greatest loss no matter what calculation or methodology is applied, and therefore the largest financial interest of all the permissible lead plaintiff movants, he is the presumptive lead plaintiff under the PSLRA and should be appointed lead plaintiff. *See* 15 U.S.C. § 77u-4(a)(3)(B)(iii)(I).

### B.    The Court should not appoint 21 lead plaintiffs from the Coligado Group

#### 1.    *The Court should not aggregate the losses of the 21 <u>unrelated</u> individuals who comprise the Coligado Group*

The PSLRA's provisions on appointing lead plaintiffs contain language referencing a "person or group of persons." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). However, it does not state whether individuals, particularly 21 unrelated individuals, may aggregate their losses as a group for the purpose of having the largest losses in order to be appointed lead plaintiff. *See In re Cavanaugh,* 306 F.3d 726, 731 n. 8 (9th Cir. 2002) (noting that although the statute states a "group of persons" can serve as lead plaintiff, the court would not be determining whether a group could aggregate losses to satisfy the "largest financial interest" requirement).

Therefore, as discussed below, courts in this district (and around the country) limit what

---

[5] In *Dura Pharmaceuticals, Inc. v. Broudo*, the Court noted that private securities fraud actions are not intended "to provide investors with broad insurance against market losses, but to protect them against economic losses that misrepresentations actually cause." 544 U.S. 336, 345 (2005).

types of groups may aggregate their losses in determining the great financial interest. Courts have reasoned that a "narrow view" of the word "group" is "consistent with the legislative intent to increase investors'/clients' control over appointed counsel" and is the better view "since any ambiguity in the [PSLRA] should be resolved by a determination of the drafters' intent." *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 412 (S.D. Tex. 2000) (reviewing various approaches to "groups" and concluding that the PSLRA permits only a "small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment"); *see also Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 853 (S.D. Ind. 1999) (finding that it was not an accurate interpretation of the PSLRA to select a group of investors "who have the largest aggregate losses but who have nothing in common with one another beyond their investment" as lead plaintiff); *In re E. Spire Commc'ns, Inc. Sec. Litig.*, 231 F.R.D. 207, 213 (D. Md. 2000) (finding that a "group of persons" under the PSLRA "should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153-54 (N.D. 1999) (adopting a narrow definition of "group" to mean individuals who had a meaningful relationship preceding the litigation and who are united by more than the mere happenstance of having bought the same securities).

Accordingly, "to satisfy the terms and effectuate the underlying policy of the PSLRA to guarantee effective control of the litigation and supervision of lawyers by the plaintiffs, unrestricted aggregation of unrelated plaintiffs by manipulating lawyers should not be permitted." *Enron*, 206 F.R.D. at 442; *see also In re Atlas Mining, Co. Sec. Litig.*, 2008 WL 821756, at *5 (D. Idaho Mar. 25, 2008) (refusing to aggregate the losses of a group that did not have a pre-existing relationship for the purposes of determining who has the largest financial interest as "appointing

5

the group as lead plaintiff would not best serve the class" and would "defeat the PSLRA's purpose to prevent lawyer-driven litigation"). Further, courts who have chosen to aggregate a group of unrelated investors as the lead plaintiff typically do so when the appointment is unopposed, no individual entity is eligible for appointment as lead plaintiff, or in circumstances when the group offered something that the other proposed lead plaintiffs did not. *See generally Richard NMI Bell v. Acendant Solutions, Inc.*, 2002 WL 63571 (N.D. Tex. 2002); *see also Johnson v. Pozen Inc.*, 2008 WL 474334, at *1 (M.D.N.C. Feb. 15, 2008); *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 106 (D. Conn. 2006).

In this case, the Coligado Group has impermissibly aggregated the losses of unrelated individuals for purposes of securing designation as lead plaintiff. Absent two married couples and a father-son relationship, the Coligado Group consists of 21 individuals who have not demonstrated (because they cannot) any pre-litigation relationship with one another. Their relationship arises solely from their losses in McDermott. Thus, allowing for the aggregation of the Coligado losses to become the "most adequate plaintiff" is impermissible and would undermine the PSLRA's purpose of preventing lawyer-driven litigation. *See McGee v. American Oriental Bioengineering Inc.*, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012). Further, as detailed below, the Coligado Group does not offer anything more to the case than Mr. Algasian can offer as an individual movant. *See Galmi v. Teva Pharma Indust. Ltd.*, 302 F. Supp. 3d 485, 496 (D. Conn. 2017). Moreover, because the Coligado Group has suggested that 2 of its members would represent the 21-member group (*see* Dkt. No. 21-1, Ex. D, E), there is no basis to aggregate the losses of the other 19 members – and their presence is a patent attempt to cobble together the "largest loss." Notably, aggregation of the 2 identified representatives would amount to less than half of Mr. Alghaslan's losses and, therefore, would provide less of an incentive than Mr. Algasian

6

has to prosecute this litigation effectively. Thus, the aggregation of 21 investors is unwarranted here, and absent that aggregation, Mr. Algasian has the largest loss and is presumptively the most adequate lead plaintiff.

