**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR. ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIAL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW, and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>          v.<br><br>DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL,<br><br>     Defendants | **Case No. 4:20-cv-02539-ASH**<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF**
**THE MOTION PURSUANT TO §78u-4(a)(3)(B) BY THE**
**NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN,**
**THE COURT-APPOINTED §10(B) LEAD PLAINTIFF IN THE RELATED**
**_EDWARDS_ ACTION; AND (2) IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................... 1

II.  ARGUMENT ........................................................................................................... 4

    A.  NSHEPP Should Be Reconfirmed as Lead Plaintiff ................................................ 4

        1.  The *Ahnefeldt* Action Should Be Consolidated with the *Edwards* Action . 4

        2.  NSHEPP Is the Court-Appointed Lead Plaintiff in the Properly Consolidated Action ........................................................................................ 6

        3.  There Are no Valid Standing-Based Challenges to NSHEPP's Oversight of the Claims in *Ahnefeldt* ................................................................................... 8

    B.  The Competing Movants are Inadequate and Subject to Unique Defenses ............ 9

        1.  No Competing Movant Timely Sought Appointment as Lead Plaintiff in the Edwards Action ............................................................................................... 10

        2.  The Coligado Shareholder Group is an Improper Group ......................... 12

        3.  Nineteen of the Coligado Shareholder Group's Members Have Already Disavowed the Core Responsibilities of Lead Plaintiffs .......................... 14

        4.  There is no Evidence that the Competing Movants Sought Protection for Edwards Class Members in McDermott's Bankruptcy Proceeding ......... 15

III.  CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*, No. 4:17-CV-2399,
2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ....................................................................12, 13

*Adams v. R.R. Donnelley & Sons*, No. 98 C 4025,
2001 WL 336830 (N.D. Ill. Apr. 6, 2001) ...............................................................................14

*Applestein v. Medivation, Inc.*, No. C 10-00998 MHP,
2010 WL 3749406 (N.D. Cal. Sept. 17, 2010) ........................................................................17

*Brooks v. Lincoln Nat'l Life Ins. Co.*, No. 5:03CV256,
2008 U.S. Dist. LEXIS 121483 (E.D. Tex. Feb. 12, 2008) .....................................................16

*Brown v. Biogen Idec, Inc.*, No. 05-10400-RCL,
2005 WL 8176690 (D. Mass. July 26, 2005) ...........................................................................17

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009) .............................................................................................12

*Carson v. Clarent Corp.*, No. C 01-03361 CRB,
2001 WL 1782712 (N.D. Cal. Dec. 14, 2001) .........................................................................11

*Chun v. Fluor Corp.*, No. 3:18-CV-01338-X,
2020 WL 2745527 (N.D. Tex. May 26, 2020) .........................................................5, 6, 11, 17

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005).....................................................................................................................8

*Dyer v. Publix Super Markets, Inc.*, No. 97-2706-CIV-T25E,
2000 WL 33339613 (M.D. Fla. Mar. 22, 2000) .......................................................................14

*Feldman v. Motorola, Inc.*, No. 90 C 5887,
1993 WL 497228 (N.D. Ill. Oct. 14, 1993)................................................................................8

*Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC,
2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ....................................................................14, 15

*In re BP P.L.C. Sec. Litig.*, No. 10-md-2185,
2013 WL 6388408 (S.D. Tex. Dec. 6, 2013).............................................................................8

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)........................................................................................10, 11

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ...........................................................................................15

*In re Network Assocs., Inc.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................................................16

*In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165,
  2005 U.S. Dist. LEXIS 49978 (E.D. La. Nov. 18, 2005) .......................................................12

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. H:15-cv-02404,
  2015 WL 8207331 (S.D. Tex. Dec. 7, 2015) ....................................................................2, 8, 9

*In re Superior Offshore Int'l, Inc. Sec. Litig.*, No. H-08-0687,
  2008 WL 2148745 (S.D. Tex. May 20, 2008) .......................................................................13

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999).............................................................................10, 11

*In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005),
  *amended by* 2005 WL 226154 (N.D. Cal. Jan. 31, 2005).........................................................8

*In re Waste Mgmt., Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) ............................................................................12, 13

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004)..............................................................................................9

*Marcus v. J.C. Penney Co.*, No. 6:13-CV-736,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) .....................................................................12

*Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449,
  2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) .......................................................................10

*Rao v. Quorum Health Corp.*, No. 3:16-cv-02475,
  2017 WL 6025352 (M.D. Tenn. Feb. 14, 2017) ....................................................................17

*Shaffer v. Dig. Generation, Inc.*, No. 3:13-CV-1684-N,
  2013 WL 12430537 (N.D. Tex. Sept. 19, 2013).....................................................................14

*Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB,
  2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ........................................................................17

*Welch v. Meaux*, No. 19-1260,
  2020 WL 4758269 (W.D. La. Aug. 17, 2020)..........................................................................5

## Statutes

15 U.S.C. § 78u-4(a)(3)(A)(ii) ...............................................................................2, 6, 17

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..........................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ..................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) ...............................................................3, 10, 19

PSLRA ....................................................1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17

Sarbanes-Oxley Act of 2002 ............................................................................................6

