# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR., ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIEL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW, and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL <br><br> Defendants. | CASE NO. 4:20-cv-02539 (ASH) |

**REPLY IN SUPPORT OF MOTION OF
THE COLIGADO SHAREHOLDER GROUP FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD AND LIAISON COUNSEL,
<u>AND IN OPPOSITION TO COMPETING MOTIONS</u>**

**TABLE OF CONTENTS**

I.  THE COLIGADO SHAREHOLDER GROUP SHOULD BE
    APPOINTED LEAD PLAINTIFF ............................................................................... 1

    A.  The Coligado Shareholder Group Has the Largest Financial Interest ............................. 1

        1.  The Coligado Shareholder Group's Loss is Properly Aggregated......................... 3

        2.  Alghaslan's Calculations of Movants' "*Dura* Losses" are Erroneous.................... 5

    B.  The Competing Movants Have not Rebutted the Presumption that
        the Coligado Shareholder Group is Typical and Adequate............................................... 6

        1.  The Coligado Shareholder Group is Cohesive, Able to Effectively
            Manage the Litigation, and Adequately Represent the Class ................................ 7

        2.  The Coligado Shareholder Group Took Action in the Bankruptcy
            Proceeding to Protect All Commonly Situated Shareholders ................................ 9

        3.  NSHEPP's Consolidation Arguments are Improper............................................. 10

        4.  NSHEPP is not Entitled to Discovery................................................................... 10

II. CONCLUSION ........................................................................................................... 11

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abouzied v. Applied Optoelectronics, Inc.*,
   No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) ............................8

*In re Baan Co. Securities Litigation*,
   186 F.R.D. 214 (D.D.C. 1999) .................................................................................................9

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ...................................................................................................8

*Brady v. Top Ships Inc.*,
   324 F. Supp. 3d 335 (E.D.N.Y. 2018) .....................................................................................3

*Brown v. Biogen IDEC, Inc.*,
   No. 05-10400-RCL, 2005 U.S. Dist. LEXIS 19350 (D. Mass. July 26, 2005) .....................11

*In re Cendant Corp. Litigation*,
   264 F.3d 201 (3d Cir. 2001) ....................................................................................................8

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) .................................................................................................................5

*In re Gemstar-TV Guide International Securities Litigation*,
   209 F.R.D. 447 (C.D. Cal. 2002) .............................................................................................8

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
   No. 4:20-CV-0576, 2020 U.S. Dist. LEXIS 84167 (S.D. Tex. May 13, 2020) ......................6

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) .............................................................................................5

*Kakkar v. Bellicum Pharmaceuticals., Inc.*,
   No. 4:18-CV-00338, 2019 U.S. Dist. LEXIS 50704 (S.D. Tex. Mar. 26, 2019) ................3, 7

*Makhlouf v. Tailored Brands, Inc.*,
   No. H-16-0838, 2017 U.S. Dist. LEXIS 41872 (S.D. Tex. Mar. 23, 2017) ............................6

*Marcus v. J.C. Penney Co.*,
   No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014) ...................6, 8

*Mullins v. AZZ, Inc.*,
   No. 4:18-CV-025-Y, 2018 U.S. Dist. LEXIS 222090 (N.D. Tex. Aug. 9, 2018) ...................6

*Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.,*
  Civil Action No. 4:17-CV-00449,
  2017 U.S. Dist. LEXIS 140268 (E.D. Tex. Aug. 31, 2017) ......................................................5, 8

*Rao v. Quorum Health Corp.,*
  No. 3:16-cv-02475, 2017 U.S. Dist. LEXIS 217316 (M.D. Tenn. Feb 14, 2017).....................11

*Richman v. Goldman Sachs Group, Inc.,*
  274 F.R.D. 473 (S.D.N.Y. 2011) ..............................................................................................2

*In re Waste Management, Inc.,*
  128 F. Supp. 2d 401 (S.D. Tex. 2000) .......................................................................................8

## **STATUTES**

Private Securities Litigation Reform Act of 1995 (the "PSLRA),
  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)...................................................................................6, 10
  15 U.S.C. § 78u-4(a)(3)(B)(iv) ...............................................................................................11

The Coligado Shareholder Group respectfully submits this reply in further support of its motion for: (i) appointment as Lead Plaintiff; and (ii) approval of its selection of Wolf Haldenstein as Lead Counsel and Reynolds Frizzell as Liaison Counsel for the Class and in opposition to the remaining competing motions.[1]

