UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES BROWN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BIOGEN IDEC INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |
| | Civil Action No. 05-10400-RCL <br><br> <u>CLASS ACTION</u> |
| CARY GRILL, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BIOGEN IDEC INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | Civil Action No. 05-10453-RCL <br><br> <u>CLASS ACTION</u> |

[Caption continued on following page.]

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF THE LONDON PENSIONS FUND AUTHORITY AND NATIONAL ELEVATOR INDUSTRY PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

| ROCHELLE LOBEL, Individually and On Behalf of All Others Similarly Situated, | ) | Civil Action No. 05-10801-RCL |
|---|---|---|
| | ) | |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BIOGEN IDEC INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Institutional Investors The London Pensions Fund Authority and National Elevator Industry Pension Fund ("London Pensions Fund/National Elevator") respectfully submit this memorandum of law in further support of their motion for consolidation, appointment as Lead Plaintiffs and for approval of their selection of Lead Counsel and Liaison Counsel and in opposition to the competing motions.

## I.     PRELIMINARY STATEMENT

Presently pending before this Court are four motions seeking consolidation of the above-referenced actions, appointment as Lead Plaintiff and for approval of their respective selection of Lead Counsel and Liaison Counsel. The four motions are as follows: (1) London Pensions Fund/National Elevator; (2) the Biogen Institutional Investor Group;[1] (3) Louisiana School Employees Retirement System and Municipal Police Employees Retirement System of Louisiana; and (4) Rochelle Lobel. As detailed herein, London Pensions Fund/National Elevator have the largest financial interest of any *bona fide* lead movant, are otherwise adequate and typical under Rule 23 and should be appointed Lead Plaintiffs and their selection of Lead and Liaison Counsel approved by the Court.

The motion of the self-styled seven (7) member Biogen Institutional Investor Group suffers from severe deficiencies which precludes its appointment as Lead Plaintiff. Although the Biogen Institutional Investor Group claims a loss "in excess of $4 million," it has not provided reliable transactional data necessary to support that figure. Indeed, it appears that Third Millennium Trading

---

[1]     The seven-member Biogen Institutional Investor Group purports to be comprised of New Jersey Carpenters Pension Fund; New Jersey Carpenters Annuity Fund; Folksam Asset Management; Third Millennium Trading LLP; Deerfield Beach Non-Uniformed Municipal Employees Retirement Plan; Plumbers & Pipefitters Local No. 520 Pension Fund; and Horatio Capital, LLC.

LLP ("Third Millennium"), has not provided the Court with a complete listing of its transactions in Biogen securities. As detailed on its website, Third Millennium is a sophisticated options trading and market maker firm which, as it states on its website, only trades in common stock as a "hedge" against its trading of options. *See* Hess-Mahan Decl. in Further Support[2], Exhibit A. Furthermore, as detailed herein, certain of Third Millennium's stock trades evidence that options trading took place – the trades are at prices at which the stock did not trade on the purported trade date, thereby suggesting that the purchase or sale was, in fact, the exercise of an option. Yet, Third Millennium's certification does not list any of its transactions in Biogen IDEC options, presumably because doing so would reveal that its claimed losses on transactions of Biogen IDEC securities are actually much less, if it even suffered a loss at all.

Similarly, Horatio Capital LLC, whose appearance in the Biogen Institutional Investor Group's motion papers is relegated to a hastily drafted footnote, has failed to provide any transactional data for its transactions in Biogen IDEC securities. Even in the few cases where it has been held that a certification is not required on a lead plaintiff motion, the movant has, at the very least, provided the Court with its transactional data. *See e.g. Greebel v. FTP Software, Inc.,* 939 F. Supp. 57, 61 (D. Mass. 1996) (noting that although no certification was required on lead plaintiff motion, declaration submitted with motion provided all of the information required in a certification including transactional data). Here, Horatio Capital has made no such effort (and any submission now is simply too late).

