# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JOHN ARDEN AHNEFELDT, ROBERT BROWER, JR. ROBERT BROWER, SR., KHANH L. BUI, JIGNESH CHANDARANA, KRUITIKA CHANDARANA, AMIRA YOUSUF CHOWDHURY, CHRISTOPHER COLIGADO, DANIAL GAD, EDWIN HOWELL, SIOE LIE HOWELL, DARREN HUNTING, ANNE INGLEDEW, SHITAL MEHTA, THOMAS CARL RABIN, ADAM SHULTZ, AMIT SOMANI, JAYAPRAKASH SRINIVASAN, AARTHI SRINIVASAN, CHRISTOPHER SWEDLOW, and ALEXANDRE TAZI, on Behalf of Themselves and All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>          v.<br><br>DAVID DICKSON, STUART A. SPENCE, and CHRISTOPHER A. KRUMMEL,<br><br>     Defendants | **Case No. 4:20-cv-02539-ASH**<br><br>**CLASS ACTION** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION PURSUANT TO §78u-4(a)(3)(B) BY THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN, THE COURT-APPOINTED §10(B) LEAD PLAINTIFF IN THE RELATED *EDWARDS* ACTION**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     ARGUMENT ............................................................................................................ 8

      A.      Consolidation of *Ahnefeldt* and *Edwards* will Preclude Consideration of the Competing Motions ........................................................................................ 8

      B.      The Timing of NSHEPP's McDermott Investments Do Not Affect Its Ability To Oversee "All" §10(b) Claims ................................................................... 10

      C.      The Coligado Shareholder Group's Response Underscores Its Inadequacy ........ 14

          1.      The Coligado Shareholder Group Has Conceded That Gad Purchased Shares During the Edwards Period and is Therefore Inadequate ............. 14

          2.      The Coligado Shareholder Group's Response Brief Further Highlights its Unwieldiness and Lack of Cohesion ........................................................ 15

      D.      Discovery Into the Competing Movants is Warranted and NSHEPP is Entitled to Request It ........................................................................................................ 17

      E.      NSHEPP Agrees with Defendants that Consolidation Must be Decided by Judge Hanks in *Edwards* ........................................................................................... 19

III.    CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*, 4:17-CV-2399,
2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) ........................................................15

*Chun v. Fluor Corp.*, No. 3:18-CV-01338-X,
2020 U.S. Dist. LEXIS 91862 (N.D. Tex. May 26, 2020) .......................................................9

*Chun v. Fluor Corporation*, No. 3:18-cv-01338-X,
2020 WL 2745527 (N.D. Tex. May 26, 2020) ......................................................................16

*Feldman v. Motorola, Inc.*, Civ. A. No. 90 C 5887,
1993 U.S. Dist. LEXIS 14631 (N.D. Ill. Oct. 14, 1993)...........................................................12

*Hachem v. Gen. Elec. Inc.*,
No. 17-cv-8457, 2018 U.S. Dist. LEXIS 62278 (S.D.N.Y. Apr. 11, 2018) ............................16

*Haideri v. Jumei Int'l Holding, Ltd.*, 20-cv-02751-EMC,
2020 U.S. Dist. LEXIS 162510 (N.D. Cal. Sept. 4, 2020) ...............................................15, 17

*In re BP P.L.C. Sec. Litig.*, No. 10-md-2185,
2013 WL LEXIS 173303 (S.D. Tex. Dec. 6, 2013)...............................................................12

*In re Cyberonics Inc. Sec. Litig.*,
468 F. Supp. 2d 936 (S.D. Tex. 2006) ...................................................................................16

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)........................................................................5, 11, 12, 13

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) .....................................................................................16, 18

*In re Petrobras Secs. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)..................................................................................6, 14

*In re Superior Offshore Int'l, Inc. Secs. Litig.*, H-08-0687,
2008 U.S. Dist. LEXIS 122005 (S.D. Tex. May 20, 2008) ....................................................15

*In re Waste Mgmt., Inc.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ...................................................................................15

*Irvin v. S. Snow Mfg., Inc.*,
517 F. App'x 229 (5th Cir. 2013) ........................................................................5, 6, 14, 17

*Jones v. Cain*,
   600 F.3d 527 (5th Cir. 2010) ..................................................................................4, 6, 14, 17

*Okla. Law Enforcement Ret. Sys. V. Adeptus Health Inc.*, No. 17-cv-0449,
   2017 U.S. Dist. LEXIS 140268 (E.D. Tex. Aug. 31, 2017) ....................................................16

*Shaffer v. Digital Generation, Inc.*, No. 3:13-CV-1684-N,
   2013 U.S. Dist. LEXIS 204461 (N.D. Tex. Sept. 19, 2013)..................................................4, 17

*Tsirekidze v. Syntax-Brillian Corp.*, CV-07-2204-PHX-FJM *et al.*,
   2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4, 2008)........................................................6, 14

*U.S. v. Jackson*,
   426 F.3d 301 (5th Cir. 2005) ...............................................................................5, 6, 14, 17

## Statutes

15 U.S.C. § 78u-4(a)(3)(A)(ii).........................................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(i) .........................................................................................................3

15 U.S.C. §78u-4(a)(3)(B)(ii) ..........................................................................2, 8, 10, 11, 19

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) .........................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iv) .............................................................................................4, 7, 17

PSLRA ...................................................................1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 19

## Rules

Fed. R. Civ. P. 6(a)(1)(C) ................................................................................................................1

Fed. R. Civ. P. 23...........................................................................................................................3, 10

Pursuant to Rule 7.D of the Court's Civil Procedures and Fed. R. Civ. P. 6(a)(1)(C), NSHEPP[1] respectfully submits this reply in further support of its motion (Dkt. No. 25).

