

Matthew Tuccillo
Partner

May 14, 2021

**Via ECF**

Hon. George C. Hanks, Jr.
United States District Judge
United States District Court
Southern District of Texas
515 Rusk St., Room 6202
Houston, TX 77002

      Re:    *Edwards v. McDermott Int'l, et al.*, Case No. 4:18-cv-4330

Dear Judge Hanks:

      I write as Court-appointed §10(b) Lead Counsel in the above-captioned consolidated securities class action on behalf of the Court-appointed §10(b) Lead Plaintiff, the Nova Scotia Health Employees' Pension Plan, in response to the *Ahnefeldt* plaintiffs' counsel's latest letter, which was once again redundantly docketed on both the now-consolidated *Ahnefeldt* action's docket (Case No. 4:20-cv-02539) and this docket.

      The operative *Edwards* §10(b) complaint (Dkt. No. 105) ("CAC") was filed on October 4, 2019 on a court-imposed deadline and pled still-unfolding events into the prior week.  Its Class Period was December 18, 2017 through September 17, 2019, with relevant alleged facts extending through September 27, 2019.  *See id.* ¶¶14-17, 320-325.  It pled a thread of fraud concerning McDermott's acquisition, integration, and potential sale of CB&I's Lummus Technology Business (¶¶218-275) and another thread concerning McDermott's capital structure, liquidity issues, and potential bankruptcy (¶¶276-305) – both of which the Court upheld in full.  *See* Dkt. Nos. 163 and 168.  It alleges that on September 18-20, 2019, analysts said that Lummus could be sold; on September 23, 2019, multiple bidders were potentially involved in its sale; and on September 27, 2019, analysts questioned McDermott's access to super-senior debt and discussed its need for a bridge loan – each revelation causing stock declines partially revealing the alleged, ongoing fraud.  ¶¶16-17, 322-325.

      McDermott's January 2020 bankruptcy filing is a further event that is partially corrective of the fraud already pled in the CAC and that also made actionable certain of Defendants' ongoing public statements within the latter time period of the CAC and extending several months thereafter, thus continuing the Technology Business Fraud and the Capital Structure / Liquidity Fraud threads already pled in the CAC.  For both these reasons, §10(b) Lead Plaintiff plans to file a Fed. R. Civ. P. 15(d) motion seeking leave to file a pleading supplement that will augment the CAC, expand the Class Period by ~4 months, and plead the continuing fraud up to the corrective stock price decline caused by McDermott's bankruptcy filing.

      The *Ahnefeldt* counsel's attempt to distinguish *Chun v. Fluor Corporation*, No. 3:18-cv-01338-X, 2020 WL 2745527 (N.D. Tex. May 26, 2020) lacks merit.  Here, a pleading supplement will add 4 months to the

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

**NEW YORK**      **CHICAGO**      **LOS ANGELES**      **PARIS**

Hon. George C. Hanks, Jr.  May 14, 2021
Page 2

Class Period, continue the Technology Business and Capital Structure / Liquidity Frauds through a few more public statements, and plead McDermott's bankruptcy as causing a corrective stock decline related to both threads of fraud, as originally pled and as augmented in the supplement – a "clear continuation of the conduct" far more modest than the one recognized by the *Chun* court. In *Chun*, the amendment subsuming the tag-along allegations increased the class period by 22 months, grew the alleged fraud's scope from 4 to 16 large projects, and expanded the §10(b) claim from project bidding and execution issues to alleged revenue recognition accounting improprieties that later necessitated restatement of three years of financials – all events post-dating and beyond the scope of the original PSLRA notice and the initial and first amended complaints.

At core, the *Ahnefeldt* counsel's argument hinges merely on *when* the lead plaintiffs choose to amend to encompass tag-along action allegations. In *Chun*, there were no parallel bankruptcy proceedings, and the first amended complaint was dismissed, with leave to amend within 28 days. *See* Case No. No. 3:18-cv-01338-X, Dkt. No. 89. So, the expanding amendment was filed sooner in *Chun*, on a court-ordered deadline, before litigation of the consolidation motion and the duplicative tag-along lead plaintiff process. Here, McDermott's January 2020 bankruptcy, the event that made actionable the statements in the few months prior, coincided with Defendants' filing their motion to dismiss the CAC. Rather than seek to amend right away – and thereby reset the clock for Defendants' dispositive motion, prolonging the PSLRA discovery stay and taking the §10(b) action off-cycle from the §14(a) action – the §10(b) Lead Plaintiff opted to successfully oppose Defendants' motion to dismiss while securing class-wide protections in McDermott's bankruptcy.