### 2. *The Coligado Group Does Not Satisfy the Adequacy Requirement*

Even if the Coligado Group could aggregate their losses, they would not satisfy the adequacy requirement. "At some point, a group becomes too large for its members to operate effectively as a single unit," and "[w]hen that happens, the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the adequacy requirement." *In re Cendant Corp.* Sec. *Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) (collecting cases and agreeing with the SEC "that courts should generally presume that groups with more than five members are too large to work effectively"); *see also Galmi,* 302 F. Supp. 3d at 494; *In re Network Assoc., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1041 (N.D. Cal. 1999). Further, "permitting unrelated investors to form a group of lead plaintiffs also creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent." *Galmi*, 302 F. Supp. 3d at 495. Given these concerns, courts often scrutinize investor groups to consider (1) "whether a movant group is too large to represent the class in an adequate manner," *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447, 450 (C.D. Cal. 2002) and (2) "whether the proposed group is capable of performing the lead plaintiff function," *In re Network Assocs.,* 76 F. Supp. 2d at 1020.

When considering these factors, "a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers .... ordinarily this should be no more than three to five persons, a number that will facilitate joint decision-making and also help to assure that each group member has a sufficiently large stake in the

litigation." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999). In number terms, courts routinely deny large groups that are **much smaller** than 21 people. *See, e.g.*, *Peters v. Jinkosolar Holding Co.,* 2012 WL 946875, at \*7 (S.D.N.Y. Mar. 19, 2012) ("courts appear to generally agree that a group comprising of five or fewer members is appropriate"); *In re Gemstar-Tv Guide Int'l Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002) (refusing to appoint a seven-member group because it "has too many members to manage [litigation] effectively").

Most importantly, however, the Fifth Circuit has similarly found it "notable" that the SEC believes lead plaintiff groups should not exceed five people and has cited cases from this District (and others) with approval that held courts should appoint "at maximum **a small group** with the largest financial interest . . . an**d a pre-litigation relationship based on more than their losing investment**. . . ." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001); *Abouzied v. Applied Optoelectronics, Inc*, No. 4.17-CV-2399, 2018 WL 539362, at \*3 (S.D. Tex. Jan. 22, 2018) (finding there to be "precedent in the Southern District of Texas following the 'strictest approach,' which requires that a group appointed as lead plaintiff should consist of no more than five individuals"); *Enron*, 206 F.R.D. at 442 ("The SEC has indicated that generally a group of investors appointed as Lead Plaintiffs should be no larger than three to five persons.").

Thus, while there is clear support for an upper limit of just five persons to a group in this Circuit, this Court need not resolve whether that is an absolute limit or whether some cases could merit an exception from the guidance of the Fifth Circuit, the SEC, and other courts in this District. That's because the unrelated, unwieldy, and massive 21-person Coligado Group exceeds all reasonable bounds. Absent two married couples and a father-son relationship, the Coligado Group consists of 21 individuals who lack any pre-litigation relationship based on anything other than their losses in McDermott. The 21-person group, by its size alone, lacks sufficient cohesiveness to

8

effectively control counsel and efficiently manage the litigation. *See Abouzied*, 2018 WL 539362, at *5 (finding 12-person group not adequate where they had "cobbled together a group of unrelated people" who had "no mechanism for resolving disputes" and indeed, each person "st[ood] ready and willing to abandon the group and serve as sole-lead plaintiff"). Specifically, the Coligado Group has not shown that it has considered, let alone determined, *inter alia*, how to account for and efficiently manage the exponential increase in costs and fees posed by 21 international lead plaintiffs—spread across 10 different states/provinces (Texas, New York, Wisconsin, Delaware, California, Virginia, Georgia, Florida, Alberta-Canada, and Quebec-Canda)—who must produce documents and provide testimony during this litigation. Nor has the Coligado group demonstrated why it's in the best interests of the class to expend substantially more resources on fees and costs related to 20 extra depositions, 20 extra document productions, 20 extra sets of interrogatories, 20 extra sets of requests for admission, and all the other increased costs associated with catering to 20 extra clients.

Furthermore, with 21 clients spread across 10 different states/countries, it is a forgone conclusion that it will be the lawyers controlling this group, not the group controlling counsel; this dynamic defeats the very reason the PLSRA was enacted, to stop lawyer driven litigation. *See Abouzied*, 2018 WL 539362, at *5 ("The PSLRA operates to ensure that plaintiffs control the litigation, not the lawyers"). And while the Coligado Group has attempted to address some of these concerns by purporting to authorize two member representatives to handle nearly all the lead plaintiff responsibilities, this simply underscores the fact that the remaining 19 members are undeniably only present in an attempt to bolster the size of the Coligado Group's loss, do not add any value to the Class as lead plaintiffs, and should not be counted.  But the inclusion of 19 passive "lead plaintiffs" is not only a farce, but as discussed above, would be a cost-increasing distraction

9

from the efficient management of the litigation.