## Rules

Fed. R. Civ. P. 23 ...........................................................................3, 9, 10, 14, 16, 19

Fed. R. Civ. P. 42 ..........................................................................................................5, 6

iv

## I.      PRELIMINARY STATEMENT

As set forth below, the instant lead plaintiff appointment process is duplicative of that which concluded in the *Edwards*[1] action more than sixteen months ago and is therefore impermissible under the PSLRA.  The *Ahnefeldt* action should be transferred to Judge Hanks for consolidation with *Edwards*, therefore mooting the lead plaintiff motions currently pending before this Court.  NSHEPP, the court-appointed §10(b) lead plaintiff in *Edwards*, has filed its lead plaintiff motion herein to protect its interests and those of the class members during the pendency of NSHEPP's motion seeking, *inter alia*, transfer of the *Ahnefeldt* action to Judge Hanks for consolidation with *Edwards* (*Edwards* Dkt. No. 147) (the "Consolidation Motion").

On June 4, 2019, NSHEPP was appointed as Lead Plaintiff in the *Edwards* action to pursue §10(b) claims on behalf of all McDermott investors who acquired their securities during a class period extending from January 24, 2018 to October 30, 2018.[2]  *Edwards* Dkt. No. 84.  On October 4, 2019, NSHEPP filed an Amended Complaint in the *Edwards* action, which expanded the class period to extend from December 18, 2017 through September 17, 2019, with alleged corrective events through September 27, 2019.  *Edwards* Dkt. No. 99.  The Amended Complaint alleges misstatements and omissions concerning, *inter alia*, McDermott's liquidity and capital structure and its purchase, ownership, and potential sale of the Lummus Technology Business, a consequence of McDermott's ill-fated merger with CB&I that precipitated its bankruptcy.  A motion to dismiss is now fully briefed.  As discussed in the opening brief, in opposing the motion to dismiss, on June 19, 2020, NSHEPP stated its intention to amend to expand the *Edwards* claims up to McDermott's bankruptcy filing on January 23, 2020.

---

[1]      Unless otherwise specified, all capitalized terms herein are defined as they are in NSHEPP's opening brief.  *See* Dkt. No. 26.  Unless otherwise specified, all "Dkt. No. __ " citations refer to the above-captioned *Ahnefeldt* docket.

[2]      All date ranges stated herein are inclusive with respect to both their start and end dates.

Before NSHEPP could do so, on July 17, 2020, the *Ahnefeldt* plaintiffs (a/k/a the Colligado Shareholder Group) filed this putative class action on behalf of McDermott investors who acquired their securities between September 20, 2019 (a week before the *Edwards* factual allegations end) and January 23, 2020, alleging misstatements and omissions concerning McDermott's liquidity crisis, its potential sale of Lummus, and its Chapter 11 bankruptcy filing. Dkt. No. 1 ¶ 3. Plaintiffs' counsel caused to be published a duplicative PSLRA notice of the action's pendency advising all putative class members of a purported right to seek appointment as Lead Plaintiff no later than September 16, 2020. *See Edwards* Dkt. No. 148-2.

Publication of the *Ahnefeldt* notice and the purported lead plaintiff motion process that it set in motion were improper. The deadline to seek appointment in the *Edwards* action was January 15, 2019—more than twenty months ago—and the PSLRA does ***not*** permit duplicative lead plaintiff motion processes where, as here, two or more actions allege substantively similar claims. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii). NSHEPP is already the Court-appointed §10(b) Lead Plaintiff in the *Edwards* action, pursuing "***all***" §10(b) claims on behalf of McDermott investors who purchased their securities during a class period contiguous with the *Ahnefeldt* class period, alleging facts, misstatements and a theory of fraud of which the *Ahnefeldt* allegations are clearly a continuation. Accordingly, on July 28, 2020, NSHEPP filed its Consolidation Motion (Dkt. No. 147), which is fully-briefed and argued and remains pending.

Accordingly, on September 16, 2020, to protect its rights and those of class members during the pendency of the Consolidation Motion, NSHEPP filed a motion seeking appointment as Lead Plaintiff in *Ahnefeldt*, while reiterating the need to transfer *Ahnefeldt* for consolidation with *Edwards*. *See* Dkt. Nos. 25-26. Four other movants filed competing motions: (1) the *Ahnefeldt* plaintiffs as the 21-member Coligado Shareholder Group (Dkt. No. 21); (2) Majid

2

Alghaslan ("Alghaslan") (Dkt. No. 23); (3) John Vuong ("Vuong") (Dkt. No. 19); and (4) Wei Ye ("Ye") (Dkt. No. 24) (collectively, the "Competing Movants").[3]