## I. THE COLIGADO SHAREHOLDER GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Coligado Shareholder Group has the largest financial interest in the relief sought by the Class. No remaining movant argues otherwise. The Coligado Shareholder Group's claims are typical of those of the Class and there are no interests that conflict with those of the Class. Indeed, initial competing movants Wei Ye and John Vuong have both conceded that the Coligado Shareholder Group possesses the largest financial interest in the relief sought by the Class and that it should be appointed as Lead Plaintiff. *See* Notice of Non-Opposition of Wei Ye (ECF No. 30); Notice of Non-Opposition of John Vuong (ECF No. 32). The only remaining competing motions, filed by Majid Alghaslan ("Alghaslan") and Nova Scotia Health Employees' Pension Plan ("NSHEPP"), lack merit because each failed to offer *any proof* showing that the Coligado Shareholder Group is subject to unique defenses rendering it atypical, or that it will not fairly and adequately protect the interests of the Class. Therefore, the Coligado Shareholder Group should be appointed Lead Plaintiff.

### A. The Coligado Shareholder Group Has the Largest Financial Interest

The Coligado Shareholder Group suffered the largest financial loss and, therefore, has the largest financial interest in the relief sought by the Class. No movant disputes that there are four factors relevant to determine the largest financial interest, and that courts place the greatest

---

[1] All capitalized terms herein are defined in the Coligado Shareholder Group's moving brief (ECF No. 22) ("Mem.") unless otherwise indicated.

emphasis on the fourth factor, financial loss suffered by the plaintiffs. *See* Coligado Shareholder Group Opp'n at 3; Alghaslan Opp'n at 1-2. Moreover, competing movants Alghaslan and NSHEPP do not challenge whether the Coligado Shareholder Group expended the most in total net funds of any movant during the Class Period, and incurred the largest Class Period LIFO loss of $1,871,330.48.[2] Total net funds expended during the class period (Factor 3) and class period loss (Factor 4) carry significantly greater weight than the number of securities purchased during the class period (Factor 1) and the number of net shares purchased during the class period (Factor 2). *See Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011) ("[T]he Lax factors are properly ordered, so that the number of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important."). Thus, as reflected in the Chart below, the Coligado Shareholder Group has the largest financial interest in the relief sought by the Class under the most important factors considered.[3]

---

[2] *See* Alghaslan Opp'n (ECF No. 33) at 2 (Table - Coligado Shareholder Group Total Net Funds Expended and Class Period Loss: $2,082,789.46 and $1,871,330.48; Alghaslan Total Net Funds Expended and Class Period Loss: $1,872,921.00 and $1,764.737.76).

[3] NSHEPP did not purchase any McDermott securities during the Class Period and its motion papers make no attempt to show that it meets any of the relevant criteria under the PSLRA for appointment as Lead Plaintiff. NSHEPP moved here only to protect its interests in *Edwards v. McDermott International, Inc., et al.*, No. 4:18-cv-4330 (S.D. Tex.) ("*Edwards*") and improperly request the Court to grant the motion to consolidate pending before Judge Hanks. *See* NSHEPP Mot. (ECF No. 26) at 1 ("[F]or the avoidance of doubt, and to protect its Court-appointed status as §10(b) Lead Plaintiff … NSHEPP … submits this Motion … asking the Court once again to consolidate the two actions …."); NSHEPP Opp'n (ECF No. 34) at 1 (same).

| Movant | Number of Securities Purchased During Class Period | Net Number of Securities Purchased During Class Period | Total Net Funds Expended During Class Period | Class Period Loss[4] |
|---|---|---|---|---|
| Coligado Shareholder Group | 1,787,223 shares 7,921 call option contracts | 258,732 shares 7,621 call option contracts | $ 1,809,194.39 $      72,055.00 $ **1,881,249.39** | $1,799,275.48 $     72,055.00 $ **1,871,330.48** |
| Majid Alghaslan | 2,268,000 shares | 2,268,000 shares | $1,872,921.00 | $1,764,737.76 |

### 1.  The Coligado Shareholder Group's Loss is Properly Aggregated

"In deciding whether to allow the aggregation of losses of individual shareholders for appointment as lead plaintiff, courts have considered the following factors: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 345 (E.D.N.Y. 2018) (internal quotations and citations omitted). "[T]he majority of courts permit unrelated investors to join together as a group and evaluate a motion to do so on a case-by-case basis, evaluating whether the grouping best serves the interests of the class." *Kakkar v. Bellicum Pharms., Inc.,* No. 4:18-CV-0338, 2019 U.S. Dist. LEXIS 50704, at *9 (S.D. Tex. Mar. 26, 2019) (internal quotations and citation omitted).