---

[2] References to the "Hess-Mahan Decl. in Further Support, Exhibit ___" are to the Declaration Of Theodore M. Hess-Mahan In Further Support Of The Motion Of The London Pensions Fund Authority And National Elevator Industry Pension Fund For Consolidation, Appointment As Lead Plaintiffs And For Approval Of Selection Of Lead And Liaison Counsel And In Opposition To The Competing Motions, dated May 16, 2005 and filed concurrently herewith.

At bottom, since the Biogen Institutional Investor Group has failed to properly document its financial interest in this litigation, the Court should disregard its claimed loss or, at a minimum, exclude the losses of Third Millennium and Horatio Capital, *see Seamans v. Aid Auto Stores, Inc.*, 2000 U.S. Dist. LEXIS 1749, *13 (E.D.N.Y. Feb. 15, 2000) (refusing to appoint market maker as Lead Plaintiff, disregarding market maker's stated loss and appointing group with actual largest loss as Lead Plaintiff), thereby reducing the Biogen Institutional Investor Group's claimed loss to $1.379 million, far less than the $3.75 million losses of London Pensions Fund/National Elevator.[3]

Even if the Court were to find that the Biogen Institutional Investor Group has properly stated its financial interest in this case, it is nevertheless not a proper Lead Plaintiff. First, Third Millennium's status as an options trader and a market maker renders it inadequate and atypical under Rule 23. Although the Court's analysis under Rule 23 at this stage is preliminary in nature, it is clear under prevailing Lead Plaintiff jurisprudence that entities such as Third Millennium are not proper lead plaintiffs because they do not rely on the integrity of the market and generally employ unique trading strategies, which are not typical of the Class. *See In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) ("Wolverine Trading was an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates").

Second, the Biogen Institutional Investor Group is an improper group under relevant authority as it has seven (7) members. The SEC and the vast majority of Courts have limited the size of lead plaintiff groups to 3 to 5 members. By doing so, the Court can be confident that the group

---

[3]     By letter dated May 9, 2005 to counsel for the Biogen Institutional Investor Group (Hess-Mahan Decl. in Further Support, Exhibit B), counsel for London Pensions Fund/National Elevator requested, among other things, detailed transactional data supporting Horatio Capital's claimed financial interest and further information on the options trading engaged in by Third Millennium. Counsel for the Biogen Institutional Investor Group did not provide any response to this request.

can function cohesively and prosecute the litigation in an effective and efficient manner. Here, the Biogen Institutional Investor Group – which counts among its members a Swedish money manager, a fund from a small municipality in Florida, a pension fund for plumbers and pipefitters, a hedge fund, a Chicago-based options market maker (Third Millennium) and two New Jersey union pension funds – has exceeded the level of group members that the SEC has determined will best ensure that the litigation is being properly and successfully managed.

Lastly, it appears that Third Millennium may be subject to conflicts of interest which would hamper its ability to serve as a Lead Plaintiff.[4] In particular, as detailed herein, it appears that Third Millennium has a proprietary relationship with Merrill Lynch, one of Biogen IDEC's investment bankers. Because of this relationship, the Class will be unfairly prejudiced if defendants exert pressure on Third Millennium, through Merrill Lynch, to alter its litigation position in this case in any way.

The Court should likewise deny the motions of Louisiana School Employees Retirement System and Municipal Police Employees Retirement System of Louisiana and Rochelle Lobel because they have claimed smaller losses than London Pensions Fund/National Elevator.

---

[4] The Biogen Institutional Investor Group may also be subject to an additional conflict of interest since certain of its members (Third Millennium and Horatio Capital LLC) are concurrently seeking appointment as a lead plaintiff in the *Elan Securities Litigation* which is now pending in this District and in the Southern District of New York, and relates to the same underlying conduct by defendants. *See* Notice of Motion of the Institutional Investor Group, dated May 3, 2005, filed in *Barnet v. Elan Corp.*, 05-cv-02860-RJH (S.D.N.Y.) and *Williams v. Elan Corp.*, 05-cv-10413 (JLT) (D. Mass.) (Hess-Mahan Decl., Exhibit C).