## I.      PRELIMINARY STATEMENT

NSHEPP, court-appointed Lead Plaintiff in the *Edwards* action pursuing "all" Exchange Act §10(b) claims on behalf of McDermott investors therein, respectfully reiterates that the purported lead plaintiff process in this action is duplicative and impermissible, because the single such process permitted by the PSLRA concerning the fraud at issue in the leadup to McDermott's bankruptcy was triggered by the PSLRA notice published in the *Edwards* action, which set a PSLRA lead plaintiff deadline that elapsed in January 2019 and that resulted in NSHEPP's being appointed §10(b) Lead Plaintiff in June 2019, over 16 months ago.  Accordingly, in July 2020, NSHEPP filed a motion in *Edwards*, seeking to consolidate the above-captioned action with *Edwards* before Judge Hanks and to vacate the improperly noticed, purported lead plaintiff deadline in this *Ahnefeldt* action.  *Edwards* Dkt. No. 147.  The Consolidation Motion remains pending.  NSHEPP respectfully reiterates that the PSLRA precludes consideration of any of the lead plaintiff motions filed herein until ***after*** Judge Hanks has ruled on the Consolidation Motion. NSHEPP continues to participate in the instant motion practice solely to protect its interests and those of the class members with respect to Exchange Act §10(b) claims.  If, at a later juncture, the Court does consider the pending lead plaintiff motions, NSHEPP respectfully submits that none of the Competing Movants satisfies the PSLRA's statutory criteria to serve as lead plaintiff, and further requests discovery into the Competing Movants to assess their adequacy within the meaning of the PSLRA, as it expressly permits.

---

[1]      Unless otherwise specified, all capitalized terms herein are defined in NSHEPP's opening and responsive briefs.  *See* Dkt. Nos. 26, 33.

Competing Movants Vuong and Ye filed notices of non-opposition to the other motions, acknowledging that neither appeared able to even argue the "largest financial interest" in the *Ahnefeldt* action within the meaning of the PSLRA.  *See* Dkt. Nos. 30, 32.[2]  Only the Coligado Shareholder Group and Alghaslan filed response briefs.  *See* Dkt. Nos. 31, 33.  Finally, Defendants filed a brief objecting to NSHEPP's motion "to the extent that it asks this Court to order relief pertaining to the *Edwards* action pending before Judge Hanks" (Dkt. No. 29 at 5) — an objection that mischaracterizes the relief that NSHEPP seeks.

The PSLRA is unequivocal that resolution of NSHEPP's Consolidation Motion pending before Judge Hanks (Dkt. No. 147) ***must*** be decided prior to any consideration of the purported lead plaintiff motions filed in *Ahnefeldt*.  The PSLRA states that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims . . . has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall ***not*** [appoint a led plaintiff] until ***after*** the decision on the motion to consolidate is rendered."  15 U.S.C. §78u-4(a)(3)(B)(ii) (emphases added).  Thus, until Judge Hanks has ruled on consolidation, consideration of the *Ahnefeldt* lead plaintiff motions is premature and impermissible.  The response briefs filed by the Coligado Shareholder Group and Alghaslan have cited no authority that would override the PSLRA's unambiguous instruction in this respect — nor could they, for none exists. If Judge Hanks ultimately orders this action to be consolidated with *Edwards*, as NSHEPP respectfully submits is proper and warranted, then the duplicative lead plaintiff process in

---

[2]     Curiously, both Vuong and Ye also took the unusual step of endorsing the motion of the Coligado Shareholder Group, despite its glaring inadequacies (noted by both NSHEPP ***and*** Alghaslan in their respective opposition briefs).  *Id.*  These circumstances raise the possibility that they or their counsel have received some incentive to endorse the group in exchange for a continued role in the case, should the Coligado Shareholder Group be appointed to a leadership role, something that NSHEPP hereby respectfully asks to investigate via discovery.

*Ahnefeldt* will be rendered moot.  The Coligado Shareholder Group and Alghaslan cannot simply circumvent this threshold consolidation determination.

If Judge Edwards grants consolidation, NSHEPP is without question the "most adequate plaintiff" to lead the consolidated action pursuant to the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA provides for only *one* lead plaintiff appointment process where multiple complaints allege similar claims.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii).  Accordingly, if the *Edwards* and *Ahnefeldt* actions are consolidated before Judge Hanks, then the only lead plaintiff process permitted by statute was the one adverted to in the notice of pendency of the *Edwards* action, which advised McDermott investors that they had sixty days from November 16, 2018 – *i.e.*, until January 15, 2019 – to seek lead plaintiff appointment.  That deadline lapsed 21 months ago, and the *Edwards* lead plaintiff appointment process concluded in June 2019, with the court's appointment of NSHEPP as Lead Plaintiff "for all claims related to Section 10(b) of the Securities Exchange Act." *Edwards* Dkt. No. 84.  The Competing Movants who only filed their motions in *Ahnefeldt* on September 16, 2020, did so nearly *two years* too late to be considered, and their untimely motions must therefore be denied out of hand.