That the *Ahnefeldt* counsel prematurely filed a squib complaint to pick up the narrative *the trading day after the CAC's Class Period* and more quickly plead a few misstatements divorced from the full fraud at issue is inconsequential. Not only have the limitations and repose periods not run, but any amendment by the §10(b) Lead Plaintiff relates back, and its standing and typicality as a class representative is considered based on the *full* expanded Class Period, not discreet portions thereof. Indeed, the cases are legion that a court-appointed PSLRA lead plaintiff need not have purchased every security at issue or purchased their securities at the same time as other class members to adequately represent the class. *See, e.g.*, *In re Waste Mgmt., Inc. Sec. Litig.*, No. H-99-2183, 2002 WL 35644013, at *14 n.9 (S.D. Tex. May 10, 2002) (collecting cases) ("Lead Plaintiff need not have purchased every type of security held by a Class Member or had the ability to present every claim a Class Member may have had in order to adequately represent their interests and assert claims typical of the Class as a whole.") (citing *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (PSLRA creates a "statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories") (quotation omitted) and *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998) ("More likely than not, the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another. This, however, does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individualized interest is represented. … Thus, notwithstanding every plaintiff's undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general.") and *Sanders v. Robinson Humphrey/American Express, Inc.*, 634 F. Supp. 1048, 1057 (N.D. Ga. 1986) ("[w]hen plaintiffs have alleged such a common course of conduct, courts consistently have found no bar to class certification even though members of a class may have purchased different types of securities or interests, or purchased similar securities at different times"), *aff'd in part and rev'd in part on other grounds*, 827 F.2d 718 (11th Cir. 1987)).



Hon. George C. Hanks, Jr.                                                                                             May 14, 2021
Page 3

The *Ahnefeldt* counsel's untimely new argument citing *Sayce v. Fourscout Technologies, Inc.*, No. 20-cv-0076-SI, U.S. Dist. LEXIS 129646, at *13-*14 (N.D. Cal. July 22, 2020) borders on sanctionable. In *Sayce*, the lead plaintiff filed an amended pleading that *doubled* the class period and expanded the §10(b) claim to extend beyond misstatements over pipeline execution issues to misstatements concerning a proposed corporate acquisition announced after the initial complaint was filed. *Id.* at *3-*6. Other plaintiffs had filed a separate §10(b) action concerning *only* the alleged acquisition fraud. *Id.* at *5. They argued that if the cases were consolidated, the lead plaintiff's class period expansion warranted republication of the PSLRA notice "since qualified plaintiffs like themselves could not have applied to be lead plaintiff in the *Sayce* Action because their claims did not yet exist when the deadline to become lead plaintiff in that action expired" (*id.* at *14), such that the court found that there was "no way" such investors could have been on notice to move for PSLRA lead plaintiff appointment (*id.* at *17). Here, by contrast, as discussed in the §10(b) Lead Plaintiff's prior filings on the *Ahnefeldt* docket, we know that the unwieldy assemblage of twenty-one individuals in the *Ahnefeldt* plaintiff group included ***at least*** one – and likely many more – investors who purchased McDermott securities during the ***original*** class period at issue in *Edwards* that was subject to the ***original*** PSLRA notice. *See* Case No. 4:20-cv-02539, Dkt. No. 26 at 4-6. His failure to move for a lead plaintiff appointment back then raises unique adequacy and typicality defenses. For this and other reasons, if the improper, duplicative PSLRA process in *Ahnefeldt* continued, the §10(b) Lead Plaintiff sought discovery pursuant to 15 U.S.C. §78u-4 (a)(3)(B)(iv) of all the *Ahnefeldt* plaintiffs and any other purported lead plaintiff movants. *Id.* at 10-11.

The *Ahnefeldt* counsel's untimely new argument citing a seven-year-old, readily distinguishable brief filed in *Parker v. Hyperdynamics Corp., et al.*, No. 12-cv-00999 (S.D. Tex.) fares no better. There, the original PSLRA notice concerned claims over operational issues at two exploration wells during a class period from February 7, 2011 - February 15, 2012. *See Parker* Dkt. No. 73 at 1. A later-filed action raised claims over compliance with the Foreign Corrupt Practices Act and money laundering statutes from November 8, 2012 - March 11, 2014. *Id.* The lead plaintiff in the first action filed an amended pleading that *quadrupled* the class period - subsuming the first and second actions' class periods, plus more time from September 30, 2009 - March 11, 2014 – then sought to consolidate and be appointed lead, despite unique defenses. *Id.* at 1-2.

As stated in my prior letter, the Court can dismiss as moot the purported lead plaintiff motions filed in the now-consolidated *Ahnefeldt* action and either terminate or administratively close the *Ahnefeldt* docket. The Court may do so now, thus ending redundant filing of papers on multiple dockets in this consolidated litigation, or it may wait until the §10(b) Lead Plaintiff files its forthcoming Fed. R. Civ. P. 15(d) motion and pleading supplement. Either way, the §10(b) Lead Plaintiff will pursue "all" §10(b) claims, pursuant to its statutory authority and the express terms of the Order appointing it to serve as PSLRA lead plaintiff over those claims.

Once again, I express my well wishes for Your Honor and your colleagues, staff, and families.

Respectfully submitted,

*[signature]*

Matthew L. Tuccillo