In sum, the 21-member Coligado Group cannot demonstrate adequacy. A contrary holding would needlessly incentive massive, unwieldy groups seeking appointment as lead plaintiffs under circumstances where individuals or smaller cohesive groups have the greatest losses and the ability to most effectively and efficiently represent the class.

### C.  Mr. Alghaslan is typical and adequate.

Since Mr. Alghaslan is entitled to the presumption that he is the most adequate lead plaintiff, he should be appointed, absent a competing movant providing ***proof*** that Mr. Alghaslan is either atypical or inadequate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Specifically, the presumption may be rebutted only upon proof that Mr. Alghaslan "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such a plaintiff incapable of adequately representing the class." *Id.* The other movants have no such proof because there is none.[6]

Mr. Alghaslan is identically situated to, and therefore typical of, the rest of the Class. Mr. Alghaslan, like all class members, purchased McDermott securities during the Class Period at prices that were artificially inflated as a result of Defendants' alleged fraud and retained those shares past the corrective disclosure, thereby suffering catastrophic losses. *See Enron*, 206 F.R.D. at 441. Furthermore, Mr. Alghaslan relies on the same legal theories as the rest of the class. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). And, as detailed above, there is no

---

[6] NSHEPP argues that it would be the "most" adequate and typical lead plaintiff based on its role as Lead Plaintiff in the alleged related case. *See* Dkt. No. 26. However, whether a court believes another plaintiff may be "more typical" or "more adequate" has no effect on the presumption of lead plaintiff. *In re Plains All Am. Pipeline, L.P. Sec. Litig.,* 2015 WL 8207331, at *5 (S.D. Tex. Dec. 7, 2015). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.*

other acceptable competing movant who possesses a stronger financial incentive to zealously advance the interests of the Class. Nor are Mr. Alghaslan's claims subject to any unique defenses.

In addition to Mr. Alghaslan's *prima facie* showing of adequacy and typicality, he has provided further documentation demonstrating his efforts to advocate for his rights as well as other shareholders impacted by the alleged fraud. *See* Declaration of Ivy T. Ngo, Ex. A. This effort took place before counsel even became involved and demonstrates Mr. Alghaslan will manage the litigation and his counsel as required by the PSLRA.

In sum, Mr. Alghaslan is an individual shareholder who has the largest financial interest in this litigation and otherwise satisfies Rule 23 adequacy and typicality. Thus, the presumption that he is the most adequate lead plaintiff cannot be rebutted, and as such, the Court should appoint him as Lead Plaintiff.

### D. Mr. Alghaslan's choice of Counsel should be approved.

In addition, the Court should approve Mr. Alghaslan's selection of RCF as Lead Counsel and KLG as Local Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(v). The record confirms that Mr. Alghaslan's selection of counsel should be approved; RCF is qualified, experienced, and capable of effectively prosecuting this Action on behalf of Mr. Alghaslan and the Class. *See* Dkt. No. 23, pp. 8-10.

### III. CONCLUSION

For the reasons set forth above and in his opening motion papers, Mr. Alghaslan respectfully requests that the Court: (1) appoint Mr. Alghaslan as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired McDermott securities during the Class Period; (2) approve Mr. Alghaslan's selection of RCF as Lead Counsel and KLG as Local Counsel; (3) deny all competing motions for appointment as Lead Plaintiff; and (4) deny the Motion to

Relate.

Dated: October 7, 2020

Respectfully Submitted,

**KENDALL LAW GROUP PLLC**

*/s/ Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219

*Counsel for Lead Plaintiff Movant Majid Alghaslan*
*and Proposed Local Counsel for the Class*

**ROCHE CYRULNIK FREEDMAN LLP**
Velvel (Devin) Freedman (*pro hac vice*
*forthcoming*)
Constantine P. Economides *(pro hac vice*
*forthcoming*)
Ivy T. Ngo (*pro hac vice forthcoming*)
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 971-5943
Emails:  vel@rcfllp.com
              ceconomides@rcfllp.com
              ingo@rcfllp.com

Kyle Roche (*pro hac vice forthcoming*)
Jason Cyrulnik (*pro hac vice forthcoming*)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Emails: kyle@rcfllp.com
              jcyrulnik@rcfllp.com

*Counsel for Lead Plaintiff Movant Majid Alghaslan*
*and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

12

*Additional Counsel for Lead Plaintiff Movant Majid Alghaslan*

13

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on October 7, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

*/s/ Joe Kendall*
Joe Kendall

14