Even assuming, *arguendo*, that the Court permits this improper lead plaintiff motion process to proceed and evaluate NSHEPP and the Competing Movants as lead plaintiff candidates, the PSLRA mandates denial of all of the Competing Movants' motions because none is an adequate class representative within the meaning of Fed. R. Civ. P. 23, for reasons that would also constitute disqualifying unique defenses within the meaning of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).   First, none of the movants timely filed Lead Plaintiff motions in the *Edwards* action, despite the fact that the proximity of the overlapping class periods in *Edwards* and *Ahnefeldt* make it highly likely—and, in the case of at least one member of the Coligado Shareholder Group, a demonstrable fact—that these investors were members of the *Edwards* class as well.  Second, the Coligado Shareholder Group, consisting of twenty-one members, is far too large and unwieldy to constitute an appropriate group of the type permitted by the PSLRA and courts in this Judicial District.   Third, nineteen of the twenty-one members of the Coligado Shareholder Group have in effect preemptively relinquished the core responsibilities of lead plaintiffs with respect to making litigation decisions and supervising counsel by attesting that they have delegated these duties to only two of their members.  Fourth, none of the Competing Movants sought sufficient protections for the interests of class members in McDermott's bankruptcy proceeding, while the Coligado Shareholder Group sought only to preserve certain of its members' own individual rights, calling into question both the vigor with which the Competing Movants would prosecute class claims and their willingness to subordinate their own interests to those of a

---

[3]   Ye filed a non-opposition stating that he "does not oppose the competing motions." *See* Dkt. No. 30.  Vuong filed a similar non-opposition.  *See* Dkt. No. 32.  XXX

3

class. Fifth, two of the Competing Movants, Vuong and Ye, have told the Court literally nothing about their backgrounds that would permit the Court to evaluate their adequacy, a nonexistent proffer that falls well short of even the *prima facie* adequacy requirement at this stage of the litigation.

Finally, considering the high probability that many, if not all, of the Competing Movants are also members of the class in the *Edwards* action who would have been eligible to seek appointment as Lead Plaintiff in that action on the January 15, 2019 deadline to do so, NSHEPP requests discovery into the Competing Movants' transactions during the *Edwards* class period and their decisions not to seek appointment as Lead Plaintiffs in *Edwards*, pursuant to the PSLRA, 15 U.S.C. §78u-4 (a)(3)(B)(iv). Likewise, NSHEPP requests discovery into the reasons why none of the Competing Movants sought protection for any class claims in McDermott's bankruptcy proceeding. Their failure to take these actions is a disabling conflict in this purported PSLRA lead plaintiff process.

## II.    ARGUMENT

### A.    NSHEPP Should Be Reconfirmed as Lead Plaintiff

#### 1.    The *Ahnefeldt* Action Should Be Consolidated with the *Edwards* Action

The PSLRA unambiguously instructs that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall ***not***" appoint a lead plaintiff "until ***after*** the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (emphases added). Accordingly, consolidation is a threshold question that must be adjudicated ***before*** the Court considers any motion for Lead Plaintiff filed in the *Ahnefeldt* action. If Judge Hanks determines that consolidation of the *Ahnefeldt* and *Edwards* actions is

4

warranted, then the duplicative and improper lead plaintiff appointment process in *Ahnefeldt* is rendered moot along with all lead plaintiff motions pending therein.

As NSHEPP has argued in the memorandum of law in support of its Consolidation Motion (*Edwards* Dkt. Nos. 147-148), which remains pending as of the time of this submission, and in its opening brief in support of its instant motion herein (Dkt. No. 25), transfer of the *Ahnefeldt* action to Judge Hanks for consolidation with *Edwards* is plainly warranted. Fed. R. Civ. P. 42(a) provides for consolidation where actions "involve a common question of law or fact." *See also Chun v. Fluor Corp.*, No. 3:18-CV-01338-X, 2020 WL 2745527, at *4-*5 (N.D. Tex. May 26, 2020) (consolidating securities class actions); *Welch v. Meaux*, No. 19-1260, 2020 WL 4758269, at *1-*2 (W.D. La. Aug. 17, 2020) (same). Here, common questions of law and fact predominate the *Ahnefeldt* and *Edwards* actions. Factually, the two actions overlap both temporally and topically, to the extent that the allegations in the *Ahnefeldt* action are a continuation of the same course of conduct alleged in the *Edwards* action. The operative *Edwards* §10(b) complaint alleges a class period ending on September 17, 2019, with facts and corrective disclosures extending to September 27, 2019, encompassing the events leading up to McDermott's impending bankruptcy. *See generally Edwards* Dkt. No. 105. The *Ahnefeldt* complaint, meanwhile, alleges a class period beginning on September 20, 2019—*i.e.*, overlapping with the *Edwards* time period by one week— and running until January 21, 2020, the date on which McDermott announced its bankruptcy, and encompassing the resulting stock drop on January 23, 2020. *See generally* Dkt. No. 1. Considering that the *Edwards* complaint's allegations encompass McDermott's anticipated bankruptcy, further amendment to the operative *Edwards* complaint to include the subsequent announcement of the company's bankruptcy just months later is inevitable.

The *Ahnefeldt* and *Edwards* complaints are also replete with common legal issues. Both complaints assert claims arising under §§10(b) and 20(a) and SEC Rule 10b-5 against two common Defendants, Dickson and Spence. Both complaints allege misstatements and omissions concerning McDermott's liquidity and capital structure and its purchase, ownership, and potential sale of the Lummus Technology Business, flowing from McDermott's ill-fated merger with CB&I that precipitated McDermott's bankruptcy. Both complaints allege scienter upon the same bases (albeit more thoroughly in the *Edwards* complaint), including, *inter alia*, Defendants' financial motives due to their compensation plan and bonuses, their signing/being quoted in alleged misstatements, their certifying alleged misstatements under the Sarbanes-Oxley Act of 2002, their violations of the company's code of conduct, and the core operations doctrine.