The Coligado Shareholder Group more than satisfies each of the above factors. The existence of a pre-litigation relationship between the members of the Coligado Shareholder Group is established by their organization in late January 2020 for the common purpose of protecting the rights of all McDermott shareholders following the commencement of the Bankruptcy Proceeding. Once organized, the Coligado Shareholder Group hired counsel at the

---

[4] All loss figures as discussed herein are calculated on a last-in, first-out ("LIFO") basis.

members' personal expense and acted in the Bankruptcy Proceeding to protect all commonly situated shareholders as to whom the Chapter 11 Plan would eliminate their McDermott shares and release their rights to assert claims against certain non-debtors. *See* Mem. at 5-6, 8; Brown Decl. (ECF No. 21-1), Ex. D ¶¶ 2-5, 8-9, Ex. E ¶ 23; Notice of Appearance (B-ECF No.[5] 454) (annexed hereto as Ex. 1); Objection (B-ECF No. 528) (annexed hereto as Ex. 2); Mar. 12, 2020 Hearing Tr. (B-ECF No. 690) at 12:18-20, 18:19-19:5, 39:16-40:11, 62:12-66:15, 98:7-18, 114:17-115:19, 144:7-14, 169:24-171:23. As a result of its actions, the Coligado Shareholder Group preserved the right to pursue the claims asserted on behalf of the Class in this action. *See* Confirmation Orders (B-ECF No. 665, 684) ¶ 79. In addition to filing the Complaint (ECF No. 1), a response to NSHEPP's notice of related case (ECF No. 17), and an opposition to NSHEPP's motion to consolidate in *Edwards* (E-ECF No.[6] 151), the members of the Coligado Shareholder Group executed declarations detailing their involvement in this action, plans for cooperation, and certifying their readiness to assume the responsibilities of class representative. *See* Brown Decl., Ex. D ¶¶ 10-11, 14, 23-29; Ex. E ¶¶ 2-24. The declarations set forth the sophistication of the members of the Coligado Shareholder Group, as well as their efforts to screen, select, and retain counsel in this action. *See* Brown Decl., Ex. D ¶¶ 3-4, 6, 10, 17-21, 30-31; Ex. E ¶¶ 2-18, 20.

Alghaslan argues that the losses by the members of the Coligado Shareholder Group should not be aggregated because they have not demonstrated "any pre-litigation relationship with one another." Alghaslan Opp'n at 6. The argument is completely without merit as it is beyond peradventure that the actions taken by the Coligado Shareholder Group in the Bankruptcy Proceeding are proof of a pre-litigation relationship amongst its members.

---

[5] "B-ECF" refers to the docket in the Bankruptcy Proceeding.

[6] "E-ECF" refers to the docket in *Edwards*.

Moreover, "[a]llowing a group to serve as lead plaintiff is appropriate where there is evidence that 'unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 119 (S.D.N.Y. 2010) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.* 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). The action by the Coligado Shareholder Group in the Bankruptcy Proceeding, in *Edwards*, and here, is substantial evidence of its ability to function cohesively and effectively manage the litigation. *See Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-0449, 2017 U.S. Dist. LEXIS 140268, at *23 (E.D. Tex. Aug 31, 2017).

Alghaslan also argues that since the members' relationship arises solely from their losses, "allowing for the aggregation of the Coligado losses … would undermine the PSLRA's purpose of preventing lawyer driven litigation." Alghaslan Opp'n at 6. This argument is similarly unavailing. The aggregation of losses here does not undermine the PSLRA because there is not a shred of evidence to support an insinuation that the Coligado Shareholder Group was cobbled together by counsel. Quite to the contrary, the evidence shows that *after* the Coligado Shareholder Group was formed by its members, it then screened, selected, and retained counsel to prosecute the claims in this action. There is nothing to support any argument that the formation of the Coligado Shareholder Group was lawyer driven, or that aggregating its members' losses undermines the PSLRA's purpose to prevent lawyer-driven litigation.