## II. ARGUMENT

### A. London Pensions Fund/National Elevator Have The Largest Financial Interest Of Any *Bona Fide* Lead Plaintiff Movant

With losses of $3.75 million, London Pensions Fund/National Elevator have the largest financial interest of any *bona fide* lead plaintiff movant. The PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute specifies three criteria which trigger a **rebuttable** presumption:

> The court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

London Pensions Fund/National Elevator have suffered losses of more than $3.75 million in connection with their purchases of thousands of Biogen IDEC shares during the Class Period. The following chart sets forth the losses of all *bona fide* lead plaintiff movants:

- 5 -

| NAME OF MOVANT | FINANCIAL INTEREST |
|---|---|
| London Pensions Fund/National Elevator | $3.75 million |
| Biogen Institutional Investor Group | $1.379 million (excluding the losses of Third Millennium, as explained herein) |
| Louisiana School Employees Retirement System and Municipal Police Employees Retirement System of Louisiana | $1.047 million |
| Rochelle Lobel | $20,904 |

Aside from representing the largest financial interest of all other movants in this action, London Pensions Fund/National Elevator also satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23 because, just like all other class members, they: (1) purchased Biogen shares during the Class Period; (2) purchased Biogen shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, London Pensions Fund/National Elevator's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events. Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of London Pensions Fund/National Elevator to represent the class to the existence of any conflicts between the interests of London Pensions Fund/National Elevator and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who are qualified, experienced and able to vigorously conduct the proposed litigation. *See*

*Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, London Pensions Fund/National Elevator Industry Pension Fund are adequate representatives of the class. As evidenced by the injuries suffered by London Pensions Fund/National Elevator, who purchased Biogen shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of London Pensions Fund/National Elevator are clearly aligned with the members of the class, and there is no evidence of any antagonism between London Pensions Fund/National Elevator's interests and those of the other members of the class. Further, London Pensions Fund/National Elevator have taken significant steps which demonstrate they will protect the interests of the class: they have retained competent and experienced counsel to prosecute these claims. In addition, as shown below, London Pensions Fund/National Elevator's proposed Lead and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, London Pensions Fund/National Elevator *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### B. The Biogen Institutional Investor Group Has Failed To Properly Document Its Financial Interest And Has Overstated Its Financial Interest

In assessing the loss figures that are submitted on Lead Plaintiff motions, the Court should be careful to ensure that all movants have provided the Court with sufficient transactional data necessary for the Court to have confidence in the loss figures that have been represented to the Court. It is respectfully submitted that Third Millennium and Horatio Capital have failed to provide the Court with competent transactional data and, therefore, their losses should be disregarded.

### 1. Third Millennium Has Failed to Set Forth All of its Transactions in Biogen Securities

In its submission, the Biogen Institutional Investor Group submitted the sworn certification of Third Millennium, which purported to provide a listing of all of its "transactions during the proposed class period in Biogen IDEC, Inc. securities, that are the subject of this litigation." *See* Declaration of Nancy Freeman Gans in Support of the Motion of the Biogen Institutional Investor Group, dated May 2, 2005, Exhibit B. The PSLRA requires that anyone filing a certification, as Third Millennium did here, "set[] forth all of [its] transactions . . . in the security[5] that is the subject of the complaint" by the statutory deadline. 15 U.S.C. § 78u-4(a)(2)(A)(iv). Here, the Class has been defined to include purchasers of all Biogen IDEC "securities," thereby encompassing Biogen IDEC options.[6]

It appears, however, that Third Millennium has failed to disclose the complete details of its trading in Biogen IDEC options as it was required to. This failure to provide the details of its options trades, which is the most basic requirement of the PSLRA's lead plaintiff provisions, renders it impossible to determine Third Millennium's true financial interest in this litigation and, therefore, the Court should disregard its claimed financial loss. *See Microstrategy*, 110 F. Supp. at 436 (refusing to appoint Lead Plaintiff movant who failed to submit trading information necessary to

---

[5]     The Securities and Exchange Act of 1934 defines security to include "any put, call . . . option or privilege on any security." 15 U.S.C. §78c(a)(10).