Moreover, both remaining Competing Movants are inadequate to serves as lead plaintiff under Rule 23 for reasons that also "subject [them] subject to unique defenses that render [the movants] incapable of representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  First, neither timely filed a lead plaintiff motion on the January 15, 2019 deadline in *Edwards*, a failure that calls into question their capacity to diligently prosecute fraud claims on behalf of a class. Second, the Coligado Shareholder Group is an improper group, consisting of a staggering *21* investors, most lacking any pre-litigation relationship.  Third, 19 of the 21 Coligado Shareholder Group members have already abandoned the lead plaintiff core responsibilities by preemptively

delegating them to only *two* of its members, thereby demonstrating that they are *not* prepared to "represent the claims of the class vigorously." *Shaffer v. Digital Generation, Inc.*, No. 3:13-CV-1684-N, 2013 U.S. Dist. LEXIS 204461, at *6 n.3 (N.D. Tex. Sept. 19, 2013).  Fourth, there is no evidence in the record that either of the Competing Movants sought to protect the interests of the *Edwards* class members in McDermott's bankruptcy proceeding.  The Coligado Shareholder Group sought only to protect their own individual interests in pursuing non-Exchange Act claims, suggesting a readiness to place those interests ahead of the class; while the Alghaslan appears to have taken *no action whatsoever* in the bankruptcy proceeding, and done *nothing at all* until July 2020, thereby directly calling into question his diligence and vigor as a litigant.

If this improper process is to continue, then NSHEPP respectfully requests discovery into the Competing Movants' transactions during the *Edwards* class period, their decisions not to seek appointment as Lead Plaintiffs in *Edwards*, and the reasons that neither of them sought protection for any class action claims in McDermott's bankruptcy proceeding.  If the Competing Movants remained supine on one or more occasions when they had an opportunity to litigate on behalf of McDermott investors or otherwise to protect and preserve their claims, that inaction would obviously be relevant to evaluating their capability "to represent the class," 15 U.S.C. § 78u-4(a)(3)(B)(iv), a role that requires them to "represent the claims of the class vigorously[,]" *Shaffer*, 2013 U.S. Dist. LEXIS 204461, at *6 n.3, and the PSLRA thus clearly permits the limited discovery that NSHEPP has requested.

Nothing in the Competing Movants' response papers changes the analysis.  There is no basis to challenge NSHEPP's participation in the *Ahnefeldt* lead plaintiff process.  No movant has challenged NSHEPP's standing, a point that is therefore conceded and may not be raised for the first time on reply.  *See*, *e.g.*, *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised

for the first time in a reply brief are generally waived."); *Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x 229, 231 (5th Cir. 2013) (argument waived when not raised clearly and developed adequately in opening brief); *U.S. v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) (arguments first raised in a reply brief, even by pro se litigants, are waived).  The Coligado Shareholder Group has merely argued that NSHEPP is somehow inadequate to oversee the claims of investors who purchased securities during the *Ahnefeldt* class period because NSHEPP itself did not purchase any McDermott securities during that precise, tag-along period that immediately follows the lengthy *Edwards* class period.  *See* Dkt. No. 31 at 7 n.5.  This argument ignores the consolidated period at issue in the Consolidation Motion and is at odds with Fifth Circuit precedent holding that "[d]ifferent interests"—*e.g.*, purchasing during different segments of a class period—"need not necessarily constitute fatal conflicts." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 448 n.18 (S.D. Tex. 2002).  Instead, courts endorse prosecution of securities class action claims on behalf of "a **unified** class with **a** strong Lead Plaintiff" (*id.* at 448 n.8) (emphases added), rather than on a fragmented basis, as attempted by the Coligado Shareholder Group.  Moreover, given NSHEPP's vigorous prosecution of the Exchange Act §10(b) claims of the investor class to this point in the *Edwards* action, its readiness to represent the claims of the *Ahnefeldt* class as well cannot reasonably be questioned.  Indeed, tellingly, no Competing Movant even attempts to argue that the efforts of NSHEPP, a sophisticated institutional investor, to represent the investor class on the §10(b) claims at issue in *Edwards*, has been anything short of exemplary.

The Coligado Shareholder Group's response (Dkt. No. 31) does not even address, much less dispute, the assertion in NSHEPP's opening brief, and the evidence submitted in support thereof, that one of its member, movant Gad, purchased shares during the *Edwards* class period as well as during the *Ahnefeldt* class period, thus making him a member of the *Edwards* class.  They

have likewise waived any challenge and may not address it for the first time on reply. *See Cain*, 600 F.3d at 541; *Irvin*, 517 F. App'x at 231; *U.S. v. Jackson*, 426 F.3d at 304 n.2. Gad's purchases are fatal to the Coligado Shareholder Group's motion, because they demonstrate that Gad, as a member of the class in the *Edwards* action, was required to seek appointment as Lead Plaintiff on the January 15, 2019 deadline to do so in *Edwards*. Nor may the Court sever Gad's motion from the other Coligado Shareholder Group members and consider the other group members separately from Gad. Having sought appointment as Lead Plaintiffs together, the Coligado Shareholder Group stands or falls together. *See*, *e.g.*, *Tsirekidze v. Syntax-Brillian Corp.*, CV-07-2204-PHX-FJM *et al.*, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 4, 2008) (declining to consider movant group members individually because the group "moved for lead plaintiff as a group and will be evaluated as such."); *In re Petrobras Secs. Litig.*, 104 F. Supp. 3d 618, 624 n.4 (S.D.N.Y. 2015) (declining to appoint as sole lead plaintiff a movant that possessed the largest financial interest in the litigation but initially sought appointment as part of a movant group, because "it at no time sought to serve as individual lead plaintiff.")

Nor has the Coligado Shareholder Group's response brief adduced any additional facts or law to allay the myriad concerns arising from its size and composition. Rather, their conspicuous silence only amplifies these concerns. The group's response does not so much as cite a single case endorsing the appointment of groups generally, let alone the appointment of an unwieldy assemblage of 21 largely unrelated investors. Rather, it relies on only boilerplate recitations of the legal standard for adequacy and conclusory statements that the Coligado Shareholder Group meets it, without addressing the ample evidence to the contrary. *See* Dkt. No. 31 at 5-6. Likewise, the Coligado Shareholder Group has not submitted any additional sworn statements by its members to address foreseeable questions regarding, *inter alia*, how exactly it intends to coordinate the efforts

6

of all 21 of its members, or the circumstances that led to 19 of the group's members abandoning their fiduciary responsibilities to only two members before their motion was even filed.