In sum, all of the foregoing issues create a non-speculative risk of conflicting rulings and other judicial inefficiencies if the *Ahnefeldt* and *Edwards* actions were to proceed independently, under separate leadership. The Court should avoid this outcome by transferring the actions to Judge Hanks for consolidation pursuant to Fed. R. Civ. P. 42(a).

### 2.   NSHEPP Is the Court-Appointed Lead Plaintiff in the Properly Consolidated Action

If the *Ahnefeldt* and *Edwards* actions are consolidated, then the Court must confirm NSHEPP, the court-appointed Lead Plaintiff in the *Edwards* action, as the Lead Plaintiff in the consolidated action. The PSLRA provides for only *one* lead plaintiff appointment process where multiple complaints allege similar claims, unequivocally stating, in relevant part, that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published" advising investors of the PLSRA's lead plaintiff motion deadline. 15 U.S.C. § 78u-4(a)(3)(A)(ii). *See also Fluor*, 2020 WL 2745527, at *5-*6 ("declin[ing] to restart the lead plaintiff

6

selection process" in first-filed action when subsequently filed complaint expanded the class period, because the original lead plaintiff motion "deadline expired nearly two years ago," noting that the "text of the statute does *not* contemplate a restarting of the lead plaintiff selection process") (emphasis added).  Accordingly, because the *Ahnefeldt* action clearly alleges substantively the same claims as the *Edwards* action, the only lead plaintiff process permitted by the PSLRA was the process adverted to in the notice of pendency of the *Edwards* action, which advised McDermott investors that they had sixty days from November 16, 2018 – *i.e.*, until January 15, 2019 – to seek lead plaintiff appointment.  *See*, *e.g.*, Dkt. No. 24-1.  That deadline, of course, lapsed roughly twenty months before the purported September 16, 2020 deadline of which counsel for plaintiff in the *Ahnefeldt* action improperly caused notice to be published, thereby setting in motion this duplicative and improper process.  Of the movants now before the Court, *only* NSHEPP timely filed a motion seeking appointment as Lead Plaintiff in the *Edwards* action (a fact which would mandate denial of all the Competing Movants' motions on the basis of their inadequacy even if the Court were to permit this improper process to proceed, as discussed below.  Following a vigorously contested lead plaintiff motion process lasting roughly six months, involving seven movants, multiple rounds of briefing and oral argument, the *Edwards* court ultimately found NSHEPP to be the "most adequate plaintiff" within the meaning of the PSLRA and thus appointed it as Lead Plaintiff "for all claims related to Section 10(b) of the Securities Exchange Act." *Edwards* Dkt. No. 84.

Accordingly, with the *Edwards* court's Lead Plaintiff appointment order establishing that NSHEPP is the "most adequate plaintiff" within the meaning of the PSLRA with respect to oversight of the Class's §10(b) claims, and because the *Ahnefeldt* action must be transferred to Judge Hanks for consolidation with the *Edwards* action, NSHEPP respectfully submits that it

should ultimately be reconfirmed as Lead Plaintiff overseeing all §10(b) claims in the consolidated action.

### 3.     There Are no Valid Standing-Based Challenges to NSHEPP's Oversight of the Claims in *Ahnefeldt*

Anticipating a potential argument by one or more of the Competing Movants, NSHEPP respectfully submits that there are no valid standing-based challenges to NSHEPP's appointment as Lead Plaintiff in a consolidated action encompassing the class periods and claims alleged in both *Edwards* **and** *Ahnefeldt* arising from the timing of NSHEPP's purchases of McDermott securities. With respect to standing in PSLRA actions, "[t]he Supreme Court has indicated that a securities fraud plaintiff has experienced injury if he, at the time of any alleged corrective disclosure, held shares which he purchased during the Class Period at allegedly inflated prices." *In re BP P.L.C. Sec. Litig*., No. 10-md-2185, 2013 WL 6388408, at \*9 (S.D. Tex. Dec. 6, 2013) (finding that lead plaintiffs met the standard for injury and standing regardless of the timing of their purchases of securities) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005)). Indeed, "[w]ere the rule otherwise, there could never be a class action in securities fraud cases because a representative plaintiff would potentially be needed for each day of the class period, since on each day the mix of information available to the public would vary." *Id.* (citing *Feldman v. Motorola, Inc*., No. 90 C 5887, 1993 WL 497228, at \*6 (N.D. Ill. Oct. 14, 1993)). *See also In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 WL 7877645, at \*3 (N.D. Cal. Jan. 13, 2005) (finding plaintiffs had standing even though alleged misrepresentations were made after plaintiffs' stock purchases), *amended by* 2005 WL 226154 (N.D. Cal. Jan. 31, 2005).

Nor does the length of the class period change the analysis. *See*, *e.g.*, *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. H:15-cv-02404, 2015 WL 8207331, at \*5 (S.D. Tex. Dec. 7, 2015) (appointing lead plaintiff with stock purchases limited to the final eight months of a nearly two-

8

year class period, finding no reason why the lead plaintiff "would not pursue claims throughout the entire class period or why asserting early-in-the-class-period claims would run counter to [lead plaintiff's] interests."). *See also Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502 (S.D. Tex. 2004) (finding movants' purchases of stock late in the class period did not render them atypical of the class).