### 2. Alghaslan's Calculations of Movants' "*Dura* Losses" are Erroneous

Alghaslan's argument that the Court consider his *Dura* losses in assessing the largest financial interest, *see* Alghaslan Opp'n at 2 & 4, should be rejected.[7] Alghaslan's moving papers did not offer any *Dura* loss calculations to assess his financial interest in the relief sought by the

---

[7] A *Dura* loss analysis considers only losses that occur when shares are held at the time a relevant misrepresentation is disclosed. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).

5

Class. *See* Alghaslan Mot. (ECF No. 23) at 1, 6 (disclosing only Class Period losses of $1,764,737.76); Ex. B to Declaration of I. Ngo (ECF No. 23-1) at 8 of 63 (same). His opposition papers provide no reason to justify the use of that metric now.[8] The lone case cited by Alghaslan to support the use of a *Dura* methodology, *see* Alghaslan Opp'n at 2 (citing *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014)), in fact applied the widely accepted LIFO methodology to determine the largest financial interest. *See Marcus,* 2014 U.S. Dist. LEXIS 197529, at *13-*15. *Accord Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 4:20-cv-0576, 2020 U.S. Dist. LEXIS 84167, at *7, n.4 (S.D. Tex. May 13, 2020) (applying LIFO).

### B. The Competing Movants Have not Rebutted the Presumption that the Coligado Shareholder Group is Typical and Adequate

The Coligado Shareholder Group's superior financial interest entitles it to the strong presumption that it is the "most adequate plaintiff," which can be rebutted only by *proof* of atypicality or inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "[E]xacting proof is needed to rebut the presumption, for [c]onclusory assertions and mere speculation will not suffice." *Mullins v. AZZ, Inc.*, No. 4:18-CV-025-Y, 2018 U.S. Dist. LEXIS 222090, at *6 (N.D. Tex. Aug. 9, 2018) (internal quotations and citations omitted). *See Makhlouf v. Tailored Brands, Inc.*, H-16-0838, 2017 U.S. Dist. LEXIS 41872, at *20 n.4 (S.D. Tex. Mar. 23, 2017) ("[C]onclusory assertions of inadequacy are … insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest

---

[8] Alghaslan's *Dura* losses calculations are also beset with errors. Under a *Dura* methodology, a movant's financial loss is determined by multiplying (a) the number of shares held at the market close (January 17, 2020) prior to the corrective disclosure (January 21, 2020) and (b) the price decline as a result of the corrective disclosure. Alghaslan did not multiply the number of McDermott shares any movant held as of January 17 by the price decline on January 23 following the corrective disclosure. Further, the number reflected as his "*Dura* loss" is actually his Class Period loss.

or a defense to which [the potential lead plaintiff] would by uniquely subject." (internal quotations and citation omitted)).

The claims of the Coligado Shareholder Group are typical of the Class and no competing movant contends otherwise. Competing movants' assertions of inadequacy fail insofar as they do not provide any proof to show that the interests of the Coligado Shareholder Group conflict with those of the Class or that the Coligado Shareholder Group is subject to any unique defenses.

### 1. The Coligado Shareholder Group is Cohesive, Able to Effectively Manage the Litigation, and Adequately Represent the Class

The Coligado Shareholder Group is cohesive and more than able to vigorously prosecute the claims of the proposed Class. As evidenced by its actions in the Bankruptcy Proceeding, and its selection of qualified and experienced counsel to investigate and commence this action, and oppose NSHEPP's consolidation motion, the Coligado Shareholder Group has already expended significant effort to adequately represent the Class, and certified to this Court that it will continue to do so. The arguments of Alghaslan and NSHEPP are insufficient to undermine the facts demonstrating the Coligado Shareholder Group's adequacy.[9]

Moreover, the Coligado Shareholder Group has submitted ample evidence to show that it is the antithesis of a cobbled together collection of investors that own a de minimis number of McDermott securities and who have no pre-litigation relationship aside from their losses. *See Kakkar*, 2019 U.S. Dist. LEXIS 50704, at *12-*13. Rather, the Coligado Shareholder Group has

---

[9] For example, both Alghaslan and NSHEPP attempt to mischaracterize the role of two members of the Coligado Shareholder Group that represent more than 50% of its total losses and, as a consequence, more than 50% of the votes of its members. Alghaslan and NSHEPP make the erroneous argument that the nineteen other members of the Coligado Shareholder Group abandoned or relinquished their core duties by authorizing the two members with more than 50% of the votes to act, make all decisions, and provide direction and instructions to counsel. No member of the Coligado Shareholder Group abandoned or relinquished their duties in appointing two members to function as a channel for central communication and organization of the group. *See* Brown Decl., Ex. D ¶¶ 23-26, 28-31; Ex. E ¶¶ 2-23. To the contrary, declarations executed by the members attest to their dedication to efficiently and effectively manage the litigation and adequately represent the Class.