[6]     All three of the complaints that have been filed in the above-captioned actions, and on which these competing motions are based, were brought on behalf of purchasers of *all of the securities* of Biogen – and not only its common stock. *See Brown v. Biogen IDEC, Inc.*, 05-cv-10400, "on behalf of purchasers of the *publicly traded securities* of Biogen;" *Grill v. Biogen IDEC, Inc.*, 05-cv-10453, "on behalf of purchasers of the *publicly traded securities* of Biogen IDEC, Inc.;" and *Lobel v. Biogen IDEC, Inc.*, 05-cv-10801, "on behalf of purchasers of the *securities* of Biogen."

- 8 -

"permit a confident conclusion that its loss was as large as it averred."); *see also In re Williams Sec. Litig.*, 02-cv-7H(M), *10 (N.D. Okl. Jul. 8, 2002) (emphasis added) (Hess-Mahan Decl. in Further Support, Exhibit D) (rejecting lead plaintiff motion of investor who "***failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest***"); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (emphasis added) (denying motions of movants seeking appointment as lead plaintiffs who had failed to provide information supporting their claimed financial interest in the litigation and stating that "[e]ven though Cannold argues that he has the largest financial interest in the outcome of the litigation, h*e does not present any facts to support this assertion*").

**a.      Third Millennium's Website Evidences That It Traded in Biogen IDEC Options During the Class Period**

On its website (http://www.3mt.net), Third Millennium describes itself as "the premier options trading firm" and represents that its "technologically advanced trading desk and proprietary systems secure our ability to quickly and correctly calculate edge while ensuring our ability to provide liquidity to the marketplace." Hess-Mahan Decl. in Further Support, Exhibit E. Third Millennium further describes its "Mission" as "to identify and capture edge in options trading by incorporating a strategy based on basic arbitrage relationships." *Id.* Moreover, Third Millennium states that it is "a firm employing market makers whom trades with the firm's capital (private capital) in order to profit. Market-making is the process where a trader will buy and sell a security (options, future, stock, etc.). The market maker must be willing to buy on their bid and sell on their offer." *Id.* Third Millennium also provides, among other things, an explanation of what market makers that take positions in options, such as itself, do to minimize risk in its trading stating:

> One thing that the market-maker does to reduce the risk of the options in their position is to hedge. *Hedging is the practice of making trades in the underlying stock by either buying or selling the stock to reduce the risk of a directional move in the underlying from causing a large loss.* [Emphasis added.]

- 9 -

*Id.* Finally, Third Millennium's website makes clear that it employs a large number of traders throughout the United States. *Id.*

It thus appears that aside from purchasing and selling Biogen IDEC common stock, given its stated business model, Third Millennium also traded in Biogen IDEC options. In fact, it also appears as though Third Millennium's primary position in Biogen IDEC was in options and its trading in common stock was only "to reduce the risk of a directional move" in its options. *Id.* Third Millennium, however, has not provided any listing of its Biogen IDEC options trades during the Class Period.