The Coligado Shareholder Group opposed NSHEPP's request for discovery on two equally meritless grounds. First, it claimed that there is no basis to question its adequacy to serve as a class representative, such that the PSLRA (15 U.S.C. §78u-4(a)(3)(B)(iv)) would permit discovery. Yet as set forth at length in NSHEPP's response, movant Gad's purchases during the *Edwards* class period demonstrate the high likelihood that other Competing Movants – including Alghaslan – are also *Edwards* class members and, therefore, should have sought appointment as lead plaintiff in *Edwards* — yet opted not to do so. If that is the case, then the reasons for their passivity are relevant to assessing their to represent the class of investors. Second, the Coligado Shareholder Group claims that NSHEPP is somehow not a "plaintiff" and thus ineligible to seek discovery pursuant to the PSLRA. Yet, NSHEPP is not merely a "plaintiff," is it is the ***Lead Plaintiff*** in the *Edwards* action overseeing "***all***" Exchange Act §10(b) claims, with responsibility to prosecute and safeguard the interests of that class. In that capacity, NSHEPP can indeed seek discovery into the adequacy of purported lead plaintiff movants who belatedly seek to pursue such claims on behalf of McDermott shareholders, before NSHEPP has had a chance to amend further. Indeed, if applied, the Coligado Shareholder Group's limited reading of "plaintiff" within the meaning of the PSLRA would undermine the ability of ***any*** court-appointed lead plaintiff to protect the claims and interests of the class it represents from duplicative, watered-down, tag-along actions giving rise to risks of conflicting rulings, an outcome that would only encourage duplicative lawsuits litigations by late-filing litigants just behind the then-operative class period in any pending securities class action where later developments arise. Such an outcome facially violates the

PSLRA's unambiguous provisions and underlying intent for *one* lead plaintiff, preferably an institutional investor, to oversee such cases, without disruption, distraction, or interference.

Defendants' response falsely claims that NSHEPP has requested this Court to make rulings on issues before Judge Hanks in the *Edwards* action.  Dkt. No. 29 at 5.  Quite the opposite: NSHEPP has consistently taken the position that *Ahnefeldt* should be before Judge Hanks as a related action and that it should be consolidated with *Edwards*.  NSHEPP's motion here is to safeguard its interests and those of the investor class, by advising the Court of the statutory mandate to defer any adjudication of the duplicative *Ahnefeldt* lead plaintiff motions until after Judge Hanks has ruled on the Consolidation Motion.  NSHEPP's response here also outlined potential conditions that can be implemented as part of the resolution of NSHEPP's various pending motions.  Should this action be transferred to Judge Hanks as a related case (as all parties have agreed is proper) then he will benefit from NSHEPP's full detailing of those considerations.

## II.  ARGUMENT

### A.  Consolidation of *Ahnefeldt* and *Edwards* will Preclude Consideration of the Competing Motions

NSHEPP respectfully reiterates that the consolidation of this action with *Edwards* before Judge Hanks is a threshold issue that must be resolved before this purported lead plaintiff appointment process can reach any potential resolution.  The PSLRA is unambiguous:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall *not* make the determination required by clause (i) [*i.e.*, lead plaintiff appointment] until *after* the decision on the motion to consolidate is rendered.

15 U.S.C. §78u-4(a)(3)(B)(ii) (emphases added).  Here, NSHEPP filed its Consolidation Motion in the related *Edwards* action on July 28, 2020 (*Edwards* Dkt. No. 147), and that motion remains pending.  Accordingly, until Judge Hanks has ruled on the Consolidation Motion, any

8

consideration of the merits of the competing lead plaintiff motions before this Court is premature and would violate the PSLRA's express terms.

In their response briefs, the Competing Movants mischaracterize the Consolidation Motion's impacts on the instant lead plaintiff motion practice. Alghaslan incorrectly suggests that consolidation only informs as to the appropriate class period for purposes of assessing the movants respective financial interests in the *Ahnefeldt* lead plaintiff process. *See* Dkt. No. 33 at 2 n.1 ("NHSEPP asserts losses based on its request for an expanded class period (December 18, 2018 through January 23, 2020, both dates inclusive) . . . However, should the Court consider the expanded class period [Alghaslan] would still have a larger financial interest than NSHEPP."). However, under the PSLRA, this Court would *only* evaluate the movants' respective financial interests *if* Judge Hanks denies the Consolidation Motion and permits the *Ahnefeldt* tag-along action to continue to proceed independently. Accordingly, any assessment of the movants' respective financial interests under any class period, let alone different class periods, at this stage is wholly irrelevant and at best premature. Moreover, if Judge Hanks grants the Consolidation Motion, Alghaslan's financial interest would remain irrelevant, because Alghaslan's motion was filed 20 months after the January 2019 expiration of the lead plaintiff motion deadline in *Edwards*, and thus cannot even be considered—again, rendering the question of financial interest irrelevant. *See*, *e.g.*, *Chun v. Fluor Corp.*, No. 3:18-CV-01338-X, 2020 U.S. Dist. LEXIS 91862, at *13-*14 (N.D. Tex. May 26, 2020) (even where two new purported lead plaintiff movants claimed $193 million in losses under a later class period, as compared against $2,000 and $0 in losses by the two prior-appointed lead plaintiffs, "declin[ing] to restart the lead plaintiff selection process" in first-filed action when subsequently filed complaint expanded the class period, because the original

9

lead plaintiff motion "deadline expired nearly two years ago," noting that the "text of the statute does *not* contemplate a restarting of the lead plaintiff selection process") (emphasis added).