The class period alleged in the operative *Edwards* complaint extends from December 18, 2017 through September 17, 2019, while the *Ahnefeldt* complaint alleges a class period extending from September 20, 2019 through January 23, 2020. Accordingly, the class period in the consolidated action will encompass both of the foregoing class periods, thereby extending at least from December 18, 2017 through January 23, 2020. All of NSHEPP's purchases of McDermott securities occurred in May 2018 (*see* Dkt. No. 27-2 at *5), during the expanded class period. As discussed above, the timing of NSHEPP's purchases has no bearing whatsoever on its standing to pursue §10(b) claims with respect to the entire consolidated class period in the consolidated action, and there is no support in PSLRA jurisprudence for a challenge to NSHEPP's appointment as Lead Plaintiff on this basis. The applicable law clearly permits NSHEPP to serve as a fiduciary and pursue §10(b) claims on behalf of **all** class members in the consolidated action. NSHEPP stands ready to serve in that capacity and has no incentives not to do so.

### B.     The Competing Movants are Inadequate and Subject to Unique Defenses

Even assuming *arguendo* that the duplicative lead plaintiff motion process initiated by counsel for Plaintiff in the *Ahnefeldt* action was proper, and that the movants before the Court are thus to be evaluated as lead plaintiff candidates pursuant to the process set forth in the PSLRA, all of the Competing Movants are inadequate within the meaning of Rule 23 and subject to unique defenses. The PSLRA provides that the "most adequate plaintiff," and thus the presumptive lead plaintiff, is the movant with the greatest financial interest in the outcome of the action; **and** who

9

satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Even where a movant satisfies the two foregoing criteria, the PSLRA still mandates denial of their motion if the movant is "subject to unique defenses that render [the movant] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Here, irrespective of the Competing Movants' financial interests in this action, the PSLRA mandates denial of their motions because each is inadequate within the meaning of Rule 23 for one or more reasons, which would also constitute disqualifying unique defenses.

### 1. No Competing Movant Timely Sought Appointment as Lead Plaintiff in the *Edwards* Action

None of the Competing Movants timely filed a lead plaintiff motion on the January 15, 2019 deadline to do so in the *Edwards* action. The PSLRA "is unequivocal and imposes precise time requirements; therefore all motions for appointment of Lead Plaintiff must be filed within sixty days of the published notice." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439-40 (S.D. Tex. 2002) (citing *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999)). *See also Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2017 WL 3780164, at *4 (E.D. Tex. Aug. 31, 2017). As discussed *supra* at §II._, the published notice announcing the pendency of *Edwards* clearly advised investors who acquired McDermott securities between January 24, 2018 and October 30, 2018, both dates inclusive (the original *Edwards* class period), of their right to seek appointment as lead plaintiff in *Edwards* within sixty days of the date of the notice—*i.e.*, by January 15, 2019. Given the contiguous nature of the class periods at issue in *Edwards* and *Ahnefeldt* and the resulting, extensive overlap in their class membership, it is a near certainty that at least some of the Competing Movants purchased McDermott securities during the *Edwards* class period. Indeed, one member of the Coligado

10

Shareholder Group, Daniel Gad ("Gad"), has already attested that he *did*, in fact, purchase McDermott shares during the *Edwards* class period. *See* Dkt. No. 27-1. Yet Gad and the other Competing Movants failed to move for lead plaintiff appointment in *Edwards*, waiting instead until September 16, 2020—more than twenty months *after* the expiration of the *Edwards* deadline—to seek leadership of the *Ahnefeldt* action. All of the Competing Movants' motions are thus incontrovertibly late, and by a significant margin.

Failure to timely seek appointment as Lead Plaintiff in *Edwards* disqualifies all of the Competing Movants from consideration. *See*, *e.g.*, *In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 455 (denying "untimely" motion filed three weeks after the statutory motion deadline); *Fluor*, 2020 WL 2745527, at *5 (declining to consider motion filed in PSLRA action where the lead plaintiff motion "deadline expired nearly two years ago"); *In re Telxon*, 67 F. Supp. 2d at 818 ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action."); *Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) (where movant group filed motion "more than two weeks" after the statutory deadline, "such a late filing, without a reasonable explanation, makes the class member ineligible to serve as lead plaintiff"). It is unclear whether the Competing Movants' failures in this respect reflect a lack of diligence or if they perceived some advantage, with respect to their own specific interests – as opposed to those of the class – to filing a motion instead in the *Ahnefeldt* action twenty months after the *Edwards* deadline. Neither explanation, however, reflects well on their capacity to diligently prosecute fraud claims on behalf of a class – which is precisely what they will be required to do if appointed as Lead Plaintiff.