7

a strong pre-litigation relationship, having collectively acted together in the Bankruptcy Proceeding to protect the interests of themselves and all other commonly situated shareholders, and to preserve the right to bring this action. The Coligado Shareholder Group's actions in the Bankruptcy Proceeding, in *Edwards*, and here additionally "demonstrate its ability to cohesively represent the [C]lass." *Okla. Law Enforcement Ret. Sys.*, 2017 U.S. Dist. LEXIS 140268, at *23 (citations omitted).[10]

Given these facts, the attacks by Alghaslan and NSHEPP on the Coligado Shareholder Group's ability to cohesively represent the Class, based solely on its size, should be rejected. While the Coligado Shareholder Group contains 21 members, this number alone does not trigger the concern expressed in *Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001), regarding large groups that were previously unaffiliated, each of whom has suffered modest losses, and who have no demonstrated incentive or ability to work together to control the litigation. *Id*. at 478 n.2. Indeed, the authorities cited by Alghaslan and NSHEPP acknowledge that the principal inquiry focuses on whether a movant group is too large to represent the class in an adequate manner. There is no hard-and-fast rule; rather, a rule of reason must prevail. *In re Cendant Corp. Litig*., 264 F.3d 201, 267 (3d Cir. 2001) (citations omitted). *Compare In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d at 431 ("The Court does not believe that automatic arbitrary restrictions, such as a specific number of Lead Plaintiffs or a specific common connection should be required in all class actions under the PSLRA, but finds that the circumstances of each suit must be considered in determining appropriate restraints on random

---

[10] Alghaslan and NSHEPP cite numerous cases declining to appoint groups as lead plaintiffs where they failed to show a pre-litigation relationship and/or the groups were cobbled together by counsel. *See, e.g., Abouzied v. Applied Optoelectronics, Inc*., No. 17-CV-2399, 2018 U.S. Dist. LEXIS 16801, at *16 (S.D. Tex. Jan. 22, 2018); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 431 (S.D. Tex. 2000); *Marcus*, 2014 U.S. Dist. LEXIS 197529, at *19-*20; *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig*., 209 F.R.D. 447, 450-51 (C.D. Cal. 2002). That is not the issue here and, thus, those cases are inapposite.

8

aggregation by counsel."); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) ("[A] court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers. … There may, of course, be unusual circumstances that warrant departure from [three to five person] limits. Such circumstance might include pre-existing relationships among the group members or other factors indicating that they have a special capacity to provide able and unified decisionmaking independent of counsel.").

### 2. The Coligado Shareholder Group Took Action in the Bankruptcy Proceeding to Protect All Commonly Situated Shareholders

The Coligado Shareholder Group has consistently and diligently pursued the claims in the Complaint on behalf of the Class. Moreover, it made significant efforts in the Bankruptcy Proceeding, at the members' personal expense, to ensure, among other things, that "no non-Debtors are released from *any possible claims or causes of action*" and to "require that all insurance is available for any claims or liabilities asserted by *any equity shareholders*." Objection ¶ 74 (emphasis added). These efforts were intended to protect the rights and preserve the claims of all commonly situated McDermott shareholders whose stock would be eliminated in connection with the confirmation of the Chapter 11 Plan. As a result of those efforts, the Bankruptcy Court entered the Confirmation Order which provided, among other things, that "[t]he Coligado Shareholder Group shall not release any Claims or Causes of Action against any Person or Entity pursuant to any provision of Article VIII of the Plan other than Debtors (as defined in the Plan) and the Reorganized Debtors (as defined in the Plan)." Confirmation Order at 83 ¶ 79.[11]

---

[11] Article VIII of the Chapter 11 Plan further provides that: "Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release … current and former directors, officers, managers, or employees of the Debtors from any Claim or Cause of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud." Confirmation Order at 158.

9

The Coligado Shareholder Group clearly sought to preserve all claims and causes of action on behalf of all commonly situated persons and/or entities that purchased or otherwise acquired McDermott securities. *See, e.g.*, Objection ¶¶ 46-50 & n.8. NSHEPP's repeated *ipse dixit* suggestion that the Coligado Shareholder Group "sought to preserve only their own individual rights to pursue individual non-Exchange Act claims," NSHEPP Opp'n at 16, is incorrect and insufficient to demonstrate inadequacy.