### b. A Review of Third Millennium's Certification Further Confirms That It Was Trading In Options

In addition to its self-described strategy of trading options and common stock, a review of Third Millennium's certification also indicates that certain of Third Millennium's trades were likely the exercise of option contracts, thereby further confirming that Third Millennium has options trades which it has not disclosed to the Court. As set forth in the following chart, a large number of trades reported by Third Millennium were made outside of the trading ranges on the date of the trade thereby suggesting that the trades were the result of the exercise of an options contract,[7] but they are not identified as such on Third Millennium's certification:[8]

---

[7] A "strike price" is the stated price per share for which underlying stock may be purchased (for a call) or sold (for a put) by the option holder upon exercise of the option contract. When you exercise your option, this is the value that you get the shares for. Option strike prices are typically in increments of $2.50 or $5.00.

[8] The trades identified in the following chart are set forth to demonstrate that Third Millennium in fact engaged in options trades, none of which have been identified on its certification. It is expected, given Third Millennium's stated trading strategies, that there are likely to be hundreds of options trades that it engaged in during the Class Period, which may in fact result in an overall gain for Third Millennium in its trading of Biogen IDEC securities.

| DATE | BUY/SELL | # of SHARES | PRICE OF BUY/SELL | ACTUAL TRADING RANGE |
|---|---|---|---|---|
| | | | | |
| 3/19/04 | BUY | 25,000 | $45 | $52.30-$53.94 |
| 5/21/04 | BUY | 30,000 | $60 | $60.38-$61.73 |
| | | | | |
| 2/18/04 | SELL | 1,000 | $35 | $50.86-$53.88 |
| 2/19/04 | SELL | 800 | $35 | $55.23-$59.28 |
| 2/20/04 | SELL | 29,200 | $35 | $56.37-$58.47 |
| 4/16/04 | SELL | 25,000 | $50 | $56.96-$60.10 |
| 11/19/04 | SELL | 21,600 | $60 | $55.01-$56.64 |
| 1/21/05 | SELL | 50,000 | $60 | $64.17-$65.54 |
| 2/18/05 | SELL | 50,000 | $60 | $66.85-$67.60 |
| | | | | |

The aforementioned trades, coupled with Third Millennium's stated options trading strategy, further supports the contention that Third Millennium engaged in options trading and that it has not disclosed the trades to the Court.

2.    **Horatio Capital LLC Has Failed to Provide Any Transactional Data To Support Its Claimed Loss**

Horatio Capital LLC, has failed to provide any transactional data for its transactions in Biogen IDEC securities. Indeed, even those cases that have held that a certification is not required by a lead plaintiff movant, the movant has, at the very least, provided a listing of his transactional data so that other movants could evaluate his claimed financial interest. *See Greebel,* 939 F. Supp. at 62 (noting that although no certification was required on lead plaintiff motion, declaration submitted with motion provided all of the information required in a certification including transactional data). Here, Horatio Capital has made no such effort and its losses should therefore be excluded from consideration by the Court. See *MicroStrategy,* 110 F. Supp. at 436.

- 11 -

C.   **The Biogen Institutional Investor Group Is Inadequate And Atypical
To Serve As Lead Plaintiff**

Aside from the fact that the Biogen Institutional Investor Group has failed to properly

document its financial interest in this litigation, it is otherwise inadequate and atypical to serve as

Lead Plaintiff. Thus, even if the Court were to find that the Biogen Institutional Investor Group has

the largest financial interest in this litigation of any movant, we respectfully submit that the

presumption afforded to them under those circumstances would be rebutted for a variety of reasons.[9]

1.   **Third Millennium's Status As A Market Maker Renders It
Inadequate And Atypical**

Third Millennium describes itself, and is described by others, as a market maker. *See* Hess-

Mahan Decl. in Further Support, Exhibits A and E. A market maker is defined as:

> a dealer who either regularly publishes bid and ask quotations in an interdealer
> system or furnishes such quotations on request, and who is 'ready, willing, and able'
> to trade reasonable quantities of the security in which he is making a market to other
> dealers at his quoted prices. . . . A market maker is not an investor. *It would*
> *therefore appear that the issues of both reliance and materiality would be different*
> *for a market maker; he would rely on different factors than an investor would and*
> *facts that would be material to an investor's decision might not matter to him*.

*McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982) (emphasis added).

It is not surprising then that Courts have routinely found market makers to be atypical of

other class members since they are subject to unique defenses regarding their reliance, or lack

---

[9]   At a minimum, London Pensions Fund/National Elevators should be entitled to take discovery of Third Millennium to confirm: (i) whether it in fact incurred a loss on its overall transactions in Biogen IDEC securities; (ii) the extent of its relationship with Merrill Lynch; and (iii) its role as a market maker in Biogen IDEC securities. Such discovery is entirely appropriate given the circumstances that are present here. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv) (emphasis added) ("discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class"); *see also Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 854-55 (S.D. Ind. 1999) (ordering discovery to test movant's adequacy to serve as lead plaintiff).

thereof, on the alleged fraud. In *Tice v. Novastar Financial, Inc.*, 2004 U.S. Dist. LEXIS 16800, *24-*25 (W.D. Mo. Aug. 23, 2004), the Court rejected the lead plaintiff application of an options market maker stating that:

> Courts have found market makers to be atypical of a class because they are subject to unique defenses regarding their reliance, or lack thereof, on the alleged fraud. *See e.g.*, *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp*, 183 F.R.D. 687, 692 (D. Colo. 1998); *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 346 (N.D. Ill. 1982). The existence of an *arguable* defense based on Market Street Securities' lack of reliance on the fraud convinces this Court that a market maker's interests are different than individuals' and institutional investors' interests and, therefore, does not satisfy the typicality requirement." [Emphasis added.]

Similarly, in *Seamans v. Aid Auto Stores, Inc.*, 2000 U.S. Dist. LEXIS 1749, *13 (E.D.N.Y. Feb. 15, 2000), the Court rejected the lead plaintiff application of a market maker holding that the market maker was inadequate and atypical to serve as Lead Plaintiff because the issues of reliance and materiality are different for a market maker as opposed to the average investor.[10] Here, as well, Third Millennium's status as a market maker renders it inadequate and atypical to serve as Lead Plaintiff.

### 2. Third Millennium's Status As An Options Trader Renders It Inadequate And Atypical

Furthermore, Third Millennium's status as an options trader which employs a unique trading strategy renders it inadequate and atypical to serve as Lead Plaintiff. As detailed at its website, Third Millennium trades by "incorporating a strategy based on basic arbitrage relationships" and it hedges its options positions by "making trades in the underlying stock by either buying or selling the

---

[10] After eliminating the market maker from contention, the court appointed the next lead plaintiff moving group since, with the market maker excluded from the group that had initially claimed the largest financial interest, the other group's financial interest was now larger. *Seamans*, 2000 U.S. Dist. LEXIS 1749 at *14.

stock to reduce the risk of a directional move in the underlying [stock] from causing a large loss."[11] Thus, Third Millennium's trading strategies render it atypical to serve as Lead Plaintiff. *See MicroStrategy,* 110 F. Supp. 2d, 437 (refusing to appoint as lead plaintiff an investor that specialized in options trading finding that it "may have been subject to unique defenses based on its method of doing business"); s*ee also In re Bank One Shareholders Class Action*, 96 F. Supp. 2d 780 (N.D. Ill. 2000) (denying the lead plaintiff motion of an investor that engaged in unique trading strategies).

### 3. Third Millennium Suffers from an Irreconcilable Conflict of Interest

Third Millennium also suffers from an undisclosed conflict of interest with regard to its relationship with Merrill Lynch, which would greatly prejudice the Class if it were to be appointed lead plaintiff and be given the authority to control the destiny of this action. In addition to its regular website, maintained at www.3mt.com, Third Millennium also maintains a separate website at www.thirdmillenniumtrading.com, which is registered in its own name. *See* Hess-Mahan Decl. Exhibit F. The homepage of that website, however, contains the contents of a single press release, which states that Pax Clearing Corporation ("Pax") was recently acquired by Merrill Lynch. *See* Hess-Mahan Decl. Exhibit G. The connection between Third Millennium and Pax is further supported by the identical addresses listings for both Third Millennium and Pax and the almost identical phone numbers for each one's office. *See* Hess-Mahan Decl. Exhibit H. While the full extent of the relationship between Pax (which is now owned by Merrill Lynch) and Third Millennium is unknown at this time, based on these facts, it is clear that the two firms maintain a