The Coligado Shareholder Group likewise erroneously suggests that consolidation is merely one factor in a multi-step analysis to be undertaken by this Court that would still involve evaluating NSHEPP's financial interest alongside those of the Competing Movants. Dkt. No. 31 at 7 n.5. To the contrary, Judge Hanks' consolidation of this action with *Edwards* would wholly moot this duplicative lead plaintiff process and preclude *any* evaluation of the Competing Movants' financial interests whatsoever.

The process under the PSLRA is clear. *First*, any pending motion to consolidate related actions must be resolved. *Only then* does the PSLRA permit any consideration of the merits of lead plaintiff motions—*i.e.*, the competing movants' respective financial interests, the Rule 23 requirements, and any potential unique defenses to which they are subject. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). However, here, the *Edwards* lead plaintiff deadline passed 20 months ago and the contested lead plaintiff process concluded 16 months ago, with NSHEPP having been Court-appointed as the Lead Plaintiff overseeing "*all*" Exchange Act §10(b) claims. The Court should reject any attempts by the Competing Movants to end-run the PSLRA's clear statutory mandates.

### B.    The Timing of NSHEPP's McDermott Investments Do Not Affect Its Ability To Oversee "All" §10(b) Claims

Contrary to the Coligado Shareholder Group's assertion, the timing of NSHEPP's investments in McDermott securities has no bearing on its oversight of claims by investors who purchased during the alleged *Ahnefeldt* class period. In its response brief, the Coligado Shareholder Group asserts that "NSHEPP did not purchase any McDermott securities during the [*Ahnefeldt*] Class Period" and on that basis, "would *not* be the 'most adequate plaintiff' to litigate claims on behalf of the [*Ahnefeldt*] class." Dkt. No. 31 at 7 (emphasis added). This assertion is

10

fundamentally at odds with Fifth Circuit precedent, which considers classes and class periods in PSLRA actions as a whole, to proceed under unified leadership, rather than as disparate units requiring different representation — *e.g.*, with respect to investors who purchased securities during different intervals of a class period and/or purchased different types of securities.  *Enron* is instructive.  There, at the lead plaintiff stage, certain movants urged the court to appoint separate lead plaintiffs to represent the interests of purchasers of different classes of Enron Corporation securities—*e.g.*, common stock, preferred shares, bonds and notes.  *See id.* at *444-*46.  Judge Harmon rejected these arguments, finding the proposed fragmented approach to be at odds with both the PSLRA and commonsense considerations of judicial efficiency:

> The Court observes that the parties supporting division of the class into groups according to the nature of the investment or appointment of multiple Lead Plaintiffs with no prior relationship to represent different interests would ***not*** satisfy the stated criteria of the PSLRA for a Lead Plaintiff. Taken to its logical extreme, [the] argument that each group of notes issued pursuant to a different Registration Statement and Prospectus requires a different class or subclass and separate Lead Plaintiff would fracture this litigation into hundreds of classes or subclasses and ***obstruct any efficient and controlled progress.***
>
> As the primary basis for its decision, the Court's reading of the Lead Plaintiff provisions of the PSLRA, especially § 78u-4(a)(3)(B)(ii)("the court shall appoint ***the*** most adequate plaintiff for the consolidated actions"), leads it to conclude that at this stage the statute authorizes the appointment of ***one*** Lead Plaintiff . . .

*Id.* at 451 (emphases added).[3]  The court found "generic" arguments that a single class representative would lack incentives to protect the rights of differently situated investors to be

---

[3]     The Court continued:

> While the parties have set out some well-founded and persuasive arguments for separate representation and classes or subclasses at class certification, as well as for trial, the Court does not find that such divisions are essential now.  Indeed the central reasons for the consolidation of these suits are that they arise out of a common core of facts, legal issues, deal with overlapping or intertwined Defendants, named or implied, and they attack various aspects of an alleged scheme and course of conduct to defraud Enron investors and the public by artificially inflating the price of Enron securities through a number of materially false and misleading statements and omissions about the financial condition of Enron. . . . Moreover, it is centrally important to the litigants on both sides and to this Court, . . . that the discovery process not disintegrate into chaos and harassment.

11

"unpersuasive[,]" noting that "[a] lead plaintiff owes a fiduciary duty to the class"—that is, to the *entire* class—and that "[d]ifferent interests need not necessarily constitute fatal conflicts." *Id.* at 448 n.18. *See also In re BP P.L.C. Sec. Litig.*, No. 10-md-2185, 2013 WL LEXIS 173303, at *46-*47 (S.D. Tex. Dec. 6, 2013) ("'Were the rule otherwise, there could never be a class action in securities fraud cases because a representative plaintiff would potentially be needed for each day of the class period, since on each day the mix of information available to the public would vary.'") (quoting *Feldman v. Motorola, Inc.*, Civ. A. No. 90 C 5887, 1993 U.S. Dist. LEXIS 14631, at *17-*18 (N.D. Ill. Oct. 14, 1993)).