11

## 2. The Coligado Shareholder Group is an Improper Group

In addition to its failure to timely seek appointment in the *Edwards* action, the Coligado Shareholder Group is further inadequate because it is an unwieldy group of twenty-one investors, the majority of whom appear to lack any meaningful relationship predating this litigation.  Courts in this Judicial District and the Fifth Circuit routinely decline to appoint such groups as lead plaintiffs in PSLRA actions.  *See*, *e.g.*, *Abouzied v. Applied Optoelectronics, Inc.*, No. 4:17-CV-2399, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (denying motion by twelve-member investor group whose members had "no pre-litigation relationship with each other based on more than the losing investments at issue in this case" and finding that the circumstances demonstrated "that legal counsel for the group cobbled the movants together"); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (denying motion by thirteen-member investor group, finding that "too loose a definition of 'group' would result in the manipulation and manufacturing of enormous groups of unrelated investors . . . in order to obtain appointment of an uncohesive, disparate, and thus weakened, group of Lead Plaintiffs"); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) (denying motion where movant group "failed to show that the individuals had any pre-existing relationship prior to filing their motion" and finding that "conclusory" statements in group's declarations did "not reassure the Court that the group members will actually be able to function effectively to manage this litigation.").[4]  Courts in this Judicial District have also adopted the position taken by the U.S. Securities and Exchange Commission ("SEC") in an *amicus curiae* brief filed in *Switzenbaum v. Orbital Scis. Corp.*, No. 1:99-cv-00197 (E.D. Va. May 18, 1999), ECF No. 27, that "in order to

---

[4]      *See also Buettgen v. Harless*, 263 F.R.D. 378, 381-82 (N.D. Tex. 2009); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165 SECTION: R(3), 2005 U.S. Dist. LEXIS 49978, at *25-*27 (E.D. La. Nov. 18, 2005).

ensure adequate stakes, monitoring, coordination and accountability," a lead plaintiff movant group appointed pursuant to the PSLRA "should be no more than three to five persons, and the fewer the better." *See*, *e.g.*, *In re Superior Offshore Int'l, Inc. Sec. Litig.*, No. H-08-0687, 2008 WL 2148745, at *1 (S.D. Tex. May 20, 2008); *Waste Mgmt.*, 128 F. Supp. 2d at 413; *Abouzied*, 2018 WL 539362, at *4.

Here, the Coligado Shareholder Group consists of ***twenty-one members***—more than four times the five-member limit contemplated by the SEC and endorsed by courts in this Judicial District. While the Coligado Investor Group's Joint Declaration (the "Joint Declaration") (Dkt. No. 21-1 at *97-*122) contains boilerplate recitations regarding the group members' ostensible readiness to "communicate regularly with counsel and with each other" and to "confer with one another to arrive at joint decisions in our representation of the case" (*id.* at *105), the Joint Declaration does ***not*** explain how twenty-one individuals will, in practice, actually manage to accomplish this promised coordination. Moreover, nowhere in the lengthy Joint Declaration do the majority of its members attest to any relationships with one another whatsoever predating this litigation.[5]

Moreover, the size and unwieldiness of the Coligado Shareholder Group also creates a non-speculative risk of subjecting the group to a distracting, and potentially disqualifying, unique defense at the class certification stage of this litigation, all of which would at least impede the prosecution of the fraud claims of McDermott investors and, at worst, result in their unnecessary dismissal. *See Dyer v. Publix Super Markets, Inc.*, No. 97-2706-CIV-T25E, 2000 WL 33339613, at *11 (M.D. Fla. Mar. 22, 2000) (denying class certification where eleven named plaintiffs sought

---

[5] While certain of the Coligado Shareholder Group members are married or otherwise related to one another, the Joint Declaration attests to no relationship linking any of those married couples or families to other group members.

to become class representatives); *Adams v. R.R. Donnelley & Sons*, No. 98 C 4025, 2001 WL 336830, at *19 (N.D. Ill. Apr. 6, 2001) (questioning the propriety of a very large number of class representatives noting "it would seem that at some point, the marginal benefit from adding additional class representatives is outweighed by the additional time and effort this may entail"). There is simply no reason to burden the McDermott investor class with a representative subject to such potentially fatal defects, particularly when NSHEPP stands ready to be reconfirmed as Lead Plaintiff.

In sum, the circumstances illustrate that the Coligado Shareholder Group is ***precisely*** the type of movant group—large, unwieldy and lacking a meaningful relationship among its members—that courts in the Fifth Circuit routinely reject as Lead Plaintiffs.

### 3. Nineteen of the Coligado Shareholder Group's Members Have Already Disavowed the Core Responsibilities of Lead Plaintiffs

The Coligado Shareholder Group has further demonstrated its inadequacy to serve as lead plaintiff because nineteen of its twenty-one members have attested that they have already effectively abandoned the responsibilities that they would be required to undertake if appointed to two members of the group. To satisfy the adequacy requirement of Rule 23, a PSLRA lead plaintiff movant must demonstrate that it will "represent the claims of the class vigorously." *Shaffer v. Dig. Generation, Inc.*, No. 3:13-CV-1684-N, 2013 WL 12430537, at *2 n.3 (N.D. Tex. Sept. 19, 2013). Courts decline to appoint lead plaintiffs whose conduct does not indicate a readiness to meaningfully participate in the litigation. *See*, *e.g.*, *Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC, 2020 WL 5291872, at *4-*5 (N.D. Cal. Sept. 4, 2020) (denying motion where "the evidence of record does not support more than minimal involvement on the part of the [investor group's] members"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 136 (S.D.N.Y. 2008) (denying motion by movant who appeared to lack "meaningful involvement in