Alghaslan's reference to an email exchange with Kevin Hargrove (VP & Treasurer at McDermott) in July 2020 concerning the status of his shares, *see* Alghaslan Opp'n at 11 & Ex. A to I. Ngo Decl. (ECF No. 33-1), is similarly not well taken. Contrary to the suggestion that the series of communications shows that Alghaslan "will manage the litigation and his counsel as required by the PSLRA," it more accurately shows that Alghaslan knew little or nothing about the January 21, 2020 Chapter 11 filing by McDermott and did not take any action until well after all McDermott common stock was cancelled. If anything, Alghaslan's untimely action only serves to highlight the Coligado Shareholder Group's ability to cohesively represent the Class. Indeed, if it were not for the Coligado Shareholder Group's actions in the Bankruptcy Proceeding and their efforts in connection with the filing of the Complaint, Alghaslan may have been left with no claim.

### 3. NSHEPP's Consolidation Arguments are Improper

NSHEPP's motion for consolidation is fully submitted in *Edwards*. Its arguments regarding consolidation here, while that motion is *sub judice* before Judge Hanks, are improper.

### 4. NSHEPP is not Entitled to Discovery

As previously set forth, rebuttal of the presumption of the most adequate plaintiff is limited to "proof by a member of the purported class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Discovery regarding the issue "may be conducted by a plaintiff only if [it] first demonstrates a

reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). NSHEPP has yet to demonstrate that it qualifies as a plaintiff for purposes of the Section.[12] It has not come forward with any reasonable basis to meet its burden, nor relevant authority to support its arguments.[13]

## II.  CONCLUSION

The competing movants fail to rebut the presumption that the Coligado Shareholder Group is the "most adequate plaintiff." Thus, the Coligado Shareholder Group respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Wolf Haldenstein as Lead Counsel and Reynolds Frizzell as Liaison Counsel for the Class.

Dated: October 19, 2020

                                            Respectfully submitted,

                                            **WOLF HALDENSTEIN ADLER**
                                               **FREEMAN & HERZ LLP**

                                            */s/ Malcolm T. Brown*
                                            Malcolm T. Brown
                                            Attorney-in-Charge
                                            NY State Bar No. 2918498
                                            270 Madison Avenue
                                            New York, NY 10016
                                            Telephone: (212) 545-4600
                                            Facsimile: (212) 686-0114
                                            brown@whafh.com

                                            **ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

---

[12] NSHEPP did not purchase any McDermott securities during the Class Period. This is fatal to its request for discovery.

[13] The cases cited by NSHEPP are distinguishable as a reasonable basis was appropriately raised regarding the adequacy of movant trading firms and/or hedge funds to serve as lead plaintiff. *See e.g., Brown v. Biogen IDEC, Inc.*, No. 05-10400-RCL, 2005 U.S. Dist. LEXIS 19350, at *7 (D. Mass. July 26, 2005) (citing D.E. # 34 at 12, n.9 (attached as Ex. 3)) (Discovery of Third Millennium necessary to confirm: "(i) whether it in fact incurred a loss on its overall transactions in Biogen IDEC securities; (ii) the extent of its relationship with Merrill Lynch [(an investment banker for Biogen IDEC)]; and (iii) its roles as a market maker for Biogen IDEC securities."); *Rao v. Quorum Health Corp.*, No. 3:16-cv-02475, 2017 U.S. Dist. LEXIS 217316, at *1 (M.D. Tenn. Feb. 14, 2017) (citing D.E. No. 67 at 3-4 (attached as Ex. 4)) (permitting discovery regarding the structure of the hedge fund seeking appointment).

**Of Counsel:**

Thomas H. Burt
NY State Bar No. 2869550
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
burt@whafh.com

Marisa C. Livesay
CA State Bar No. 223247
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
livesay@whafh.com

Jean C. Frizzell
State Bar No. 07484650
Federal I.D. 14529
Michael K. Oldham
State Bar No. 00798405
Federal I.D. No. 21486
**REYNOLDS FRIZZELL LLP**
1100 Louisiana, Suite 3500
Houston, TX 77002
Telephone: (713) 485-7200
Facsimile: (713) 485-7250
jfrizzell@reynoldsfrizzell.com
oldham@reynoldsfrizzell.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or electronic mail on all counsel of record on October 19, 2020.

*/s/ Malcolm T. Brown*
Malcolm T. Brown