---

[11] Third Millennium's stated trading strategy – hedging to avoid a large loss due to unexpected directional movements of an underlying stock – further calls into question what Third Millennium's financial interest is in this case. Here, Third Millennium has represented that it has suffered a significant loss as a result of a dramatic "directional move" in the price of Biogen IDEC stock.

proprietary relationship with one another. Because Merrill Lynch has served as one of the lead investment bankers for Biogen IDEC, *see* Hess-Mahan Decl. Exhibit I, and would undoubtedly like to serve in that role in any future Biogen IDEC offerings, Merrill Lynch may feel it is in their best interests to advise Third Millennium to alter its litigation position in this case in any way possible.

### 4.      The Seven-Member Biogen Institutional Investor Group Is Also Too Unwieldy to Serve as Lead Plaintiff

The motion of the Biogen Institutional Investor Group should also be denied because its proposed seven members greatly exceeds the number of lead plaintiff group members endorsed by numerous courts and the Securities & Exchange Commission. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (citing the SEC's amicus brief which stated that groups of lead plaintiffs should be limited to three to five investors).[12] Indeed, the seven-members of the Biogen Institutional Investor Group have failed to make *any* showing of their adequacy to represent the Class and oversee their counsel in this large and complex litigation. Moreover, their dispersed locales throughout the country will further complicate any coordination efforts – even the coordination of *seven* investors in the same state would pose a challenge – and will hinder the successful prosecution of this case.

---

[12]      Additional information is also needed to determine if Folksam Asset Management, a Swedish asset manager and a member of the Biogen Institutional Investor Group, makes purchases for its own account or for its clients using the money in their accounts. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S.723, 755 (1975) (holding that only purchasers and sellers of the security at issue have standing to bring suit for violations of Section 10(b) of the Securities Exchange Act); *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-626 (1997) ("A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") (Citations omitted); *Davidson v. Belcor, Inc.*, 933 F.2d 603,606 (7th Cir. 1991) (court held that "only purchasers and sellers of securities have standing to pursue private causes of action); *Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (finding that an investment manager was not an appropriate lead plaintiff because it was making its purchases of securities solely on behalf of others).

London Pensions Fund/National Elevators, by contrast, are two institutional investors who are committed to protecting the interests of the class in this litigation. London Pensions Fund/National Elevators, with comparable losses in their trading of Biogen securities, have agreed to work together in prosecuting this action and to oversee their choice of counsel in maximizing the recovery for the class.

### D.     THE REMAINING MOTIONS SHOULD BE DENIED

The motion of Louisiana School Employees Retirement System and Municipal Police Employees Retirement System of Louisiana and the motion of Rochelle Lobel should be denied since they all have a financial interest in this litigation that is smaller than that of London Pensions Fund/National Elevator.

## III.     CONCLUSION

For all the foregoing reasons, London Pensions Fund/National Elevator respectfully requests that the Court: (i) appoint them as Lead Plaintiffs in the related Actions; (ii) approve their selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel and Shapiro Haber & Urmy LLP as Liaison Counsel; and (iii) grant such other relief as the Court may deem just and proper.

DATED:  May 16, 2005                             RESPECTFULLY SUBMITTED,

**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA  02109
Telephone:  617/439-3939
617/439-0134 (fax)

[Proposed] Liaison Counsel

- 16 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
PATRICK W. DANIELS
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

I:\Biogen\LP Motion\LP Opp Brief.doc

- 17 -