Here, there is nothing in PSLRA jurisprudence or in the record that would call into question NSHEPP's ability to oversee "all" Exchange Act §10(b) claims, as it was expressly Court-appointed to do, including those first (prematurely) asserted in *Ahnefeldt* while the *Edwards* motion to dismiss was pending. As the §10(b) Lead Plaintiff in *Edwards*, NSHEPP has aggressively litigated the §10(b) claims of *all* McDermott investors in the *Edwards* class, irrespective of the timing of their purchases of McDermott stock relatively to NSHEPP's purchases. NSHEPP filed a Consolidated Amended Complaint, with an expanded class period, , based, *inter alia*, on extensive analysis of Defendants' insider trading, the statements of 24 confidential witnesses, and descriptions of important internal company documents, with factual allegations that extend through September 27, 2019 – a one-week overlap with the time period alleged in *Ahnefeldt*. NSHEPP took action promptly to protect the interests of the *Edwards* class members in McDermott's bankruptcy proceeding, securing in the Confirmation Order important

---

At the same time diligent and efficient prosecution of the causes of action must be encouraged. To accomplish such . . . the Court believes that *the litigation should proceed as a unified class with a strong Lead Plaintiff* . . .

*Id.*

exemptions for the Exchange Act securities class action claims at issue in *Edwards* and important document preservation and discovery obligations on the part of the bankrupt and reorganized corporate debtor. Following *Ahnefeldt*'s filing, NSHEPP promptly sought its transfer to Judge Hanks and its consolidation with *Edwards*. Going back to its motion to dismiss opposition, which was filed a month ***before*** the *Ahnefeldt* action, NSHEPP has repeatedly stated its readiness to file a further Amended Complaint in *Edwards* that would encompass the remaining part of the narrative up to McDermott's bankruptcy, the facts and period prematurely alleged in *Ahnefeldt*. Finally, NSHEPP filed its lead plaintiff papers here to ensure that the investor class's interests with respect to §10(b) claims were protected during the duplicative *Ahnefeldt* lead plaintiff appointment process, while the Consolidation Motion remained pending and the *Edwards* motion to dismiss on the cusp of resolution. In sum, NSHEPP respectfully submits that it has vigorously represented the interests of all class members that it represents at every opportunity and stands ready to prosecute the claims of the *Ahnefeldt* plaintiffs no less vigorously in a consolidated action.

Thus, the Coligado Shareholder Group's unsupported assertion that NSHEPP is somehow unfit to represent the interests of *Ahnefeldt* class members is precisely the kind of generic speculation that Judge Harmon rejected as "unpersuasive" in *Enron*. The Coligado Shareholder Group has identified no reason that NSHEPP would lack incentives to prosecute the claims of the *Ahnefeldt* class members in a consolidated action, nor has it identified anything in NSHEPP's conduct that calls into question its fitness to do so. Indeed, NSHEPP notes that its conduct in this litigation to date stands in stark contrast with the conduct of the Competing Movants, who stayed on the sidelines during the *Edwards* lead plaintiff process and either sought only to protect their own interests or took no action at all during McDermott's bankruptcy proceeding. *See* Dkt. No. 34 at 15-16).

13

**C.**     **The Coligado Shareholder Group's Response Underscores Its Inadequacy**

**1.**     **The Coligado Shareholder Group Has Conceded That Gad Purchased Shares During the Edwards Period and is Therefore Inadequate**

In its motion papers, NSHEPP submitted a sworn statement by Coligado Shareholder Group member Gad attesting that certain of his purchases of McDermott securities fell within the original and expanded *Edwards* class periods. *See* Dkt. No. 27-1. Accordingly, NSHEPP asserted that Gad's "failure . . . to timely move for a lead plaintiff appointment in *Edwards* back in January 2019, despite his many undisclosed McDermott stock purchases during the [*Edwards*] class period . . . disqualifies him under the plain text of the PSLRA from seeking appointment now to represent the putative [*Ahnefeldt*] class[.]" Dkt. No. 26 at 10. The Coligado Shareholder Group's response does not even address, let alone dispute, the evidence of Gad's trades or the argument that they disqualify him. Accordingly, this point is conceded and may ***not*** be made for the first time on reply. *See Cain*, 600 F.3d at 541; *Irvin*, 517 F. App'x at 231; *U.S. v. Jackson*, 426 F.3d at 304 n.2.

Gad's inadequacy is not only fatal to his own attempted lead plaintiff appointment, but also mandates denial of the entire Coligado Shareholder Group's motion, were it to even be considered. Indeed, courts generally decline to disaggregate groups and consider their members separately. *See*, *e.g.*, *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15 (declining to consider movant group members individually because the group "moved for lead plaintiff as a group and will be evaluated as such."); *Petrobras*, 104 F. Supp. 3d at 624 n.4 (declining to appoint as sole lead plaintiff a movant that possessed the largest financial interest in the litigation but initially sought appointment as part of a movant group, because "it at no time sought to serve as individual lead plaintiff."). Nor may the Coligado Group request that the Court consider only certain of its movants as Lead Plaintiff candidates for the first time on reply. *See Cain*, 600 F.3d at 541; *Irvin*, 517 F. App'x at 231; *U.S. v. Jackson*, 426 F.3d at 304 n.2.

14

### 2.      The Coligado Shareholder Group's Response Brief Further Highlights its Unwieldiness and Lack of Cohesion

The Coligado Shareholder Group's response only amplifies, rather than allays, the myriad concerns arising from its unwieldy 21-member size, most of whom lack any pre-litigation relationship with one another. *See*, *e.g.*, *Abouzied v. Applied Optoelectronics, Inc.*, 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801, at *13-*14 (S.D. Tex. Jan. 22, 2018); *In re Waste Mgmt., Inc.*, 128 F. Supp. 2d 401, 431 (S.D. Tex. 2000). As both NSHEPP *and* Alghaslan discussed extensively in their oppositions, courts generally decline to appoint movant groups consisting of unrelated individuals, and, adopting the SEC's guidance, effectively *never* consider movant groups consisting of more than five members. *See*, *e.g.*, *In re Superior Offshore Int'l, Inc. Secs. Litig.*, H-08-0687, 2008 U.S. Dist. LEXIS 122005, at *6 (S.D. Tex. May 20, 2008); ("[To] qualify as lead plaintiff, an investor's losses should include the aggregate losses of no more than three to five persons") (internal citation omitted); *Waste Mgmt.*, 128 F. Supp. 2d at 413 \("The [Securities Exchange] Commission believes that ordinarily, in order to ensure adequate stakes, monitoring, coordination and accountability, such a group [of plaintiffs] should be no more than three to five persons, and the fewer the better"); *Abouzied*, 2018 U.S. Dist. LEXIS 16801, at *12 (S.D. Tex. Jan. 22, 2018) (declining to appoint a group of 12 movants as lead plaintiff).