14

[the] case"). As the Joint Declaration of Christopher Coligado ("Coligado") and Jay Srinivasan ("Srinivasan") attests, the other group members have authorized Coligado and Srinivasan "[t]o serve as the member representatives for the Coligado Shareholder Group in connection with its proposal as lead plaintiff for this action" and "***to make any and all decisions, and provide direction and instructions to counsel in this case***." Dkt. No. 21-1 at *90 (emphasis added). A corresponding representation to the same effect appears in the Coligado Investor Group's Joint Declaration. *See id.* at *105. These attestations raise two distinct concerns. First, this wholesale relinquishment of all decision-making and supervision of counsel—the core responsibilities of a lead plaintiff appointed pursuant to the PSLRA—to only two members of a twenty-one-member group demonstrates a lack of commitment on the part of the group's other nineteen members to vigorously prosecuting this action. This calls into question what, precisely, their roles will even be in this litigation, and suggests that nineteen of the group's twenty-one members were only included in order to aggregate their investment losses with those of Coligado and Srinivasan in an effort to secure a leadership role in this litigation. Second, these statements are wholly at odds with the group's sworn statements in the Joint Declaration regarding their ostensible readiness to communicate with one another and with counsel regularly in actively supervising this litigation. This calls into question the reliability of the Joint Declaration as an accurate statement of the group's understanding of and intentions with respect to this litigation. Either of the foregoing alone would suffice to fatally undermine the Coligado Shareholder Group's motion.

### 4.   There is no Evidence that the Competing Movants Sought Protection for *Edwards* Class Members in McDermott's Bankruptcy Proceeding

There is no evidence in the record that any of the Competing Movants sought to protect the interests of the *Edwards* class members in McDermott's bankruptcy proceeding. NSHEPP, for its part, sought and secured important protections in McDermott's bankruptcy proceeding, expressly

15

exempting NSHEPP, as the §10(b) Lead Plaintiff, and the *Edwards* class members from the releases and deleterious impacts of the bankruptcy while imposing document retention and discovery obligations on the bankrupt corporate debtor and reorganized debtor. By contrast, the Coligado Shareholder Group sought to preserve only ***their own*** individual rights to pursue individual non-Exchange Act claims, whereas none of the other three Competing Movants – Alghaslan, Vuong, or Ye – appears to have taken any action whatsoever in the bankruptcy proceeding. "The lead plaintiff owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation," which requires subordination of the class representative's own interests to those of the class in vigorously prosecuting securities fraud claims on its behalf. *Brooks v. Lincoln Nat'l Life Ins. Co.*, No. 5:03CV256, 2008 U.S. Dist. LEXIS 121483, at *62 (E.D. Tex. Feb. 12, 2008) (quoting *In re Network Assocs., Inc.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999) (quotations omitted)). Here, that the Coligado Shareholder Group sought only to protect its own interests suggests a readiness to place those interests ahead of the class, which would subject the group to potentially debilitating, and at the very least distracting, unique defenses if it were to be appointed as a class representative. Meanwhile, the lack of any action by Alghaslan, Vuong or Ye raises questions as to their readiness to vigorously prosecute the fraud claims herein, which clearly renders them inadequate within the meaning of Rule 23. Moreover, all of the foregoing, contrasted with NSHEPP's proactive steps on behalf of the *Edwards* class, only underscores the propriety of reconfirming NSHEPP as Lead Plaintiff.Discovery Into the Competing Movants is Necessary

Again, assuming *arguendo* that the Court permits this lead plaintiff appointment process to proceed, then NSHEPP respectfully requests that the Court grant limited discovery into the prior trading histories within the *Edwards* class period of the Competing Movants, their reasons for

failing to timely seek a lead plaintiff appointment in *Edwards*, and their reasons for failing to safeguard the rights of the McDermott investors they purport to represent against the deleterious effects of McDermott's bankruptcy. The PSLRA expressly permits discovery where any plaintiff first demonstrates "a reasonable basis for a finding" that a movant is "incapable of adequately representing the class." 15 U.S.C. §78u-4 (a)(3)(B)(iv). *See*, *e.g.*, *Brown v. Biogen Idec, Inc.*, No. 05-10400-RCL, 2005 WL 8176690, at *2 (D. Mass. July 26, 2005) (allowing limited discovery to assess adequacy of seven-member movant group seeking lead plaintiff appointment); *Rao v. Quorum Health Corp.*, No. 3:16-cv-02475, 2017 WL 6025352, at *1 (M.D. Tenn. Feb. 14, 2017) (permitting limited discovery into investment decisions of lead plaintiff movant in order to assess adequacy and potential unique defenses).[6]