The Coligado Shareholder Group's response does not cite a single case for even the general proposition that the PSLRA permits the appointment of lead plaintiff groups at all, let alone the appointment of overlarge groups consisting predominantly of unrelated investors. Nor did they submit any supplemental sworn statements with their response to further attest to their readiness and ability to coordinate their efforts in this litigation, effectively leading to the serious concern that 19 of the group's members serve no purpose other than to inflate its reported losses for purposed of securing a lead plaintiff appointment. *See*, *e.g.*, *Haideri v. Jumei Int'l Holding, Ltd.*,

15

20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510, at *12 (N.D. Cal. Sept. 4, 2020) (denying motion where "the evidence of record does not support more than minimal involvement on the part of the [investor group's] members"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 136 (S.D.N.Y. 2008) (denying motion by movant who appeared to lack "meaningful involvement in [the] case").

### 3.    There Is No Basis To Republish PSLRA Notice In *Edwards*

The Coligado Shareholder Group, in a response brief footnote, passingly suggest that the PSLRA lead plaintiff notice should be republished in *Edwards*.  *See* Dkt. No. 31 at 7 n.5.  There is no basis, whatsoever, for that relief, and, moreover, this Court does not have authority to issue any order in *Edwards*.[4]  A modest additional expansion of the *Edwards* class period by four months does not warrant republication of notice, particularly where the operative §10(b) complaint in *Edwards* covers 92.5% of the stock decline, and the squib period alleged here only covers the remaining 7.5%.  *See, e.g.*, *Chun v. Fluor Corporation*, No. 3:18-cv-01338-X, 2020 WL 2745527 (N.D. Tex. May 26, 2020) (court denied request for republication of notice and vacated duplicative lead plaintiff process in tag-along action, despite two purported new lead plaintiff movants with $193 million in claimed losses, compared to $2,000 and $0 in losses by the pre-existing lead plaintiffs whose amended complaint subsumed the tag-along class period).

---

[4]    The Coligado Shareholder Group's cited cases (Dkt. No. 7 n.5) are distinguishable and do not counsel a different result.  *See In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 939 (S.D. Tex. 2006) (original class period of 3.5 months as compared to the amended complaint's class period of 2.5 years); *Hachem v. Gen. Elec. Inc.*, No. 17-cv-8457, 2018 U.S. Dist. LEXIS 62278, at *5 (S.D.N.Y. Apr. 11, 2018) (original class period of 3 months as compared to the amended complaint's class period of almost 5 years).  *Okla. Law Enforcement Ret. Sys. V. Adeptus Health Inc.,* No. 17-cv-0449, 2017 U.S. Dist. LEXIS 140268, at *13-14 (E.D. Tex. Aug. 31, 2017), does not support Coligado's argument as the court held that republication was not necessary where the expanded class period had more expansive allegations but not entirely new legal or factual allegations nor involved an entirely new class of securities.

**D.      Discovery Into the Competing Movants is Warranted and NSHEPP is Entitled to Request It**

Contrary to the Coligado Shareholder Group's assertions, the PSLRA clearly permits NSHEPP to seek limited discovery into the Competing Movants, stating in relevant part:

> [D]iscovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iv).

The Coligado Shareholder Group challenges NSHEPP's request for discovery on two equally meritless grounds: (1) that NSHEPP has not demonstrated a reasonable basis to question the Competing Movants' adequacy; and (2) that because NSHEPP did not acquire any McDermott securities during the four-month squib class period pled in the tag-along *Ahnefeldt* action, it is somehow not a "plaintiff" entitled to seek discovery within the meaning of the statutory discovery provision. *See* Dkt. No. 31 at 7 n.5, 8.[5] The Coligado Shareholder Group is wrong on both counts.

First, NSHEPP has by now more than "demonstrate[d] a reasonable basis" to find the Competing Movants "incapable of adequately representing the class," 15 U.S.C. §78u-4(a)(3)(B)(iv), due to their failure to protect the investor class's interests in McDermott's bankruptcy, their likely membership in the *Edwards* class (like movant Gad), and their failure to timely seek a lead plaintiff appointment in *Edwards*. To demonstrate its adequacy, a movant must demonstrate that it will "represent the claims of the class vigorously." *Shaffer v. Digital Generation, Inc.*, No. 3:13-CV-1684-N, 2013 U.S. Dist. LEXIS 204461, at *6 n.3 (N.D. Tex. Sept. 19, 2013). Courts decline to appoint lead plaintiffs whose conduct does not indicate a readiness to meaningfully participate in the litigation. *See*, *e.g.*, *Haideri*, 2020 U.S. Dist. LEXIS 162510, at

---

[5]      Alghaslan fails to challenge NSHEPP's request and has therefore waived any such argument at this stage. *See Cain*, 600 F.3d at 541; *Irvin*, 517 F. App'x at 231; *U.S. v. Jackson*, 426 F.3d at 304 n.2.