Here, the circumstances clearly demonstrate that a reasonable basis exists for finding that the Competing Movants are incapable of adequately representing the class, thereby warranting discovery. As discussed above, the PSLRA does not permit duplicative lead plaintiff appointment processes. 15 U.S.C. § 78u-4(a)(3)(A)(ii); *Fluor*, 2020 WL 2745527, at *5. Accordingly, any movant who purchased McDermott securities during the original *Edwards* class period was required to seek appointment as Lead Plaintiff in the *Edwards* action on January 15, 2019. Due to the contiguous nature of the class periods at issue in *Edwards* and *Ahnefeldt* and the resulting, extensive overlap in their class membership, it is highly likely that the Competing Movants purchased McDermott securities during the *Edwards* class period. The acknowledgment by one Coligado Shareholder Group member, Gad, that he *did* in fact purchase during the *Edwards* class period only underscores this likelihood. Full disclosure by all movants of any *Edwards* class

---

[6]     *See also Applestein v. Medivation, Inc.,* No. C 10-00998 MHP, 2010 WL 3749406, at *5 (N.D. Cal. Sept. 17, 2010); *Smajlaj v. Brocade Commc'ns Sys. Inc.,* No. C 05-02042 CRB, 2006 WL 7348107, at *1 (N.D. Cal. Jan. 12, 2006).

17

period transactions in McDermott securities, along with their reasons for not timely seeking appointment as Lead Plaintiff in *Edwards*, is thus necessary to evaluate their adequacy. In addition, none of the Competing Movants took any action to secure class protections in McDermott's bankruptcy proceeding, while the only movant to take any action, the Coligado Shareholder Group, sought only to preserve its members' own individual rights to pursue individual non-Exchange Act claims. Accordingly, NSHEPP further requests discovery into the Competing Movants' respective decisions not to seek protection for any class in McDermott's bankruptcy proceeding.

## III.   CONCLUSION

For the reasons set forth in the memorandum of law in support of NHSEPP's Consolidation Motion (*Edwards* Dkt. No. 148) and in its memorandum of law in support of its instant motion (Dkt. No. 26), NSHEPP respectfully submits that the predomination of common factual and legal issues as between the *Edwards* action and the *Ahnefeldt* action mandates that the *Ahnefeldt* action be transferred to Judge Hanks for consolidation. Accordingly, the Lead Plaintiff appointment process in the *Ahnefeldt* action is improper because it is duplicative of the Lead Plaintiff appointment process in the first-filed *Edwards* action, which process concluded roughly sixteen months ago with NSHEPP's appointment as Lead Plaintiff with respect to all §10(b) claims in that action. For the foregoing reasons, NSHEPP respectfully submits that it should be reconfirmed as Lead Plaintiff with oversight for all §10(b) claims in the consolidated action before Judge Hanks.

Assuming *arguendo* that the Court permits the improper Lead Plaintiff appointment process to proceed in the *Ahnefeldt* action, then the Court must deny the motions of all of the competing motions for failure to make the requisite showing that they are adequate within the meaning of Rule 23, for reasons that also constitute disqualifying unique defenses pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). First, all of the Competing Movants are

18

inadequate because they failed to timely file motions for lead plaintiff appointment in the *Edwards* action, the deadline in which expired more than twenty months ago. Second, the Coligado Shareholder Group is further inadequate because it is an unwieldy construct of **twenty-one members**, far too many to effectively coordinate their efforts to supervise counsel and manage this litigation if appointed as Lead Plaintiff. Third, the Coligado Shareholder Group is additionally inadequate because the Joint Declaration submitted by its members indicates that nineteen of its twenty-one members have already attested that they intend to relinquish the core responsibilities of class representatives if appointed as Lead Plaintiff, which obviously calls into questions the reliability of both their sworn statements regarding their readiness to vigorously advocate on behalf of the class and the group's reasons for seeking appointment jointly. Fourth, there is no evidence that any of the Competing Movants has sought to safeguard the rights of the McDermott investors they seek to represent against the effects of McDermott's bankruptcy.

Finally, should the Court permit the *Ahnefeldt* Lead Plaintiff process to proceed, then NSHEPP requests limited discovery into the Competing Movants in order to assess their adequacy, as questions clearly exist with respect to their trading histories and their reasons for failing to timely seek appointment in the *Edwards* action, and also with respect to their reasons for failing to seek protection for class members in McDermott's bankruptcy proceeding.

Dated: October 7, 2020              Respectfully submitted,

                                    **POMERANTZ LLP**

                                    */s/ Matthew L. Tuccillo*
                                    Matthew L. Tuccillo
                                    (S.D. Tex. Federal Bar # 1467939)
                                    Jeremy A. Lieberman
                                    (S.D. Tex. Federal Bar Number 1466757)
                                    J. Alexander Hood II
                                    (S.D. Tex. Federal Bar Number 3086579)
                                    Jennifer Banner Sobers

19

Case 4:20-cv-02539   Document 34   Filed 10/07/20 in TXSD   Page 25 of 25

(*Admitted Pro Hac Vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mltuccillo@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan and Lead Counsel for the §10(b) Class*

**THE BRISCOE LAW FIRM, PLLC**

*/s/ Willie C. Briscoe*
Willie C. Briscoe
Texas Bar No.: 24001788
Southern District No.: 25157
1980 Park Oak Blvd.
Houston, TX  77056
Telephone: 713-752-2600
Facsimile: 832-201-9950
wbriscoe@thebriscoelawfirm.com

*Attorney-In-Charge, Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan, and Liaison Counsel for the §10(b) Class*

20