17

*12; *Monster Worldwide*, 251 F.R.D. at 136.  Here, the record demonstrates a reasonable basis to conclude that the Competing Movants are not prepared to vigorously pursue class-wide Exchange Act claims.  Given the contiguous nature of the *Edwards* and *Ahnefeldt* class periods, there is a high likelihood—underscored by the fact that one group member, Gad, demonstrably *did* purchase McDermott shares during the *Edwards* class period (s*ee* Dkt. No. 27-1)—that the Competing Movants are, by virtue of the timing of their purchases of McDermott securities, members of the *Edwards* class as well as the *Ahnefeldt* class (which, per the Consolidation Motion, should be seen as one).  If so, like movant Gad, they were required to seek appointment as lead plaintiff in *Edwards* over 21 months ago, on January 15, 2019.  Yet none of the Competing Movants did so. NSHEPP respectfully submits that this failure—along with the fact that none of the Competing Movants sought protection for class-wide Exchange Act claims in the McDermott bankruptcy— calls into question the Competing Movants' readiness to vigorously litigate class claims and thus constitutes a valid basis for discovery into their adequacy as class representatives.  The Coligado Shareholder Group only sought to carve out their own individual, non-Exchange Act claims from the McDermott bankruptcy releases.  Worse, Alghaslan did ***nothing*** during the McDermott bankruptcy and now impotently points to an ***email*** he sent to the McDermott Treasurer in July 2020, well after the bankruptcy Confirmation Order entered, as purportedly protecting the class's interests (*see* Dkt. No. 33 at 11 and Dkt. No. 33-1), a claim that utterly lacks merit or effect.

Second, the assertion that NSHEPP is not a "plaintiff" within the PSLRA's discovery provision lacks merit.  NHSEPP is not merely "***a*** plaintiff."  Rather, since June 4, 2019, by court appointment, NSHEPP has served as ***the §10(b) Lead Plaintiff*** in the *Edwards* action with Court-appointed responsibility for overseeing "***all***" §10(b) claims and protecting the interests of that class.  Were the Coligado Shareholder Group's argument to be validated, then each time a court

18

appointed a PSLRA lead plaintiff in a securities class action on behalf of a given class of investors, with the same responsibilities entrusted to NSHEPP in *Edwards*, another investor could file a tag-along class action ***immediately behind***, and the lead plaintiff in the earlier-filed action would have no meaningful ability to assess, *inter alia*, the appropriateness of permitting the later-filed case to proceed as an independent action and/or the adequacy of entrusting a leadership role to the late-coming litigant.  Not only would this severely undermine the ability of a lead plaintiff to execute its fiduciary duties on behalf of the class it represented, it would also undermine a lead plaintiff's ability to assist courts by serving as a "gatekeeper" with respect to potentially duplicative litigations, with attendant risks of conflicting rulings that jeopardize class member interests, thereby resulting in a multiplicity of substantively similar litigations on behalf of overlapping or contiguous shareholder classes, an outcome at odds with judicial efficiency and the PSLRA.

### E.  NSHEPP Agrees with Defendants that Consolidation Must be Decided by Judge Hanks in *Edwards*

In their response, Defendants incorrectly suggest that NSHEPP's instant motion "asks this Court to order relief pertaining to the *Edwards* action pending before Judge Hanks." Dkt. No. 29 at 5.  Not so.  NSHEPP has merely asserted that Judge Hanks' adjudication of the Consolidation Motion is, pursuant to the PSLRA, a necessary threshold question that must be resolved ***before*** any consideration of the instant lead plaintiff motions may proceed (*see* 15 U.S.C. §78u-4(a)(3)(B)(ii)), and requested that the Court withhold any ruling on the lead plaintiff motions until after Judge Hanks has ruled on the Consolidation Motion.   Seeing as how all parties agree that this action should be transferred to Judge Hanks as related to *Edwards*, NSHEPP has also stated, for benefit of whichever Court oversees this duplicative lead plaintiff process (if it is permitted to even proceed), that NSHEPP can be instructed to amend within a certain period of time or to add a sub-class representative at the class certification stage.  Defendants are correct that the local rules

19

of this Judicial District require that any consolidation motion must "be filed in the oldest case" and "heard by the judge to whom the oldest case is assigned. Loc. R. 7.5(B)-(C). Accordingly, on July 28, 2020, NSHEPP filed its Consolidation Motion in the earlier-filed *Edwards* action.

## III.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening and responsive briefs (Dkt. Nos. 26, 33), and all supporting documents and exhibits thereto, NSHEPP respectfully requests, if this duplicative, improper lead plaintiff process is permitted to proceed – after adjudication of the Consolidation Motion which by statute must be decided first – that the Court grant NSHEPP's motion in all respects and deny the competing motions of the Coligado Shareholder Group (Dkt. No. 21) and Alghaslan (Dkt. No. 23).

Dated: October 19, 2020            Respectfully submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
(S.D. Tex. Federal Bar # 1467939)
Jeremy A. Lieberman
(S.D. Tex. Federal Bar Number 1466757)
J. Alexander Hood II
(S.D. Tex. Federal Bar Number 3086579)
Jennifer Banner Sobers
(*Admitted Pro Hac Vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mltuccillo@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan and Lead Counsel for the §10(b) Class*

**THE BRISCOE LAW FIRM, PLLC**

20

*/s/ Willie C. Briscoe*
Willie C. Briscoe
Texas Bar No.: 24001788
Southern District No.: 25157
1980 Park Oak Blvd.
Houston, TX 77056
Telephone: 713-752-2600
Facsimile: 832-201-9950
wbriscoe@thebriscoelawfirm.com

*Attorney-In-Charge, Counsel for §10(b) Lead Plaintiff Nova Scotia Health Employees' Pension Plan, and Liaison Counsel for the §10(b) Class*

21